1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10
11

P.W. ARMS, INC., a
Washington corporation,

No.

12

Plaintiff,

13

v.

14
15
16

UNITED STATES OF AMERICA and the
BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES, a Federal
Agency,

**COMPLAINT FOR
DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF AND
DAMAGES**

17

Defendants.

18

## I.     INTRODUCTION

19           Plaintiff, P.W. Arms, Inc. ("PWA"), by and through its attorneys of record of the law firm

20   McKay Chadwell, PLLC, brings this action against the United States Department of Justice's

21   Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") for declaratory and injunctive

22   relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, and injunctive

23   relief, sanctions and attorneys' fees under the Freedom of Information Act ("FOIA"), 5 U.S.C. §

24   552, *et seq.*, and against the United States of America ("USA") for damages under the Federal Tort

25   Claims Act ("FTCA"), 28 U.S.C. §§ 2671, 2674 and 1346.

26## II.     PARTIES

27   **A.     Plaintiff**

28           1.        Plaintiff PWA is a Washington corporation that is duly licensed by ATF to import

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF AND DAMAGES - 1

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

ammunition and firearms.  PWA engages in wholesale distribution of ammunition and firearms to other federally licensed firearm dealers (FFLs) and maintains its principal place of business in Redmond, Washington.  PWA is not engaged in the business of direct retail of ammunition or firearms to the general public.

**B.    Defendants**

2.    Defendant USA is a body politic and national sovereign that is a proper party for jurisdiction of the Court based upon USA's limited waiver of sovereign immunity for a FTCA lawsuit under 28 U.S.C. §§ 2671, 2674, and 1346.

3.    Defendant ATF is a federal law enforcement agency within the United States Department of Justice.  ATF's headquarters is located at 99 New York Avenue Northeast, in the District of Columbia.  ATF maintains a Seattle Field Division office at 915 2nd Avenue, Room 790 in Seattle, Washington.  ATF is a proper party as a federal agency subject to the Court's jurisdiction under the APA and FOIA.

### III.    JURISDICTION AND VENUE

4.    Jurisdiction is vested in this Court, pursuant to 5 U.S.C. § 701, *et seq.* (APA actions); 5 U.S.C. § 552, *et seq.* (FOIA actions); 28 U.S.C. §§ 2671, 2674 and 1346 (FTCA actions/United States as a defendant); 28 U.S.C. § 1331 (federal questions); 28 U.S.C. § 2201 (declaratory relief); 28 U.S.C. § 2202 (injunctive relief); and 28 U.S.C. § 1361 (actions to compel an officer of the United States to perform a duty).

5.    Upon information and belief, a substantial part of the events complained of occurred in the Western District of Washington.  Venue therefore is proper under 5 U.S.C. § 703 and 28 U.S.C. § 1391.

6.    For purposes of claim exhaustion and FTCA subject matter jurisdiction, PWA presented an administrative tort claim to Defendant USA within two years of claim accrual.  28 U.S.C. §§ 2401(b) and 2675(a).  ATF, a USA agency, denied the claim.  *See* Complaint Appendix A.  After exhaustion and denial of this claim by the USA, PWA timely files this federal lawsuit.

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF AND DAMAGES - 2

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

7.      An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a).  This Court may issue a declaratory judgment and injunctive relief under 28 U.S.C. §§ 2201-02.

## IV.     NATURE OF THE ACTION

8.      In this action, PWA seeks a declaratory judgment under the APA and 28 U.S.C. § 2201(a) that the actions of the ATF were arbitrary and capricious and failed to comply with federal law when the agency issued permits authorizing PWA to import 5.45x39mm rifle ammunition, also known as 7N6, manufactured in Russia and former Soviet Bloc nations, for resale as sporting ammunition to FFLs in the United States, but subsequently and without notice repudiated its delegated legislative authority to reclassify this ammunition as illegal and "armor piercing" under 18 U.S.C. § 921(a)(17)(B), despite the lack of a commercially available handgun capable of using this rifle ammunition, and despite the lack of evidence that the ammunition contained a projectile core made entirely of steel or from a combination of steel and tungsten alloys, iron, brass, bronze, beryllium copper, or depleted uranium.

9.      In the alternative to its claim under the APA, PWA seeks a judgment under the FTCA that Defendant USA, by and through ATF, negligently and/or wrongfully approved PWA's importation permit under the circumstances above and is liable for all damages actually and proximately caused by ATF's negligent and/or wrongful acts and/or omissions in an amount to be determined at trial.

10.     PWA seeks injunctive relief under the APA in the form of an order by the Court that ATF, and any other federal agency working at its behest, immediately authorize PWA a reasonable period of time to lawfully sell or distribute the 5.45x39mm ammunition in the United States.

11.      PWA also seeks a judgment that ATF violated FOIA by constructively denying and/or actually denying PWA's June 18, 2014 FOIA request for production of records regarding the ATF's decision to reclassify the 7N6 5.45x39mm ammunition referenced above as "armor piercing" and to stop PWA's lawfully permitted importation of this rifle ammunition in 2014.

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF AND DAMAGES - 3

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

## V.      STATUTORY FRAMEWORK

**A.      The Gun Control Act and Classification of Armor-Piercing Ammunition**

12.      The Gun Control Act ("GCA"), 18 U.S.C. § 921, *et seq.*, regulates and restricts ammunition and firearms.  Section 922(1) of the GCA makes it unlawful for any individual to "knowingly import or bring into the United States . . . any firearm or ammunition," except as provided for in 18 U.S.C. § 925(d).  Section 925(d) provides that the Attorney General "shall authorize" importation of ammunition if it "is of a type that does not fall within the definition of a firearm as defined in section 5845(a) of the Internal Revenue Code of 1986 and is generally recognized as particularly suitable for or readily adaptable to sporting purposes, excluding surplus military firearms."  18 U.S.C. § 925(d)(3).

13.      The GCA imposes licensing requirements on persons who manufacture, import, and deal in ammunition and firearms.  18 U.S.C. § 923.

14.      ATF has rule-making authority through the Attorney General with respect to federal firearms law.  18 U.S.C. § 926 and 28 C.F.R. § 0.130(a)(1). ATF's rule-making authority includes the classification of ammunition.  The Attorney General has delegated GCA enforcement to ATF's director, subject to the direction of the Attorney General and the Deputy Attorney General.  28 C.F.R. § 0.130(a).

15.      The GCA contains provisions defining and governing armor piercing ammunition originally enacted in the Law Enforcement Officers Protection Act of 1986 (P.L. 99-408) ("LEOPA").  The primary goal of the LEOPA provisions regarding armor piercing ammunition was to protect police officers from death or injury as the result of criminal use of handgun ammunition capable of penetrating protective vests, also known as soft body armor.  The sponsors of this legislation did not intend to ban rifle ammunition, as evidenced by Senator Daniel Patrick Moynihan's statement that "only bullets capable of penetrating body armor and designed to be fired from a handgun would be banned; rifle ammunition would not be covered"[1]

---

[1] Armor-Piercing Ammunition: Hearings Before the Subcommittee on Criminal Law, Senate Judiciary Committee, 98th Cong., 2nd Sess., 8 (1985).

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

and Congressman Mario Biaggi's statement that "it is a rare occasion when a sportsman will take a rifle cartridge and put it in a handgun.  This legislation deals with the rule, not the exception."[2] Under the Code of Federal Regulations, "handgun" is defined as "(a) Any firearm which has a short stock and is designed to be held and fired by the use of a single hand; and (b) Any combination of parts from which a firearm described in paragraph (a) can be assembled."  27 C.F.R. § 478.11.

16.     Under the GCA, it is unlawful for "any manufacturer or importer to sell or deliver armor piercing ammunition, unless such sale or delivery -- **(A)** is for the use of the United States, any department or agency of the United States, any State, or any department, agency, or political subdivision of a State; **(B)** is for the purpose of exportation; or **(C)** is for the purpose of testing or experimentation and has been authorized by the Attorney General."  18 U.S.C. § 922(a)(8).

17.     Under 18 U.S.C. § 921(a)(17)(B)(i)-(ii) of the GCA, "armor piercing ammunition" is defined as:

> (i) a projectile or projectile core which may be used in a handgun and which is constructed entirely (excluding the presence of traces of other substances) from one or a combination of tungsten alloys, steel, iron, brass, bronze, beryllium copper, or depleted uranium; or

> (ii) a full jacketed projectile larger than .22 caliber designed and intended for use in a handgun and whose jacket has a weight of more than 25 percent of the total weight of the projectile.

Under 27 C.F.R. § 478.11, the term "armor piercing ammunition" is defined as follows:

> Armor piercing ammunition. Projectiles or projectile cores which may be used in a handgun and which are constructed entirely (excluding the presence of traces of other substances) from one or a combination of tungsten alloys, steel, iron, brass, bronze, beryllium copper, or depleted uranium; or full jacketed projectiles larger than .22 caliber designed and intended for use in a handgun and whose jacket has a weight of more than 25 percent of the total weight of the projectile. The term does not include shotgun shot required by Federal or State environmental or game regulations for hunting purposes, frangible projectiles designed for target shooting, projectiles which the Director finds are primarily intended to be used for sporting

---

[2] Armor-Piercing Ammunition: Hearings Before the Subcommittee on Criminal Law, Senate Judiciary Committee, 98th Cong., 2nd Sess., 17, 19 (1985).

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF AND DAMAGES - 5

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

purposes, or any other projectiles or projectile cores which the Director finds are intended to be used for industrial purposes, including charges used in oil and gas well perforating devices.

**B.    APA**

18.    Under the APA and its implementing regulations, a reviewing court may set aside a final agency action if it is "arbitrary, capricious, an abuse of discretion or not otherwise in accordance with the law." 5 U.S.C. § 706. This standard is narrow, but the court "must not 'rubber stamp' . . . administrative decisions that [are] inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." *Ocean Advocates v. U.S. Corps of Engineers*, 361 F.3d 1108, 1118 (9th Cir. 2004) (quoting *Ariz. Cattle Growers Ass'n v. U.S. Fish and Wildlife*, 273 F.3d 1229, 1236 (9th Cir. 2001)).

19.    Under the APA, an agency's decision is arbitrary and capricious "if it has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicles Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

20.    By its own terms, the APA independently authorizes judicial review of "final agency action[s] for which there is no other adequate remedy in court." 5 U.S.C. § 704. Under the APA, federal district courts are required to "compel agency action unlawfully withheld or unreasonably delayed" and "to hold unlawful and set aside agency action, findings, and conclusions of law found to be . . . arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law . . . ." *Id.* at § 706(1), (2)(A).

21.    Where review is not pursuant to authorization in a substantive statute but is solely under the APA, the agency action must be final. *Id.* at § 704. "Final agency actions" are actions which (1) "mark the consummation of the agency's decision making process" and (2) "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*

COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES - 6

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

*v. Spear*, 520 U.S. 154, 178 (1997).  An agency's rule making decisions likewise are subject to judicial review under the APA.  5 U.S.C. § 553(b)(3), (c).

**C.    FTCA**

22.    The FTCA, under 28 U.S.C. §§ 2671, 2674 and 1346(b), authorizes an injured party to bring a claim for damages due to injury or loss of property caused by the negligent and/or wrongful act or omission of any employee of the United States acting within the scope of her/his employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

23.    To obtain jurisdiction for a FTCA lawsuit, the injured party must present an administrative tort claim to the appropriate federal agency within two years after her/his claim arises.  28 U.S.C. §§ 2401(b) and 2675(a).

24.    The federal agency has six months to review the injured party's claim.  Within six months of the date of mailing the agency's final denial of the claim, the injured party is authorized to pursue a federal lawsuit upon the claim.  28 U.S.C. § 2401(b).

25.    The failure of the federal agency to make a final disposition of the injured party's claim within six months after it is filed, "shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section."  28 U.S.C. § 2675(a).

**D.    FOIA**

26.    Under FOIA, 5 U.S.C. § 552, federal agencies must provide records to the public upon request unless those records are entitled to protection under one or more specific statutory exemptions.

27.    When a private individual or entity files a FOIA request with an agency, that agency must respond to the request within 20 working days. 5 U.S.C. § 552(a)(6)(A)(i).  That response must notify the party of the agency's determination that it will either grant or deny the request for records, in whole or in part, and notify the requesting party of their right to appeal any adverse determination.  *Id.*

28.    The agency may not toll the 20 working day period for a response except where it

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF AND DAMAGES - 7

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

requires additional information from the requesting party.  *Id.* at §§ 552(a)(6)(A)(ii)(I), (II).  "In unusual circumstances," the agency may receive a maximum ten day extension to file its response upon written notice to the requesting party.  *Id.* at § 552(a)(6)(B)(i).

29.     Where an agency fails to respond to a request for agency records within the FOIA deadlines, the requesting party is deemed to have exhausted its administrative appeal remedies and is free to file suit against the agency in federal district court. 5 U.S.C. § 552(a)(6)(C)(i).

30.     Upon receipt of a complaint for the denial of records under a FOIA request, this Court has the authority "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).  The Court also has authority to order reimbursement of a records requestor's reasonable attorneys' fees and litigation costs.  5 U.S.C. § 552(a)(4)(E).

## VI.     FACTUAL ALLEGATIONS

### A.     ATF's historical issuance of 5.45x39mm ammunition importation permits to PWA

31.     The 7N6 5.45x39mm rifle cartridge was designed and introduced by the Soviet Union in the 1970s for military use with the AK-74 assault rifle. ATF subsequently approved importation of 7N6 5.45x39mm ammunition for public resale in the United States for civilian use, e.g., in chambered bolt-action and semi-automatic rifles for sporting purposes.

32.     For several years, ATF issued permits to PWA authorizing importation of surplus 7N6 5.45x39mm rifle ammunition manufactured in Russia and former Soviet Bloc nations.  For example, the ATF authorized importation Permit No. 12-04018 on May 25, 2012, and Permit No. 12-05278 on July 12, 2012.  PWA's permit applications generally described this rifle ammunition as having been manufactured by "Russian State Factories," or the equivalent for other countries, such as Bulgaria, and as "FMJ ball," or full metal jacket rounds.

33.     At all relevant times to the allegations in this complaint, it has been common knowledge in the ammunition and firearms industry and trade in the United States, regulated by ATF, that surplus 7N6 5.45x39mm rifle ammunition, manufactured by Russian State Factories and former Soviet Bloc countries, contains a small steel insert that is part of the core of the projectile,

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF AND DAMAGES - 8

and is sometimes referred to as "unhardened" or "mild steel." The projectile core in "FMJ ball" 7N6 5.45x39mm ammunition is encased by a copper or steel jacket. On information and belief, the projectile core of this ammunition is not constructed entirely of steel, or from a combination of steel and tungsten alloys, iron, brass, bronze, beryllium copper, or depleted uranium.

34. Upon information and belief, no production handgun capable of discharging 5.45x39mm ammunition is currently, or ever has been, commercially available to the general public in the United States.

35. ATF continued to issue permits to PWA in 2013 through 2014 authorizing importation of 7N6 5.45x39mm rifle ammunition manufactured by Russian State Factories and former Soviet Bloc countries.

36. On February 5, 2013, ATF authorized PWA to import 50 million rounds of 7N6 5.45x39mm "FMJ Ball" ammunition, expressly designated by PWA in the permit application as "Russian State Factories (Former USSR)," under Permit No. 13-00760. Under this permit, PWA imported over 33 million rounds of 5.45x39mm rifle ammunition for resale to FFLs in the United States.

37. On February 15, 2013, ATF authorized PWA to import an additional 50 million rounds of 7N6 5.45x39mm "FMJ Ball" ammunition, expressly designated by PWA in the permit application as "Russian State Factories (Former USSR)," under permit No. 13-01216. Under this permit, PWA imported over four million rounds of 5.45x39mm rifle ammunition for resale to FFLs in the United States.

38. On February 21, 2014, PWA received ATF approval to import another 50 million rounds of 7N6 5.45x39mm "FMJ Ball" ammunition, expressly designated by PWA in the permit application as "Russian State Factories (Former USSR)," under permit No. 14-00996.

**B.     ATF's permits authorized PWA to buy and import 50 million 5.45x39mm rounds for resale to FFLs in the United States**

39. Permit Nos. 13-00760, 13-01216 (and subsequently, Permit No. 14-00996) authorized PWA to buy and import 50 million rounds of 5.45x39mm rounds for resale to FFLs in

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF AND DAMAGES - 9

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

the United States.  On May 21, 2013, PWA contracted with the German company Sabine Schneider Waffen and Munition ("Sabine Schneider") to purchase 50 million rounds of Russian-made surplus 7N6 5.45x39mm FMJ ball ammunition, at .0605 cents per round, for $3,025,000.00 to import for resale as rifle ammunition to FFLs in the United States.

40.     From May 2013 to early 2014, pursuant to the agreement, PWA imported partial shipments of this 7N6 5.45x39mm ammunition purchased from Sabine Schneider.  By September 2013, PWA had successfully imported 37,739,520 rounds from Sabine Schneider for resale to FFLs in the United States.

41.     PWA made arrangements for importation, transportation and storage of the remaining 12 million rounds of this 7N6 5.45x39mm ammunition from Sabine Schneider pursuant to their existing 2013 purchase agreement.  On or about January 15, 2014, PWA requested Sabine Schneider to prepare and ship approximately one fourth of the remainder (2,903,040 rounds) of Russian-made surplus 5.45x39mm FMJ ball ammunition to the United States under Permit No. 13-01216.  Sabine Schneider prepared two corresponding commercial invoices, each for 1,451,520 rounds.

42.     PWA incurred packaging and overseas ground transportation expenses for these two shipments, which were invoiced by Sabine Schneider.

43.     PWA incurred additional marine loading and sea freight expenses for marine transportation of two containers from Hamburg, Germany to Norfolk, Virginia.

44.     PWA incurred customs broker expenses to process the two containers and to arrange transportation from Norfolk to PWA's warehouse in Apollo, Pennsylvania.

45.     Pursuant to PWA's request, Sabine Schneider arranged third and fourth shipping containers for marine transport of an additional 2,903,040 rounds of Russian-made surplus 7N6 5.45x39mm FMJ ball ammunition from Germany to the Unites States under Permit No. 14-00996; Sabine Schneider prepared additional corresponding commercial invoices and arranged ground transportation of the shipments, packaging, and loading into shipping containers for marine transportation.

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

46.    On February 17, 2014, the first and second containers arrived in Norfolk.  ATF stopped these containers through Customs and Border Protection agents, who notified PWA's customs broker.  On February 21, 2014, the ATF nevertheless approved Permit No. 14-00996 for PWA to import another 50 million rounds of 7N6 5.45x39mm FMJ ball ammunition.

47.    After receiving notice from PWA's customs broker, PWA's president, Stacy Prineas, promptly contacted the ATF to determine the basis for delay of the imported ammunition. On March 11, 2014, the ATF's Imports Branch sent Mr. Prineas an email communication stating its "recent findings" that the ammunition was "armor piercing" as follows:

> Mr. Prineas:
>
> You recently inquired about a shipment of 5.45x39mm ball ammunition being imported from Germany.  You informed me that the shipment was detained due to ATF requesting a metallurgy test on the ammunition.  It was since evaluated by the Firearms Technology Branch and the ammunition has been found to contain steel core.  Since it contains steel core and can be used in a handgun, the ammunition is classified as "armor piercing ammunition" per 18 U.S.C. §921(a)(17)(B)(i).  Armor piercing ammunition is considered non-sporting and cannot be imported unless it is for use by the United States, any department or agency of the United States, any State, or any department, agency, or political subdivision of a State.
>
> Due to the recent findings, you have several options:
> •   File another Form 6 to place the ammunition into a CBW or FTZ
> •   Export the ammunition
> •   Abandon the ammunition to CBP
>
> Please advise our office of the option best suits you.

48.    On March 12, 2014, ATF stopped the third and fourth containers in Norfolk.

49.    Due to ATF's actions and the agency's reclassification of ammunition, PWA placed a rush hold on importation of the final six million rounds of surplus 5.45x39mm FMJ ball ammunition.  PWA continues to incur additional expenses for storage of this ammunition at Hamburg, Germany.  Prior to this importation hold, PWA paid Sabine Schneider for packaging and ground transportation to Hamburg.

50.    PWA incurred additional expenses for loading and transportation of the four imported containers containing 5,806,080 rounds to a Free Trade Zone storage facility in Reno, Nevada.

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF AND DAMAGES - 11

**C.      ATF's arbitrary and capricious reclassification of 5.45x39mm ammunition**

51.      Prior to ATF stopping PWA's imported shipments of surplus 7N6 5.45x39mm FMJ ball ammunition in February 2014, ATF provided no notice to PWA, the firearms industry in the United States, or the general public that the agency intended to reclassify this common rifle ammunition as "armor piercing" based upon a finding that the ammunition was capable of use in a commercially available handgun, a position irreconcilable ATF's prior rule-making decisions and the agency's delegated authority.

52.      As noted, upon information and belief, no handgun capable of discharging 5.45x39mm ammunition is currently, or ever has been, commercially available to the general public in the United States.  ATF apparently agrees because an internal ATF email communication dated February 27, 2014, from an undisclosed ATF employee to Earl Griffith, Chief of the Firearms Technology Branch ("FTB") of the ATF in Martinsburg, West Virginia, noted that ATF personnel were "unaware of any production 5.45x39 caliber pistols currently on the market."

53.      Nevertheless, ATF's Public Affairs Division issued the following "special advisory" dated April 7, 2014:

### TEST, EXAMINATION AND CLASSIFICATION OF 7N6
### 5.45X39 AMMUNITION

On March 5, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) received a request from the U.S. Customs and Border Protection agency (CBP) to conduct a test, examination and classification of Russian-made 7N6 5.45x39 ammunition for purposes of determining whether it is considered "armor piercing ammunition" as defined by the Gun Control Act (GCA), as amended. Since 1986, the GCA has prohibited the importation of armor piercing ammunition unless it is destined for government use or testing. The imported ammunition about which CBP was inquiring was not destined for either excepted purpose.

The Gun Control Act of 1968 (GCA), as amended, defines the term "armor piercing ammunition" as:

"*(i)      a projectile or projectile core which may be used in a handgun and which is constructed entirely (excluding the presence of traces of other substances) from one or a combination of tungsten alloys, steel, iron, brass, bronze, beryllium copper, or depleted uranium;* **or**

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF AND DAMAGES - 12

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

*(ii)      a full jacketed projectile larger than .22 caliber designed and intended for use in a handgun and whose jacket has a weight of more than 25 percent of the total weight of the projectile."*

When ATF tested the 7N6 samples provided by CBP, they were found to contain a steel core. **ATF's analysis also concluded that the ammunition could be used in a commercially available handgun, the Fabryka Bronie Radom, Model Onyks 89S, 5.45x39 caliber semi-automatic pistol,** which was approved for importation into the United States in November 2011. **Accordingly, the ammunition is "armor piercing" under the section 921(a)(17)(B)(i) and is therefore not importable.** ATF's determination applies only to the Russian-made 7N6 ammunition analyzed, not to all 5.45x39 ammunition. Ammunition of that caliber using projectiles without a steel core would have to be independently examined to determine their importability.

(Emphasis added).

54.     On information and belief, the "Fabryka Bronie Radom, Model Onyx 89S" that ATF referenced in its April 7, 2014 special advisory originally was submitted by Dalvar USA, a FFL based in Kingsland, Texas, as a single prototype sample in November 2011 to ATF's FTB and approved for importation; only three additional "Fabryka Bronie Radom, Model Onyx 89S" prototypes were imported for research and development purposes, but none for commercial resale.

55.     On information and belief, Marshall Arms LLC ("Marshall"), a FFL also located in Kingsland, Texas, imported these three additional non-commercial "Fabryka Bronie Radom, Model Onyx 89S" prototypes.  On information and belief, Dalvar USA transferred its single initial prototype to Marshall.   Subsequently, Marshall submitted to ATF a Notice of Firearms Manufactured or Imported dated December 5, 2013, to reclassify each of the four "Fabryka Bronie Radom, Model Onyx 89S" prototypes as a "Short Barrel Rifle," not a handgun.  ATF approved the re-classification on February 7, 2014.  On information and belief, the four short barreled rifles remain in Marshall's possession.   None of these short-barreled rifles have ever been sold commercially.

56.     On information and belief, no "Fabryka Bronie Radom, Model Onyx 89S" has been imported to the United States for commercial resale, and no "Fabryka Bronie Radom, Model Onyx 89S" is commercially available in the United States.

57.     Despite ATF's approval of the "Fabryka Bronie Radom, Model Onyx 89S"  for importation to the United States, and knowledge that 7N6 5.45x39mm FMJ ball ammunition

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF AND DAMAGES - 13

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

manufactured in former Soviet Bloc countries contained a steel insert, the ATF continued to approve permits for the importation of 7N6 5.45x39mm rounds from 2011 until 2014. Specifically, with actual knowledge of these facts and circumstances, ATF authorized PWA pursuant Permit No. 14-00996 dated February 21, 2014, to import 50 million rounds of "Russian State Factories (Former USSR)" manufactured 7N6 5.45x39mm FMJ ball ammunition for the specific purpose of "resale to FFL dealers."

58.    PWA received from the U.S. Customs and Border Protection Department of Homeland Security a notice dated March 3, 2014, indicating that ATF had requested PWA's shipment of 7N6 5.45x39mm ammunition be delayed for "ATF testing" of "metallurgy."  On information and belief, ATF placed this hold on PWA's ammunition shipment two days before the purported March 5, 2014 "request from the U.S. Customs and Border Protection" that was referenced in ATF's April 7, 2014 special advisory.

59.    After PWA's shipment was delayed in February 2014, PWA contacted ATF to determine the reason for the delayed importation.  On March 4, 2014, an internal ATF email stated: "We [e.g., ATF] pulled the permits and we did approve the 5.45x39 ball ammunition for PW Arms. We were not aware then that there was a handgun chambered for that round so we neglected to ask if the ammunition was lead core or steel core."  Another internal ATF email, dated April 10, 2014, indicated that ATF's searches of commercially available firearms for sale by FFLs revealed no handguns capable of using 5.45x39mm ammunition.

60.    By contrast to the lack of notice prior to ATF stopping PWA's ammunition shipments, ATF on February 13, 2015, issued a "notice" of its intention to ban the commercially available M855 rifle cartridge, also known as "green tip" 5.56, as "armor-piercing ammunition" and illegal under the GCA.  ATF set a "public comment period" on the proposed regulation change, which removes the classification of M855 ammunition as "primarily intended to be used for sporting purposes" under 18 U.S.C. § 921(a)(17)(C), ending March 16, 2015.  In a related publication concurrently issued by ATF, "Framework for Determining Whether Certain Projectiles are 'Primarily Intended for Sporting Purposes' Within the Meaning of 18 U.S.C. 921(a)(17)(C),"

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF AND DAMAGES - 14

ATF expressly acknowledged that its proposed rule-making action would mean that "importers will be unable to import such ammunition, and manufacturers and importers will be prohibited from selling or distributing the ammunition."  Thus, ATF's public comment period was intended to solicit "comments on how it can best implement withdrawal of this exemption while minimizing disruption to the ammunition and firearm industry and maximizing officer safety."  On or about March 10, 2015, after receiving the "vast majority" of comments critical of regulatory change, ATF reversed its decision to ban M855 "green tip" ammunition in favor of plans for "more study."

61.    ATF arbitrarily and capriciously did not provide any similar public comment period or opportunity for FFLs to liquidate ammunition inventory before delaying PWA's 7N6 5.45x39mm ammunition shipments in February 2014 as described above, and before issuing a public "special advisory" on April 7, 2014, reclassifying 7N6 5.45x39mm ammunition as armor piercing and illegal for importation and resale to the general public when no handgun capable of discharging 5.45x39mm ammunition is currently, or ever has been, commercially available to the general public in the United States.

**D.    ATF's refusal to provide information and records regarding its reclassification of 5.45x39mm ammunition**

62.    PWA contacted ATF repeatedly after ATF stopped PWA's shipments of 5.45x39mm ammunition in February and March 2014 to obtain information regarding the nature and reasons for ATF's actions, and information regarding the existence of any handgun capable of using 5.45x39mm ammunition.

63.    When ATF refused to provide this information, PWA sent ATF a letter dated July 18, 2014 that requested the following public records pursuant to the FOIA:

1.    All records from January 1, 2011 regarding the importation of Russian-made, or Soviet Bloc-made, 7N6 5.45x39mm ammunition by PW Arms, Inc., including e-mail messages, correspondence and permits.

2.    All records from January 1, 2011 discussing, referring to, interpreting, or reflecting ATF's testing and decision to classify

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF AND DAMAGES - 15

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

Russian-made, or Soviet Bloc-made, 7N6 5.45x39mm ammunition as "armor piercing ammunition" under the Gun Control Act and unlawful for importation to the U.S. for resale to the general public, including records related to ATF's April 7, 2014 Special Advisory regarding "Test, Examination and Classification of 7N6 5.45x39 Ammunition," and any prior notices from ATF to regulated firearm and ammunitions license holders regarding the same topics.

3.   All records discussing, referring to, interpreting, or reflecting ATF's review process and decision to approve the Fabryka Bronie Radom, Model Onyks 89S caliber semi-automatic pistol for importation to the U.S. for sale as a "commercially available" handgun in U.S. market.

4.   All records obtained by ATF showing foreign and U.S. manufacture or distribution of handgun(s) that chamber the 5.45x39mm round.

5.   All records, from January 1, 2011 to the present, of U.S. companies that import, or have imported, Russian-made, or Soviet Bloc-made, 7N6 5.45x39mm ammunition for resale in U.S. market.

6.   All records discussing, referring to, interpreting, or reflecting decisions regarding the categorization of any non-Russian/Soviet Bloc-made 5.45x39mm ammunition, cartridges or projectiles as "armor piercing ammunition."

7.   All records regarding a domestic manufacture Bulgarian Krinkov AKSU 5.45x39mm Pistol by MC Arms (Missouri Custom Armament) and any other handgun capable of firing 5.45x39mm ammunition that ATF considers "commercially available" to purchasers in the United States.

8.   All records documenting actions by ATF to reclassify the Fabryka Bronie Radom, Model Onyks 89S as a short-barreled rifle, including all records discussing, referring to, interpreting, or reflecting a December 5, 2013 Notice of Firearms Manufactured or Imported by Marshall Arms LLC and any actions taken by ATF regarding this notice.

64.   On information and belief, the "Bulgarian Krinkov AKSU" pistol referenced in PWA's letter above was a custom-made firearm that was never approved as a production model

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF AND DAMAGES - 16

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

by ATF for domestic sale or made commercially available by "MC Arms" or any other FFL.  On further information and belief, Missouri Custom Armament, LLC closed its business and surrendered its federal firearms license in 2010 and subsequently has not been a FFL.

65. To date, ATF has provided no records or substantive response regarding PWA's request under the FOIA.

**E.    PWA's damages and good faith mitigation efforts**

66. On December 2, 2014, PWA submitted a claim form to ATF with supporting documentation demonstrating $2,974,685.20 in damages caused by the actions of ATF for which defendant United States of America is liable. ATF denied the claim. *See* Complaint Appendix A.

67. Due to ATF's reclassification of 7N6 5.45x39mm ammunition, its negligent and wrongful approval of PWA's above-described permits, and its subsequent stoppage of PWA's shipments in 2014, PWA has been unable to sell its shipment to other FFLs pursuant to the purpose of importation for the 12 million rounds remaining from its 2013 contractual agreement with Sabine Schneider.

68. Due to ATF's actions, PWA continues to incur additional storage costs from the partial shipment of 5,806,080 rounds in the Free Trade Zone in Reno, Nevada and partial shipment of 6,292,800 rounds in Hamburg, Germany.

69. PWA also has been unable to locate a governmental or law enforcement agency as an alternative lawful buyer for this ammunition.

**CLAIM ONE**
**(APA: Arbitrary and Capricious Agency Action by Defendant ATF)**

70. Plaintiff PWA realleges and incorporates paragraphs 1 through 69 by reference as if fully set forth herein.

71. Pursuant to 5 U.S.C. § 702, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial relief thereof."

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF AND DAMAGES - 17

72.     Pursuant to 5 U.S.C. § 706(2), a court in an APA action may hold unlawful and set aside agency action, findings, and conclusions found to be:

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

73.     As a U.S. government agency, defendant ATF is subject to the provisions of the APA.

74.     ATF's stoppage of PWA's imported shipments of 7N6 5.45x39mm ammunition based upon the agency's reclassification of this ammunition as "armor piercing" and capable of use in a commercially available handgun, and ATF's subsequent issuance of an April 7, 2014 "special advisory" regarding its rule-making decision, violated the APA in several substantive and procedural ways and are: (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, including 18 U.S.C. § 921(a)(17)(B) and lacked a rational connection between the facts found and the classification of the ammunition; (b) contrary to PWA's constitutional rights and constitute a deprivation of property without due process of law; (c) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, including the Commerce Clause, since there is no substantial link between any known custom made handgun that may use 7N6 5.45x39mm ammunition and interstate commerce; and (d) without observance of procedure required by law, including but not limited to the requirement under 18 U.S.C. 926(b) that the "Attorney General shall give not less than ninety days public notice, and shall afford

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF AND DAMAGES - 18

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

interested parties opportunity for hearing, before prescribing such rules and regulations," and under 5 U.S.C. § 553(b)(3), (c), which similarly requires an agency to provide and publish notice of such proposed rule-making decisions.

75.   As the actual and proximate cause of ATF's unlawful actions described above, plaintiff PWA has suffered, and continues to suffer, irreparable injury, including to PWA's property rights over approximately 12 million rounds of 7N6 5.45x39mm ammunition purchased from Sabine Schneider pursuant to a 2013 contractual agreement, frustration of the specific purpose of ATF importation Permit Nos. 13-00760, 13-01216 and 14-00996 issued to PWA, incurring unnecessary storage and customs expenses and the costs of legal representation and additional expenses.

77.   Because Defendant ATF's actions were arbitrary and capricious, violated the APA and failed to comply with federal law, PWA is entitled to declaratory and injunctive relief, including an order that Defendant ATF authorize PWA's resale of the 7N6 5.45x39mm ammunition described above to FFLs, instruct any cooperating agency, including but not limited to U.S. Customs and Border Protection, to facilitate PWA's lawful wholesale distribution and trade of this ammunition in the United States, and reclassify this ammunition as lawful for importation, distribution to FFLs and sale to the general public.

### CLAIM TWO
**(FTCA: Intentional Interference with Chattels, Negligence, and
Wrongful Acts and/or Omissions by Defendant USA)**

78.   Plaintiff PWA realleges and incorporates paragraphs 1 through 69 by reference as if fully set forth herein.

79.   Defendant USA owed a duty to Plaintiff PWA to exercise ordinary care in reviewing and approving PWA's ammunition permit applications for Permit Nos. 13-00760, 13-01216 and 14-00996.

80.   Prior to receipt of PWA's ammunition permit applications for Permit Nos. 13-

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF AND DAMAGES - 19

00760, 13-01216 and 14-00996, ATF had actual knowledge of the FTB's review of a prototype sample of the Fabryka Bronie Radom, Model Onyx 89S and ATF's approval of this handgun for importation in November 2011.

81.     Defendant USA, through its agents, including ATF, subsequently breached the duty owed to PWA by failing to exercise ordinary care in reviewing and approving PWA's ammunition permit applications for Permit Nos. 13-00760, 13-01216 and 14-00996 for the importation of 7N6 5.45x39mm ammunition manufactured by Russia or former Soviet Bloc countries, when ATF knew it already had found this ammunition to be "armor piercing" under 18 U.S.C. § 921(a)(17)(B). Instead, ATF "rubber stamped" PWA's permit applications and "neglected to ask if the ammunition was lead core or steel core," despite ATF's subsequently stated determination that 7N6 ammunition is "not importable." ATF's negligence included issuing Permit No. 14-00996 to PWA on February 21, 2014, *after* placing a hold on PWA's shipment of 7N6 5.45x39mm ammunition on February 17, 2014.

82.     Defendant USA, through its agents, including ATF, intentionally interfered with plaintiff PWA's personal property when it approved PWA's ammunition importation permit applications for Permit Nos. 13-00760, 13-01216 and 14-00996.

83.     Defendant USA acted without justification when it approved PWA's ammunition importation permit applications for Permit Nos. 13-00760, 13-01216 and 14-00996 when, prior to receipt these permit applications, ATF had actual knowledge of FTB's review of a prototype sample of the Fabryka Bronie Radom, Model Onyx 89S and ATF's approval of this handgun for importation in November 2011. ATF already classified this ammunition to be "armor piercing" under 18 U.S.C. § 921(a)(17)(B), and hence the ammunition ATF approved for import was "not importable."

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

84.   The wrongfully approved ammunition importation permit applications for Permit Nos. 13-00760, 13-01216 and 14-00996 deprived PWA of possession and/or use of its personal property, including the ammunition imported under the these permits and money.

85.   ATF's issuance of a permit to import the above-described ammunition after ATF had determined that such ammunition was "not importable" is not susceptible to judgment or choice, or to a policy analysis.

86.   As the direct and proximate cause of defendant USA's negligent and/or wrongful acts and/or omissions, PWA was deprived of possession and/or use of its property and suffered damages including a loss of $2,974,685.20 as set forth at the time PWA presented its claim to the government, and additional ongoing costs and expenses in an amount to be proven at trial.

87.   Had a private entity under like circumstances committed the same or similar tortious acts and/or omissions as defendant USA, that entity would be liable in accordance with the law of Washington State, where the tortious acts and/or omissions occurred within the meaning of 28 U.S.C. § 1346(b).

88.   Accordingly, defendant USA is liable to PWA under 28 U.S.C. §§ 2671, 2674 and 1346 for its negligent and/or wrongful acts and/or omissions that caused PWA's significant identified damages.

## CLAIM THREE
### (Denial of FOIA Request by Defendant ATF)

89.   Plaintiff PWA realleges and incorporates paragraphs 1 through 88 by reference as if fully set forth herein.

90.   PWA, through its July 18, 2014 FOIA request, properly requested records within ATF's control.

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF AND DAMAGES - 21

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

91.     ATF has not produced any records to PWA in response to PWA's July 18, 2014 FOIA request, properly tolled the time for a response pending information required from PWA, or requested an extension of time.

92.     ATF has not affirmatively denied PWA's FOIA request, in whole or in part, or withheld records pursuant to any exemption listed in 5 U.S.C. § 552(b).

93.     PWA has exhausted the applicable administrative remedies with respect to ATF's wrongful withholding of records specifically requested in PWA's July 18, 2014 FOIA request.

94.     ATF violated the FOIA's requirement to release agency records to the public, pursuant to 5 U.S.C. §§ 552(a)(3)(A) and (a)(4)(B) by failing to respond to PWA's July 18, 2014 FOIA request, thereby constructively denying that request.

95.     Accordingly, PWA is entitled to injunctive and declaratory relief with respect to the release and disclosure of the records requested in its July 18, 2014 FOIA request, as well as reimbursement of attorneys' fees and litigation costs.

## PRAYER FOR RELIEF

Wherefore, Plaintiff PWA respectfully requests this Court to grant the following relief:

### I.     APA INJUNCTION AND RELIEF

(1)     Hold unlawful and set aside ATF's reclassification of 7N6 5.45x39mm ammunition manufactured in Russian or former Soviet Bloc countries as "armor piercing" as arbitrary and capricious, and not in accordance with federal law;

(2)     Declare that such 7N6 5.45x39mm ammunition is not "armor piercing" within the meaning of 18 U.S.C. § 921(a)(17)(B) and order Defendant ATF to reclassify this ammunition as lawful for importation, distribution to FFLs and sale to the general public;

(3)     Order that Defendant ATF authorize PWA's resale of the 7N6 5.45x39mm ammunition described above, instruct any cooperating agency, including but not limited to U.S. Customs and Border Protection, to facilitate PWA's lawful wholesale distribution and trade of the ammunition in the United States for sporting purposes;

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF AND DAMAGES - 22

(4)     Order a permanent injunction to the extent necessary to effectuate relief referenced herein; and

(5)     Award such other relief, including costs and attorneys' fees pursuant to 28 U.S.C. § 2412, as appropriate.

## II.     DECLARATORY JUDGMENT

Impose a final judgment pursuant to the APA, GCA and related ATF rules and relevant CFR provisions (a) declaring that such 7N6 5.45x39mm ammunition described above is not "armor piercing" within the meaning of 18 U.S.C. § 921(a)(17)(B); (b) declaring that ATF was arbitrary and capricious and failed to comply with federal law when it stopped PWA's shipments of 7N6 5.45x39mm ammunition and in issuing ATF's April 7, 2014 "special advisory" regarding this ammunition; and (c) prohibiting ATF from taking any action inconsistent with such declaratory judgment.

## III.     FTCA JUDGMENT

(1)     Enter a money judgment in favor of Plaintiff PWA and against Defendant USA for plaintiff's damages, including financial losses caused by ATF's negligent and/or wrongful approval of PWA's importation permits for 7N6 5.45x39mm ammunition, interest charges, storage charges, loss of profit on the ammunition, loss of business reputation, and all other related costs and expenses in the amount of $2,974,685.20, plus additional ongoing costs and expenses in an amount to be proven at trial; and

(2)     Award Plaintiff PWA reasonable attorneys' fees and costs.

## IV.     FOIA INJUNCTION

(1)     Declare that Defendant ATF violated the FOIA by failing to lawfully satisfy PWA's July 18, 2014 FOIA request;

(2)     Order ATF to process and release immediately all records responsive to PWA's July 18, 2014 FOIA request;

(3)     Retain jurisdiction of this action to ensure timely processing of PWA's FOIA request and that no agency records are wrongfully withheld; and

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF AND DAMAGES - 23

(4)     Award PWA its reasonable attorneys' fees and litigation costs in this action, pursuant to 5 U.S.C. § 552(a)(4)(E).

## V.     COSTS AND EXPENSES

Issue an Order granting Plaintiff PWA its costs and expenses, including reasonable attorneys' fees pursuant to the Equal Access to Justice Act (28 U.S.C. § 2412 and 5 U.S.C. §504), so wrongfully incurred due to Defendants' actions.

## VI.     OTHER RELIEF

Issue an Order granting plaintiff PWA such other relief as this Court may deem just and proper in equity or at law.

Respectfully submitted,


DATED this 18th day of December, 2015.

**McKAY CHADWELL, PLLC**



By s/ Robert G. Chadwell_____
By s/ Patrick J. Preston_____
By s/ Thomas M. Brennan_____
Robert G. Chadwell, WSBA No. 22683
Patrick J. Preston, WSBA No. 24361
Thomas M. Brennan, WSBA No. 30662
Attorneys for Plaintiff P.W. Arms, Inc.
600 University Street, Suite 1601
Seattle, WA  98101-4124
Phone: (206) 233-2800
Fax:    (206) 233-2809
Email: rgc1@mckay-chadwell.com
          pjp@mckay-chadwell.com
          tmb@mckay-chadwell.com

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF AND DAMAGES - 24

# Complaint Appendix A



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Chief Counsel*

Washington, DC 20226
www.atf.gov

LIT-15-220175-SYK

~ 2 JUL 2015

VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED

RECEIVED

JUL 06 2015

By McKay Chadwell, PLLC

Robert Chadwell, Esq.
McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, WA 98101

Re:    FTCA Administrative Claim of PW Arms, Inc.

Dear Mr. Chadwell:

This is regarding an administrative claim that you, on behalf of PW Arms, Inc. (PW), presented to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-80. PW seeks $2,974,685.20 in damages.

The claim has been denied.

If PW is not satisfied with this action, a lawsuit must be filed in the appropriate United States district court not later than six months after the date of mailing of this notification.

Sincerely yours,

Melissa A. Anderson
Associate Chief Counsel
Litigation Division

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF AND DAMAGES - 25

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809