Judge John C. Coughenour

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

P.W. Arms, Inc., a
Washington corporation,

                              Plaintiff,

        v.

UNITED STATES OF AMERICA and the
BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES, a Federal
Agency,

                              Defendants.

CASE NO. 15-cv-01990

DEFENDANTS PARTIAL MOTION TO
DISMISS PURSUANT TO FED. R. CIV. P.
12(b)(1)

Noted for Consideration on:  March 18, 2016

        COME NOW the defendants Untied States of America and the Bureau of Alcohol, Tobacco,

Firearms and Explosives ("ATF") (collectively "Defendants" or "Government"), by and through

their attorneys, Annette L. Hayes, United States Attorney for the Western District of Washington,

and Jessica M. Andrade, Assistant United States Attorney, and hereby respectfully move this Court

for an order dismissing Plaintiff P.W. Arms, Inc.'s ("Plaintiff") second claim for relief, made under

the Federal Tort Claims Act ("FTCA"), for lack of subject matter jurisdiction.

DEFENDANTS' PARTIAL MOTION TO DISMISS - 1
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## I.     INTRODUCTION

Plaintiff's Complaint seeks, first and foremost, relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*[1] Compl. at 1 (Dkt. No. 1).  In the alternative, however, Plaintiff's Complaint also asserts a claim for damages under the FTCA, 28 U.S.C. § 2671 *et seq.*  Compl. ¶ 9. Specifically, Plaintiff alleges that the ATF "negligently and/or wrongly approved PWA's importation permit . . . and is liable for all damages actually and proximately caused by ATF's negligent and/or wrongful acts and/or omissions in an amount to be determined at trial."  *Id.* Defendants seek dismissal of this claim because the FTCA explicitly does not waive immunity where, as here: (1) there is no private analogue for the tort alleged against the Government; (2) the acts or omissions complained of involved a discretionary function of the Government; (3) the claim arises in respect of the detention of goods by an officer of customs or any other law enforcement officer; and (4) the tort alleged is intentional or for interference with contract rights.  *See* 28 U.S.C. §§ 2674, 2680(a), (c), (h).  Accordingly, Plaintiff's second claim for relief should be dismissed for lack of subject matter jurisdiction.[2]

## II.    BACKGROUND

### A.    Regulatory Background

Plaintiff's Complaint alleges that the ATF negligently and improperly granted permits to Plaintiff in order to import certain ammunition, and thereafter negligently and improperly revoked

---

[1]     Plaintiff also brings a third claim for relief under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*  The Government is in the process of producing documents in response to Plaintiff's FOIA claim.

[2]     Defendants' motion tolls the time for Defendants to respond to Plaintiff's first and third claims for relief.  *See* Federal Rule of Civil Procedure 12(a)(4); *see also Sun v. Rickenbacker Collecs.*, No. 5:10-CV-1055 EJD, 2012 WL 2838782, at *2 (N.D. Cal. July 10, 2012) ("The majority of courts have held that Rule 12(a)(4)(A) also applies in circumstances where, as here, the defendant files a motion to dismiss that is only partially dispositive."); *Talbot v. Sentinel Ins. Co., Ltd.*, No. 2:11–cv–01766–KJD–CWH, 2012 WL 1068763, at *4 (D.Nev. Mar. 29, 2012) ("[The] majority of courts that have held that a pending motion to dismiss, although it may only address some of the claims alleged, tolls the time to respond to all claims under Rule 12(a)(4).").

DEFENDANTS' PARTIAL MOTION TO DISMISS - 2
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

those permits after further inspecting the ammunition.  The administrative framework under which the ATF was operating begins with Section 38 of the Arms Export Control Act ("AECA"), which authorizes the President to control the importation of defense articles and defense services.  22 U.S.C. § 2778(a)(1).  The statute also provides that no designated defense articles may be imported without a license in accordance with AECA and regulations issued thereunder.  22 U.S.C. § 2778(b)(2).  Authority under Section 38 has, in turn, been delegated to the Secretaries of State, Treasury, and Defense. Exec. Order No. 11958, 3 C.F.R. § 79 (1977), reprinted in 22 U.S.C. § 2751.  The delegation grants the Secretary of the Treasury primary responsibility for issuing and administering permanent import controls of defense articles and services.  The Secretary of Treasury has re-delegated implementation authority to the ATF.  Executive Order No. 11432 (October 22, 1968); 1968–2 C.B. 906; Treasury Department Order No. 120–01 (formerly No. 221), 37 Fed.Reg. 11696 (1972).

The United States Munitions Import List ("USMIL") enumerates firearms and ammunition which may be imported into the United States under the provisions of the AECA administered by ATF.  27 C.F.R. § 447.21.  Importers must submit and receive ATF approval of an ATF Form 6, "Application and Permit for Importation of Firearms, Ammunition and Implements of War," in order to import firearms, ammunition, and implements of war into the United States.  27 C.F.R. § 447.41-.42.  An ATF Form 6 requires applicants to provide the ATF various information, including the type of ammunition, and the caliber, gauge, or size of the ammunition, among other things.  *Id.* § 447.42(a)(1)(iv).

The Gun Control Act of 1968 ("GCA"), as amended, prohibits the import, manufacture, and distributions of "armor piercing ammunition."  The GCA provisions defining and governing armor piercing ammunition were originally enacted in the Law Enforcement Officers Protection Act of 1986 ("LEOPA").  The GCA defines "armor piercing ammunition" as:

> (i) a projectile or projectile core which may be used in a handgun and which is constructed entirely (excluding the presence of traces of other substances) from one

DEFENDANTS' PARTIAL MOTION TO DISMISS - 3
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

or a combination of tungsten alloys, steel, iron, brass, bronze, beryllium copper or depleted uranium; or

(ii) a full jacketed projectile larger than .22 caliber designed and intended for use in a handgun and whose jacket has a weight or more than 25 percent of the total weight of the projectile.

18 U.S.C. § 92l(a)(l7)(B) (emphasis added).  Relevant to this matter is subparagraph (i) which defines "armor piercing ammunition" as: a projectile or projectile core which (1) may be used in a handgun; and (2) is constructed entirely of a specified hard metal (i.e. has a metal core rather than just a metal jacket).  *Id.*

## B.   Plaintiff's Allegations

As Plaintiff details in the Complaint, Plaintiff sought permits from ATF to import 7N6 5.4x39mm ammunition (hereinafter "7N6 Ammunition") for public resale in the United States. Compl. ¶ 31.  Plaintiff's applications "generally described this rifle ammunition as having been manufactured by 'Russian State Factories,' or the equivalent for other countries, such as Bulgaria, and as 'FMJ ball,' or full metal jacket rounds," but did not reference a metal core.  *Id.* ¶ 32.  Plaintiff further alleges, however, that "[a]t all relevant times . . . it has been common knowledge . . . that surplus [7N6 Ammunition], manufactured by Russian State Factories and former Soviet Bloc countries, contains a small steel insert that is part of the core of the projectile . . . ."  *Id.* ¶ 33. Plaintiff's Complaint conspicuously does not contend that Plaintiff disclosed anywhere on its Form 6 permit applications that any of the ammunition it sought to import contained a steel core, or that the ammunition was "AP" or "armor piercing."  *See, e.g. id.* ¶¶ 32-33

The ATF reviewed Plaintiff's Form 6 applications and issued permits numbered 13-00760, 13-01216, and 14-00996 in 2013 and 2014.  These permits authorized Plaintiff to import "50 million rounds of 5.4x39mm rounds" of "7N6" rifle ammunition to sell in the United States.  Compl. ¶ 39. While the ATF approved the permits to import the 7N6 Ammunition, Plaintiff notes in the Complaint that the ATF was at that time "not aware . . . that there was a handgun chambered for that round so [ATF] neglected to ask if the ammunition was lead core or steel core."  Compl. ¶ 59.

DEFENDANTS' PARTIAL MOTION TO DISMISS - 4
Case No. 15-cv-01990-JCC

Plaintiff successfully imported some 37,730,520 rounds of 7N6 Ammunition during 2013 and 2014, under the permits referenced above. *Id.* ¶ 40. On February 17, 2014, the ATF, through Customs and Border Protection ("CBP"), stopped two containers which held 5,806,080 rounds of the 7N6 Ammunition, at Norfolk, Virginia. *Id.* ¶¶ 46, 50. Plaintiff contacted the ATF regarding CBP's detention of the shipments, and the ATF provided the following response, excerpted in Plaintiff's Complaint:

> You [Plaintiff] informed me [ATF] that the shipment was detained due to ATF requesting a metallurgy test on the ammunition. It was since evaluated by the Firearms Technology Branch and the ammunition has been found to contain steel core. Since it contains steel core and can be used in a handgun, the ammunition is classified as "armor piercing ammunition" per 18 U.S.C. § 921(a)(17)(B)(i). Armor piercing ammunition is considered non-sporting and cannot be imported unless it is for use by the United States . . . Due to the recent findings, you [Plaintiff] have several options:
>
> - File another Form 6 to place the ammunition into a CBW FTZ[3]
> - Export the ammunition
> - Abandon the ammunition to CBP
>
> Please advise our office of the option that best suits you.

Compl. ¶ 47. Plaintiff further contends that this conclusion on the part of the ATF was improper, alleging that there is no commercially available handgun capable of chambering the 7N6 Ammunition, and that the ATF should have known that the 7N6 Ammunition contained a steel core, despite the fact that Plaintiff made no such representation in the Form 6. Compl. ¶¶ 51-59.

Subsequently, on April 7, 2014, the ATF issued a special advisory "reclassifying 7N6 5.4x39mm ammunition as armor piercing and illegal for importation and resale to the general public . . ." Compl. ¶ 61. Plaintiff transported the 5,806,080 rounds of ammunition detained in Virginia to a Free Trade Zone in Reno, Nevada, and has halted a subsequent shipment of 6,292,800 rounds from Hamburg, Germany. *Id.* ¶ 68.

---

[3] "CBW" refers to "Customs Bonded Warehouse." "FTZ" refers to "Free Trade Zone."

DEFENDANTS' PARTIAL MOTION TO DISMISS - 5
Case No. 15-cv-01990-JCC

Pursuant to the FTCA, Plaintiff submitted an administrative claim to the ATF on December 2, 2014, for $2,974,685.20, which purportedly includes damages accrued because Plaintiff is "unable to sell its shipment to other FFLs [federal firearm license] pursuant to the purpose of importation for the 12 million rounds remaining from its 2013 contractual agreement with Sabine Schneider [Wassen & Munition],"[4] as well as "additional storage costs from the partial shipment of 5,806,080 rounds in the Free Trade Zone in Reno, Nevada and partial shipment of 6,292,800 rounds from Hamburg, Germany."  Compl. ¶¶ 66-68.  Plaintiff further describes these damages as including "financial losses" and "interest charges, storage charges, loss of profit on the ammunition, loss of business reputation, and all other related costs and business expenses. . ."  Compl. ¶ 23.

The ATF denied Plaintiff's administrative claim, after which this lawsuit was filed alleging not only that the ATF's actions were "arbitrary and capricious" under the APA, but also, in the alternative, that those same actions were negligent and/or that the ATF "intentional[ly] interfere[ed] with chattels" under the FTCA.  *See generally* Compl. ¶¶ 79-88.

### C.   The ATF Form 6 Process

There are, however, no set rules for the process of reviewing and approving, and if applicable, revoking Form 6 permits.  In general, however, ATF Examiners review the Form 6 applications in order to determine if the requested items are importable.  To do this, Examiners review the information provided, review applicable laws and regulations in order to determine whether the items are importable, and, importantly, have the discretion to research the items to be imported. Declaration of William E. Majors ("Majors Decl.") ¶18.  Form 6 applications require importers to provide ATF various information regarding ammunition to be imported, including whether the ammunition is armor piercing, or "AP."  *Id.* ¶¶ 10, 22.  The ATF generally relies upon the representations made by importers in their Form 6 applications.  *Id.* ¶¶  20-21.  ATF Examiners

---

[4]      Sabine Schneider Wassen & Munition ("Sabine Schneider") is the Germany entity from which Plaintiff purchased the ammunition.

DEFENDANTS' PARTIAL MOTION TO DISMISS - 6
Case No. 15-cv-01990-JCC

can, however, in their discretion, seek additional information from the importers or elsewhere when considering a Form 6 application.  *Id.* ¶ 19; *see also* Ex. A at 13-14 (Form 6 instructions, notifying applicants that additional information may be requested).  This practice is based on policy considerations of adjudicating Form 6 applications in a timely manner with limited resources, and the obligations of applicants who make Form 6 statements to be accurate.  Majors Decl. ¶ 21.

Once the permits are conditionally approved, as 27 C.F.R. § 447.44 notes, the permits can be revoked at any time.  *See also* Majors Decl. ¶ 28.  The approved permits in this case specifically stated that they did not authorize the importation of the ammunition if it fit the definition of armor piercing.  Majors Decl. ¶ 27; *see also* Ex. 3 (approved permits).   When the imported ammunition reaches U.S. soil it is inspected, and compared to the description on the original approved forms.  *Id.* ¶¶ 32-33.  When the goods imported do not match the description of what was originally approved, ATF conducts yet another investigation, and may involve other divisions of ATF outside of the Imports Branch, as well as other agencies.  *Id.*  ¶¶ 33-36.  Once all relevant information is gathered, decision-makers consider the results of the investigations, relevant statutes and regulations, and the policies behind the applicable firearm or ammunition law, in order to make a revocation decision. *Id.*  ¶¶ 35-36.

In this case, when one of Plaintiff's shipments of ammunition was inspected, CBP and ATF personnel suspected the ammunition was armor piercing.  *Id.* ¶ 42.  ATF investigated by taking possession of a sample for metallurgy testing, which determined the ammunition had a steel core. *Id. ¶* 43.  ATF then investigated further and found that the ammunition could be used in a handgun commercially available within the United States.  *Id.* ¶ 44.  Subsequently, the ATF Imports Chief, Mr. Majors, met with several colleagues to discuss the issue.  Together they considered the results of the investigation, and also weighed the policies behind the prohibition on armor piercing ammunition, including  preventing  terrorism, reducing violent crime, and protecting public from

criminal acts.  *Id.* ¶¶ 25, 45.  Ultimately Mr. Majors, in his discretion as Imports Chief, decided to revoke the permits.  *Id.* 44.

## III.   UNDERLINE ARGUMENT

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(1) if the court lacks subject matter jurisdiction over the action.  Jurisdiction is a threshold issue, and the separation of powers doctrine requires a federal court to determine whether it has jurisdiction at the outset, rather than defer the issue until trial.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).  A federal court is presumed to lack subject matter jurisdiction in a particular case unless the contrary affirmatively appears.  *A-Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003) (quotations omitted).  The plaintiff bears the ultimate burden of proving the existence of subject matter jurisdiction.  *Steel Co.*, 523 U.S. at 103-04.

A Rule 12(b)(1) jurisdictional attack may be facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted).  In a facial attack, the defendant asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  When a defendant makes a facial challenge, all material allegations in the complaint are assumed to be true, and the court must determine whether a lack of federal jurisdiction appears from the face of the complaint itself.  *Thornhill Publ'g Co. v. General Tel. Elec.*, 594 F.2d 730, 733 (9th Cir. 1979). Here, the United States brings a facial challenge under 12(b)(1) with respect to its arguments under 28 U.S.C. §§ 2674, 2680(c), and 2680(h), as Plaintiff's complaint does not, on its face, assert facts sufficient to circumvent the (1) private tort analogue, (2) detention of goods, or (3) intentional tort exceptions to the FTCA's limited waiver of sovereign immunity.

The United States also brings a factual challenge directly contesting this Court's jurisdiction based on the fact that the actions complained of are discretionary functions of the ATF, and therefore immune from liability under the FTCA.  28 U.S.C. § 2680(a).  For purposes of the discretionary function argument, the district court may review evidence beyond the complaint without converting

DEFENDANTS' PARTIAL MOTION TO DISMISS - 8
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  the motion to dismiss into a summary judgment motion.  *Savage v. Glendale Union High Sch.*, 343

2  F.3d 1036, 1039 n. 2 (9th Cir. 2003).  The Court need not presume the truthfulness of the allegations.

3  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  "Once the moving party has converted the

4  motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought

5  before the court, the party opposing the motion must furnish affidavits or other evidence necessary to

6  satisfy its burden of establishing subject matter jurisdiction."  *Savage*, 343 F.3d at 1039 n. 2.

### A.   Plaintiff's Negligence Claim Has No Private Analogue, And Therefore Must be Dismissed.

7

8      One of the FTCA's requirements, as described above, is that a plaintiff's claim against the

9  United States have a private analogue.  *See* 28 U.S.C. § 1346(b)(1) (waiving immunity for claims

10  based on "the negligent or wrongful act or omission of any employee of the Government . . . under

11  circumstances where the United States, if a private person, would be liable to the claimant in

12  accordance with the law of the place where the act or omission occurred."); *see also* 28 U.S.C.

13  § 2674 ("The United States shall be liable . . . relating to tort claims, in the same manner and to the

14  same extent as a private individual under like circumstances . . .").  The FTCA does not waive

15  sovereign immunity for causes of action where the claimed negligence arises out of the failure of the

16  United States to carry out federal statutory duties or otherwise follow federal law.  *See Meyer v.

17  F.D.I.C.*, 510 U.S. 471, 478, 114 S. Ct. 996, 127 L.Ed.2d 308 (1994) (FTCA does not waive

18  sovereign immunity for constitutional torts because those claims are based on a violation of federal

19  law, rather than the applicable state law); *Jachetta v. United States*, 653 F.3d 898, 904 (9th Cir.

20  2011) (allegations of violations of federal law are not actionable under the FTCA); *Love v. United

21  States*, 60 F.3d 642, 644 (9th Cir. 1995) ("The breach of a duty created by federal law is not, by

22  itself, actionable under the FTCA.").  Rather, jurisdiction under the FTCA may only be found where

23  there exist analogous circumstances in which state law would impose a duty of care on a private

person. *See United States v. Olson*, 546 U.S. 43, 46–47, 126 S.Ct. 510, 163 L.Ed.2d 306 (2005);

DEFENDANTS' PARTIAL MOTION TO DISMISS - 9
Case No. 15-cv-01990-JCC

*Westbay Steel, Inc. v. United States*, 970 F.2d 648 (9th Cir. 1992) ("[T]he FTCA applies only if there is a 'persuasive analogy with private conduct.'" (quoting *Woodbridge Plaza v. Bank of Irvine*, 815 F.2d 538, 543 (9th Cir. 1987))).

Here, Plaintiff's FTCA claim relies exclusively on the alleged negligence of the ATF in granting and then revoking the importation permits, which negligence, if it occurred, would not be actionable under the law of the District of Columbia, where the ATF is located.[5] Plaintiff alleges that the Government "negligently and/or wrongfully approved PWA's importation permit," "fail[ed] to exercise ordinary care in reviewing and approving PWA's ammunition permit applications," and "intentionally interfered with plaintiff PWA's personal property" when it approved the permits. Compl. ¶¶ 81-83.

The authority to restrict imports to and from the United States rests *exclusively* with the Federal Government. U.S. Const. art. I, § 8. The authority to regulate importation of the ammunition at issue here has been delegated specifically to the ATF. Reviewing Form 6 applications for the purpose of determining whether the requested ammunition should be imported into the country, and inspecting ammunition once it arrives in the country, is *exclusively* a governmental function without private analogue. Any negligence in performing this exclusively and inherently government function would involve breaches of duties created by federal law, the liability for which is *not* waived by the FTCA. *See e.g.*, *Dorking Genetics v. United* States, 76 F.3d 1261, 1266 (2nd Cir. 1996) (in considering FTCA claim of negligent allowance of importation of diseased cattle, stating "it is hard to imagine how state law could recognize a duty of a private person to stop international commercial transactions the regulation of which is reserved exclusively to the federal government"); *Geo. Byers Sons, Inc. v. East Europe Import Export, Inc.*, 463 F.Supp. 135, 137-38

---

[5] The ATF is headquartered, as asserted by the Complaint, in Washington, D.C., and thus Washington, D.C. law should apply to the underlying tort alleged. Regardless, there is no private analogue to the tort alleged based upon the law of any other jurisdiction that Plaintiffs could possibly claim applies. *See* Compl. ¶¶ 3 (noting ATF located in Washington, D.C.), 5 (alleging events occurred in Washington State), 46 (noting ammunition detained in Virginia), 52 (noting ATF personnel in West Virginia).

DEFENDANTS' PARTIAL MOTION TO DISMISS - 10
Case No. 15-cv-01990-JCC

(D. Md. 1979) (dismissing FTCA claim against customs agents for purportedly negligently allowing motorcycle into United States, where there could be no private analogue for customs function); *see also Delta Savings Bank v. United States*, 265 F.3d 1017, 1026 (9th Cir. 2001) ("To bring suit under the FTCA . . . [the] duty cannot spring from a federal law."); *Williams v. United States*, 242 F.3d 169 (4th Cir. 2001) (barring an FTCA claim based on the Emergency Medical Treatment and Active Labor Act because state law did not create duty alleged breached); *Jayvee Brand, Inc. v. United States*, 721 F.2d 385, 390 (D.C. Cir.1983) ( "quasi-legislative or quasi-adjudicative action by an agency of the federal government [banning a flame-retardant compound used in children's clothing] is action of the type that private persons could not engage in and hence could not be liable for under local law").[6]

The District Court for the District of Columbia endorsed this reasoning when it dismissed an FTCA claim against the ATF almost identical to the one before the Court here.  In *Appleton v. United States*, the court ruled that a claim against the ATF for negligence in granting a Form 6 permit to import ammunition, was not actionable under the FTCA due to lack of a private analogue. 180 F.Supp.2d 177, 184-86 (D.D.C. 2002) (hereinafter "*Appleton IV*").[7]  In *Appleton IV*, the importer submitted a Form 6 that did not disclose that the ammunition was made by a South African manufacturer on a list of companies whose products were barred from import into the United States. *Id.* at 180.  Once the ammunitions reached American soil and were inspected by the ATF, the import permits were revoked.  *Id.*  In dismissing the importer's subsequent FTCA claim, the court reasoned,

---

[6]      *See also Air Shuttle Corporation v. United States*, 112 F.3d 532 (1st Cir. 1997) (claimed failure of Secretary of Transportation and Federal Aviation Administration to take enforcement action was not conduct for which private individual could be held liable, and thus was not actionable under the FTCA); *C.P. Chemical Company, Inc. v. United States*, 810 F.2d 34 (2nd Cir. 1987) (United States was not liable under a FTCA claim where no private individual could be held liable for the same action [banning a particular type of insulation], which was based on the provisions of the Consumer Product Safety Act.).

[7]      This is one of four opinions issued by the District Court in Washington, D.C. in the *Appleton* case. The decisions, which will be discussed more fully *infra*, can be found at: 69 F.Supp.2d 3 (1999) ("*Appleton I*"); 98 F.Supp.2d 30 (2000) ("*Appleton II*"); and No. 98-0344, 2001 WL 45473 (D.D.C. Jan. 5, 2011) ("*Appleton III*").

"[r]eviewing applications for the purpose of determining whether the applicant is authorized to import ammunition is exclusively a governmental function governed by federal regulations administered by [ATF] without any private counterpart." *Id.* at 185.

Other federal courts have repeatedly ruled similarly when confronted with FTCA claims against governmental entities for negligence in the carrying out of official governmental duties without private counterpart. *See, e.g.*, *Washington v. Drug Enforcement Admin.*, 183 F.3d 868, 873 (9th Cir. 1999) (the act of applying for a search warrant has no analogous counterpart for private citizens and, thus, there is no liability under the FTCA); *Westbay*, 970 F.2d at 650 (9th Cir. 1992) (failure to use reasonable care in approving Miller Act sureties is not actionable under the FTCA, even if the subcontractor relied on the approval); *Akutowicz v. United States*, 859 F.2d 1122 (2d Cir. 1988) (wrongful revocation of citizenship is not actionable under the FTCA, because "quasi-legislative or quasi-adjudicative action by an agency of the federal government is action of the type that private persons could not engage in and hence could not be liable for under local law.").[8]  Given the lack of private analogue here, Plaintiff's FTCA claim for negligence must be dismissed for lack of subject matter jurisdiction.

### B.   The Acts or Omissions Complained of are Discretionary Functions of the United States, And are therefore Immune from Liability.

The "discretionary function" exception to FTCA liability, 28 U.S.C. 2680(a), provides that sovereign immunity is not waived for:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure

---

[8]     *See also Chen v. United States*, 854 F.2d 622 (2d. Cir. 1988) (suit based upon alleged negligence of government in debarring federal contractor dismissed for lack of private analogue); *Mesnaoui v. Berlowitz*, No. 11-03165, 2012 WL 464001, *5 (N.D. Cal. Feb. 13, 2012) (holding there was no private analogue for alleged tort of negligent issuance and seizure of passport); *Cortez v. E.E.O.C.*, 585 F. Supp. 2d 1273, 1290-91 (D.N.M. 2007) (no FTCA liability for negligent EEOC investigation because no private analogue to EEOC's work in processing and investigating discrimination charges); *Gelley v. Astra Pharmaceutical Products, Inc.*, 466 F.Supp. 182 (D.Minn. 1979), *aff'd.* 610 F.2d 558 (8th Cir. 1979) (no private analogue for negligence in performance of duties required by the Food and Drug Administration regulatory scheme).

DEFENDANTS' PARTIAL MOTION TO DISMISS - 12
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          to exercise or perform a discretionary function or duty on the part of a federal agency
2          or an employee of the Government, whether or not the discretion involved be abused.

3 This exception exempts the United States from tort liability for discretionary governmental

4 actions and decisions grounded in considerations of public policy. *See Berkovitz v. United*

*States*, 486 U.S. 531, 536-37, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988).  The purpose of the

5 discretionary function exception is to "prevent judicial 'second-guessing' of legislative and

6 administrative decisions grounded in social, economic, and political policy through the medium of

7 an action in tort*." United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*,

8 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).  The discretionary function exception

9 applies even if the negligence alleged occurred.  28 U.S.C. 2680(a).

10        Courts follow a two-tier analysis to identify protected discretionary functions in FTCA

11 actions.  First, a court must determine whether the challenged actions involve "an element of

judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113

12 L.Ed.2d 335 (1991) (quotation omitted).  This "discretionary act" requirement is not satisfied if "a

13 federal statute, regulation, or policy specifically prescribes a course of action for an employee to

14 follow.  In this event, the employee has no rightful option but to adhere to the directive." *Berkovitz*,

15 486 U.S. at 536.  If, on the other hand, the challenged actions involve an element of choice or

16 judgment, then the court must determine "whether that judgment is of the kind that the discretionary

function exception was designed to shield." *Gaubert*, 499 U.S. at 322–23.  More specifically, "if the

17 judgment involves considerations of social, economic, or political policy, the exception applies." *In*

18 *re Glacier Bay*, 71 F.3d 1447, 1450 (9th Cir. 1995).  Furthermore, the government need not show

19 that its employee's discretionary actions were made as the result of a policy analysis, but instead the

20 government must only show that the employee's actions are "*susceptible* to a policy analysis."

21 *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir. 2002) (emphasis added).  Lastly,

22 where the government exercises discretion pursuant to statute, regulation, or agency guidelines, then

23 it must be *presumed* that the agent's acts are grounded in policy when exercising that discretion."

*Gaubert*, 499 U.S. at 324-325 (emphasis added).  Here, not only are the "acts and omissions" complained off susceptible to choice or judgment, but the judgment to be applied by the ATF in this situation includes considerations of social, economic, and political policy.

      **1.**   **Proper Discretionary Function Analysis Requires Considering the Government's Decision Making Processes in Their Entirety.**

Plaintiff purposefully pleads its FTCA claim as solely relating to the "issuance of the permit," while at the same time alleging wrongdoing at nearly every stage of the Form 6 review and revocation process.  Compl. ¶¶ 9, 78-88.[9]  Though the permit issuance process is discretionary, as will be detailed below, this Court is not bound to accept Plaintiff's characterization of its claims for purposes of the discretionary function analysis.  In *General Dynamics Corp. v. United States*, the Ninth Circuit made it clear that "courts are not required to, and should not, simply look at the surface of a complaint for the purpose of ascertaining the true basis of an attack upon something the government has done."  139 F.3d 1280, 1283 (9th Cir. 1998) (finding plaintiffs could not avoid discretionary function exception by challenging underlying audit rather than the discretionary prosecution that actually harmed them); *see also Rosebush v. United States*, 119 F.3d 438, 442 (6th Cir. 1997) (identifying conduct being challenged as not dependent on how plaintiff frames the case).  Rather, courts should look to where "the harm actually flows from" in order to determine the challenged action.  *General Dynamics*, 139 F.3d at 1286.  "A plaintiff cannot circumvent an FTCA

---

[9]    Plaintiff focuses on the initial approval, likely because it seeks to rely upon early decisions of the Washington, D.C. District court in the *Appleton* case.  As mentioned above, *Appleton v. United States* is a case with similar facts, where an arms importer challenged the ATF's granting and subsequent revocation of a Form 6 permit.  *See* Footnote 8, *supra*.  In the court's first decision in that case, it found that the *revocation* of Form 6 permits was a discretionary function.  *Appleton I*, 69 F.Supp.2d at 90.  The court also found, however, that there was an issue of fact with regard to whether the *issuance* of Form 6 permits was a discretionary function.  *Id.* at 91-94; *see also Appleton II*, 98 F.Supp.2d at 35-40 (affirming issue of fact as to discretionary function in issuance of permits); *Appleton IV*, 180 F.Supp.2d at 184-187 (ultimately dismissing on private analogue exception).  Plaintiff's expected reliance on *Appleton I* and *II* is misplaced for multiple reasons: (1) the review and approval of Form 6 applications is patently discretionary, regardless of the nonbinding rulings in *Appleton I* and *II*; (2) *Appleton I* and *II* were decided without the benefit of the Ninth Circuit's ruling in *General Dynamics*; and (3) *Appleton I* and *II* only ruled that there was an issue of fact, and did not reject the applicability of discretionary function to the alleged conduct.

DEFENDANTS' PARTIAL MOTION TO DISMISS - 14
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

exception through mislabeling and mis-description of the truly discretionary source of the injury."
*Id.* at 1285.

In this case, the discretionary granting of the permit itself did not cause any harm; rather, it was not until the subsequent and equally discretionary decision was made to revoke the permit that any alleged harm occurred.  It was only then that the Plaintiff became unable to sell the ammunition.  Accordingly, under *General Dynamics*, Plaintiff's claim targets the manner in which the ATF considers Form 6 permits, both in granting and revocation, and should be analyzed as such.  *Id.* at 1283-85; *see also Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279 (3d Cir. 1995) (en banc) (farmers claims arising from FDA ban on imported produce barred notwithstanding negligent laboratory testing, where injuries were based upon discretionary decision to impose ban).  Here, the decision to revoke the permits is clearly in furtherance of the policy objectives of the statutory scheme set forth by the AECA and the GCA, and suits against the ATF for furtherance of such policies have repeatedly been dismissed.  *See B-West Imports v. United States*, 75 F.3d 633 (Fed. Cir. 1996) (dismissing challenge to ATF's revocation of import permits for Chinese weapons, based upon presidentially-issued sanctions); *Mitchell Arms, Inc. v. United States*, 7 F.3d 212 (Fed. Cir. 1993) (denying importer's takings claim because its "ability to import the rifles and sell them in the United States was at all times entirely subject to the exercise of ATF's regulatory power."); *Gun South, Inc. v. Brady*, 877 F.2d 858 (11th Cir. 1989) (affirming ATF's authority to temporarily suspend permits while it reassesses its policies).  This Court should not allow Plaintiff to evade the discretionary function exception through artful pleading that disguises the true nature of Plaintiff's claim.

### 2.    The ATF Actions that Plaintiff Complains of Here are Discretionary.

First and foremost, there is no rule or regulation that dictates the ATF's handling of Form 6 applications; consequently it is *presumed* that the actions at issue are discretionary.  *Gaubert*, 499

U.S. at 324-325; *see also* Majors Decl. ¶¶ 18, 23. The regulations regarding the granting and revocation of the Form 6 applications state only that "[i]mport permits . . . *may* be denied, revoked, suspended or revised without prior notice whenever the appropriate ATF officer finds the proposed importation to be *inconsistent with the purpose* or in violation of section 38, Arms Export Control Act of 1976 or the regulations in this part." 27 C.F.R. § 447.44 (emphasis added). This clearly permissive language, in and of itself, has been held to indicate discretion for purposes of the discretionary function exception. *See, e.g. Weissich v. United States*, 4 F.3d 810 (9th Cir. 1993), *cert denied*, 114 S.Ct. 2705 (1994) (regulations concerning oversight of federal probationers which used term "should" were discretionary). Furthermore, the ATF Imports Branch's "General Branch Operations" only provide preliminary guidance for quality review of submitted Form 6 applications before they are assigned to Examiners, who may then grant or deny them. The document does not provide guidance for the issuance or revocation of Form 6 permits. Majors Decl. ¶¶ 14-18. Accordingly, the regulatory framework for the decisions by the ATF at issue in this case demonstrates that the decisions were discretionary, and the analysis under the first prong can end here. *See, e.g.*, *Gaubert*, 499 U.S. at 322 (concluding that because the policy governing federal regulators managing the day-to-day activities of a federal savings and loan failed to "specifically prescribe a course of action," the policy provided for discretionary review); *Irving v. United States*, 162 F.3d 154, 163 (1st Cir. 1998) (finding that OSHA compliance inspector review is discretionary as "regulations do not prescribe any specific regimen governing the scope or detail of general administrative inspections"); *Tracor/MGA, Inc. v. United States*, 933 F.2d 663 (8th Cir. 1991) (applying the exception where inspectors' "safety checklist did not prescribe a course of action for the inspector to follow in checking compliance or taking action should a problem exist").

Importantly to this case, however, the ATF's development of its internal processes for handling Form 6 permits is also a discretionary action. In other words, the ATF's development of its own processes for carrying out the agency's regulatory authority is a discretionary function here. As

DEFENDANTS' PARTIAL MOTION TO DISMISS - 16
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

noted in the Declaration of William Majors, the ATF has developed its processes for handling Form 6 applications based on competing policy considerations of the limited resources of the agency, the volume of Form 6 applications, the firearms and ammunitions industry's need for timely adjudication of claims, and the requirements for Form 6 applicants to provide accurate information. Majors Dec. ¶¶ 14-21.  Based on these considerations, the ATF has instituted a general policy of relying upon the truthfulness of representations made in Form 6 applications, in keeping with the requirements that the application information be accurate, upon penalty of perjury.  *Id.* ¶¶ 20-21. ATF Examiners exercise discretion in terms of whether to seek further information from an applicant, investigate the matter further on their own, or forego investigation, based upon the applicant's representations.  Majors Decl. ¶¶ 18-19.  The onus is upon the applicant, however, to provide the ATF with accurate information relevant to the approval process. *Id.*  The ATF then continues this process by inspecting goods upon their arrival and comparing them to the descriptions made in the Form 6.  Majors Decl. ¶ 31-32.  If discrepancies are determined, additional investigations are conducted and the permit reconsidered.  *Id.* ¶ 34-36.

These ATF processes are almost identical to the decision-making processes that the Supreme Court determined were discretionary in *Varig Airlines*.  In *Varig Airlines* plaintiffs challenged FAA processes whereby the FAA issued compliance certificates to aircraft owners based upon their own self-certifications of safety compliance, often without inspection.  *Varig Airlines*, 467 U.S. at 815-818. Though the plaintiffs in *Varig* argued that the FAA negligently approved the self-certifications, the Supreme Court ruled that the plaintiffs' claims were barred by the discretionary function exception, since the agency had discretion to institute the system whereby compliance certificates were approved, even without investigation.  *Id.* at 819-820.  Accordingly, the strikingly similar processes at issue here are discretionary under the Supreme Court's ruling in *Varig Airlines*.

Finally, the specific ATF actions at issue involve discretion as well.  While the discretionary elements of the initial portion of the Form 6 review and approval process are discussed above, the

DEFENDANTS' PARTIAL MOTION TO DISMISS - 17
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

issuance of the permit is just the beginning of the ATF's extensive permit application and approval process.  Once the ammunition arrives at U.S. ports it is inspected by CBP, and if the goods do not match the description on the original application, additional investigation and consideration of the permits is conducted.  Majors Decl. ¶¶ 28, 31-35.  This involves decisions whether to further test or inspect the goods, consultation of experts and regulations, and weighing of multiple policy factors, including the policies behind the laws and regulations to be applied.  *Id.* ¶ 35-38.  In this case, the Imports Branch Chief and several colleagues held a meeting at which they discussed and weighed the text of the applicable statutes and regulations, and the policies sought to be advanced by the legislation.  *Id.* ¶ 45.  Only then was the decision made to revoke the permits.  These agency actions are clearly "discretionary" for purposes of the discretionary function exception.

### 3.    The ATF Actions at Issue Involved Significant Policy Considerations.

The second prong of the discretionary function exception analysis is also satisfied because the ATF's decision to grant Plaintiff a permit to import the 7N6 Ammunition, and to subsequently revoke the permit, involved policy analysis.  Notably, explicit balancing of policies is not required, rather only *susceptibility* to policy analysis is needed.  *See Gaubert*, 499 U.S. at 325 (reasoning that the second prong of the test is satisfied if the nature of the action is susceptible to policy analysis.).  What constitutes "policy" should be expansively defined to account for the vast array of considerations committed to executive decision-making.  *See Varig Airlines*, 467 U.S. at 813 (discretionary function exception protects decisions susceptible to "social, economic and political policy").

First and foremost, the agency decision to rely upon manufacturer information provided by the importer on the Form 6 application is clearly grounded in policy considerations.  These considerations involve determining who should be responsible for bearing the burden of producing and verifying complete and accurate manufacturer information.  Majors Dec. ¶¶ 14-21.  The agency

DEFENDANTS' PARTIAL MOTION TO DISMISS - 18
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

has chosen to require the importer to bear this burden of production and verification. The importer who negotiates the commercial transaction to import foreign commodities is in the best position to ascertain the properties of the ammunition purchased. Thus, ATF has chosen as a public policy matter to impose the onus on the importer.

Additionally, ATF's policy governing review of import applications is grounded in economic feasibility. The ATF employs only nine examiners to review Form 6 applications. These examiners must adjudicate over 10,000 Form 6 applications per year, along with thousands of other applications that the ATF processes. *Id.* ¶ 29-30. The ATF has thus exercised its discretion in devoting its limited enforcement resources to impose the burden on the importer to accurately identify ammunition properties. *See Irving*, 162 F.2d at 168. Likewise, ATF legitimately may choose not to independently verify ammunition properties where applicants' description of ammunition does not implicate prohibitions of the AECA or GCA. *Id.*

*Varig Airlines*, discussed above, is instructive in this regard. There, the Supreme Court noted:

> When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind. Decisions as to the manner of enforcing regulations directly affect the feasibility and practicality of the Government's regulatory program; such decisions require the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding . . .

*Varig Airlines*, 467 U.S. at 819-820 (citing to *Dalehite v. United States*, 346 U.S. at 35)). Here, in considering the feasibility and practicality of the Government's regulatory import program, ATF has appropriately chosen to place the primary responsibility on the importer to provide accurate information, and has allowed ATF personnel to further investigate importer claims at their own discretion. Majors Dec. ¶¶ 14-21. This policy best accommodates the goal of import enforcement and the reality of finite agency resources. *See also Fisher Brothers Sales*, 46 F.3d at 284-286 (finding that FDA decision to ban fruit import was made based on information available at the time,

DEFENDANTS' PARTIAL MOTION TO DISMISS - 19
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and decisions about the sufficiency of data and the timing of decisions involved questions of social, economic, and political policy).  As the court in *Varig Airlines* noted "whatever else the discretionary function exception may include, it plainly was intended to encompass discretionary acts of the government acting in its role as a regulator of the conduct of private individuals."  467 U.S. at 813-814.

Finally, the ATF actions challenged here are most clearly susceptible to policy analysis because they involved the implementation of federal firearms and ammunitions laws, the policies behind which guide that implementation.  As explained in the Majors Declaration, ATF personnel, throughout the Form 6 application process, are guided by the policy objectives behind the AECA and the GCA, as well as the agency's own administrative policy considerations. Majors Decl. ¶¶ 4, 22, 25, 36, 45.  Accordingly, decisions regarding the implementation of AECA and GCA rules, necessarily involve policy considerations.  In this case, those include preventing terrorism, reducing violent crime, and protecting the public from criminal acts, among others, by preventing the distribution of handgun-chambered armor piercing ammunition. *Id.* ¶¶ 4, 37.  Here, ATF personnel considered these policy objectives of the statutes they were enforcing, their own resources, and the facts and information available to them.  The weighing of all of these factors, at multiple stages of the Form 6 process, is immune to liability through the discretionary function exception of the FTCA.

### C. The Harm Complained of Arises From the Detention of Goods, and the United States is Therefore Immune to Liability.

The detentions of goods exception to FTCA liability, 28 U.S.C. § 2680(c), provides that the United States has not waived it sovereign immunity to "any claim arising in respect of the assessment or collection of any tax or custom, or the detention of any goods, merchandise or other property by any officer of customs or excise or any other law enforcement officer . . ."  As a result, the United States has not waived its sovereign immunity for any tort claim arising out of or relating to the detention of goods. *Id.*  This exception generally is interpreted broadly. *Foster v. United*

DEFENDANTS' PARTIAL MOTION TO DISMISS - 20
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*States*, 522 F.3d 1071, 1074 (9th Cir. 2008).  Courts have commented that "the fairest interpretation of [the exception] is the one that first springs to mind: 'any claim arising in respect of' the detention of goods means any claim 'arising out of' the detention of goods . . ."  *Kosak v. United States*, 465 U.S. 848, 854, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984) (holding that claim for damage to goods during detention fell within exception, and satisfied rationales for exception that "ensuring that 'certain governmental activities' not be disrupted by the threat of damage suits; avoiding exposure of the United States to liability for excessive or fraudulent claims; and not extending the coverage of the FTCA to suits for which adequate remedies were already available").

Here, though the Plaintiff artfully pleads its tort claim as relating to the negligent issuance of an import permit, it is clear that its claim actually "arises out of" the detention of the ammunition. *See generally* Compl. ¶¶ 79-88.  This is perhaps evidenced by Plaintiff's inclusion of the tort claim of "interference with chattels," which directly implicates the exception.  Indeed, Plaintiff would be hard-pressed to argue that any of its alleged damages accrued but for and until the ammunition was detained by CBP and ATF.  Much of the damages Plaintiff alleges even seem to be directly related to the detention of the ammunition.  *See, e.g.* Compl. ¶¶ 49-50.  The Ninth Circuit has affirmed dismissal of claims where the tortious acts alleged had "arisen out of" detention of goods, even if the tort was not pled as negligent detention of goods.  *See, e.g.*, *Gasho v. United States*, 39 F.3d 1420, 1433 (9th Cir. 1994) (affirming dismissal of intentional infliction of emotional distress claim under detention of goods exception based upon customs agents' seizure of aircraft); *United States v. Lockheed L-188 Aircraft*, 656 F.2d 390, 397 (9th Cir. 1979) (affirming dismissal under detention of goods exception of FTCA claim of "negligent seizure of aircraft" for violation of safety regulations). In addition, at least one court has ruled that although a party may frame a claim under the FTCA for negligence as relating to the loss of a good that has been detained, that does not bring the claim outside the detention of goods exception.  In *United States v. Articles of Food*, 67 F.R.D. 419 (D. Idaho 1975), the court barred Plaintiffs' claim for loss of certain potato chips which had been seized

DEFENDANTS' PARTIAL MOTION TO DISMISS - 21
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

by the Food and Drug Administration for mislabeling.  Though the Plaintiff in that case argued that the exception did not apply because it was "not seeking damages for the detention of their product, it prays for loss of potato chips," the court ruled that since the loss claimed could only be occasioned by the detention of the potato chips, the exception applied.  *Id.* at 424-445.  Here, regardless of how Plaintiff characterizes its claim, the loss complained of undisputedly arises out of the detention of the ammunition, and the Government's immunity for the tort has not been waived by the FTCA.

      **D.**     **<u>To the Extent Plaintiff's FTCA Claim Includes a Claim for, or Damages Related to, an Intentional Tort or Interference with Contract Rights, it Should be Dismissed.</u>**

     Similarly to Plaintiff's apparent efforts to avoid other exceptions to FTCA liability, Plaintiff's complaint appears to carefully avoid a claim of interference with contract rights.  *See, e.g.*, Compl. ¶¶ 9, 78-88 (describing "negligence" in issuance of import permit and "intentional interference" with chattels and personal property).  Such a claim would be expressly prohibited by 28 U.S.C. § 2680(h), which exempts claims of "interference with contract rights" from the FTCA's waiver of sovereign immunity.  28 U.S.C. § 2680(h) (the "intentional acts" exception, preserving sovereign immunity against claims that arise out of "misrepresentation, deceit, or interference with contract rights," among other things).  Plaintiff's complaint does, however, assert damages that are specifically related to an interference with contract claim, such as storage costs for ammunition purchased from Sabine Schneider, expenses for transporting ammunition from Norfolk to the Free Trade Zone, losses due to inability to sell the ammunition, and storage and shipment costs.  Compl. ¶¶ 49-50, 66-69.  Judge Martinez of this district has previously and analogously ruled that claims for damages similar to those at issue here were barred under the "interference with contract" exception, reasoning that the damages indicated that "allegations involve[] defendant's interference with plaintiffs' order, or 'contract,' with the shipper, and is therefore prohibited by the § 2680(h) exception to the FTCA."  *Endicott v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 338 F.

DEFENDANTS' PARTIAL MOTION TO DISMISS - 22
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Supp. 2d 1183, 1187 (W.D. Wash. 2004).  Plaintiff's tort claim, which from the face of the complaint self-evidently includes elements of interference with contract, should thus be dismissed under the § 2680(h) exception to the FTCA's waiver of sovereign immunity as well.

## IV.   CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court dismiss Plaintiff's second claim of negligence under the FTCA for lack of subject matter jurisdiction. Sovereign immunity for this claim has not been waived by the FTCA, in particular because (1) there is no private analogue for the tortious acts alleged here (28 U.S.C. § 2674); (2) the acts or omissions alleged to be negligent are discretionary functions of the Government (28 U.S.C. § 2680(a)); (3) the claim arises in respect of the detention of goods (28 US.C. § 2680(c)); and (4) the claim is otherwise barred by the intentional torts/interference with contracts exception (28 U.S.C. § 2680(h)).

Respectfully submitted,

ANNETTE L. HAYES
United States Attorney


/s/ Jessica M. Andrade
Jessica M. Andrade, WSBA No. 39297
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington  98101
Phone:  (206) 553-7970
Fax:     (206) 553-4073
Email:  Jessica.Andrade@usdoj.gov

Attorney for Defendants

DEFENDANTS' PARTIAL MOTION TO DISMISS - 23
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

CERTIFICATE OF SERVICE

2

The undersigned hereby certifies that she is an employee in the Office of the United States

3

Attorney for the Western District of Washington and is a person of such age and discretion as to be

4

competent to serve papers.

5

It is further certified that on February 19, 2016 I electronically filed the foregoing document

6

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to

7

the following CM/ECF participant(s):

8

McKAY CHADWELL, PLLC
Robert G. Chadwell, WSBA No. 22683

9

Patrick J. Preston, WSBA No. 24361
Thomas M. Brennan, WSBA No. 30662

10

600 University Street, Suite 1601
Seattle, WA 98101-4124

11

Email: rgc1@mckay-chadwell.com
        pjp@mckay-chadwell.com

12

        tmb@mckay-chadwell.com

13

14

Dated this 19th day of February 2013.

15

16

*/s/ Jessica M. Andrade*
Jessica M. Andrade, WSBA No. 39297

17

Assistant United States Attorney
United States Attorney's Office

18

700 Stewart Street, Suite 5220
Seattle, Washington  98101

19

Phone: (206) 553-7970
Fax:     (206) 553-4073

20

Email:  Jessica.Andrade@usdoj.gov

21

22

23

DEFENDANTS' PARTIAL MOTION TO DISMISS - 24
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970