THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| P.W. ARMS, INC., a Washington corporation,<br><br>                Plaintiff,<br><br>   v.<br><br>UNITED STATES OF AMERICA and the BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, a Federal Agency,<br><br>                Defendants. | No.  2:15-cv-01990 JCC<br><br>**PLAINTIFF P.W. ARMS, INC.'S FED. R. CIV. P. 56 PARTIAL SUMMARY JUDGMENT MOTION UNDER ADMINISTRATIVE PROCEDURE ACT**<br><br>NOTE ON MOTION CALENDAR: MAY 20, 2016 |

## I.  INTRODUCTION

The sole issue before the Court is whether Plaintiff P.W. Arms, Inc. (PWA) is entitled to partial summary judgment based upon the Bureau of Alcohol, Tobacco, Firearms and Explosives' (ATF) classification of 7N6 5.45x39mm ammunition (7N6) as 'armor piercing' under 18 U.S.C. § 921(a)(17)(B)(i) contrary to the statute's plain language and clear Congressional intent.[1]

---

[1] PWA brings this Fed. R. Civ. P. 56 motion regarding its claim brought under the Administrative Procedure Act. PWA also brought, in the alternative, a claim under the Federal Tort Claims Act (FTCA), and a claim under the Freedom of Information Act.  Dkt. # 1.  Defendants moved for Fed. R. Civ. P. 12(b)(1) dismissal of the FTCA claim (Dkt. # 10), which PWA contests (Dkt. # 15).

PLAINTIFF P.W. ARMS, INC.'S FED R. CIV. P. 56
PARTIAL SUMMARY JUDGMENT MOTION UNDER
ADMINISTRATIVE PROCEDURE ACT - 1

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

> The term "armor piercing ammunition" means– a projectile or projectile core which may be used in a handgun and which is constructed **entirely** (excluding the presence of traces of other substances) from one or a combination of tungsten alloys, steel, iron, brass, bronze, beryllium copper, or depleted uranium[.]

18 U.S.C. § 921(a)(17)(B)(i) (emphasis added).

Under this unambiguous definition, armor piercing ammunition must be constructed **entirely** from one or a combination of seven specified metals. Lead is not one of those metals. Indisputably, 7N6 contains a projectile core constructed partially from steel and partially from lead; as such, it is not, as a matter of law, a projectile core constructed **entirely** from steel. ATF acted contrary to the plain language of the statute and clear Congressional intent when it classified 7N6 as armor piercing under 18 U.S.C. § 921(a)(17)(B)(i).

Under the Administrative Procedure Act (APA), this classification is not in accordance with the law and is in excess of ATF's statutory and jurisdictional authority. This Court should hold ATF's classification of 7N6 as armor piercing unlawful and set the classification aside.

## II. BACKGROUND FACTS

*a. The Gun Control Act*

The 1968 Gun Control Act (GCA), 18 U.S.C. § 921, *et seq*., regulates and restricts ammunition and firearms. The GCA contains provisions defining and governing armor piercing ammunition, originally enacted in the Law Enforcement Officers Protection Act of 1986 (P.L. 99-408) (LEOPA). Under 18 U.S.C. § 921(a)(17)(B)(i), "armor piercing ammunition" is defined in relevant part as "a projectile or projectile core which may be used in a handgun and which is constructed entirely (excluding the presence of traces of other substances) from one or a combination of tungsten alloys, steel, iron, brass, bronze, beryllium copper, or depleted

PLAINTIFF P.W. ARMS, INC.'S FED R. CIV. P. 56
PARTIAL SUMMARY JUDGMENT MOTION UNDER
ADMINISTRATIVE PROCEDURE ACT - 2

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

uranium[.]"  Armor piercing ammunition is generally illegal for importation and sale in the United States.  *See* 18 U.S.C. § 922(a)(8).

The primary goal of the LEOPA provisions was to protect police officers from death or injury as the result of criminal misuse of handgun ammunition, or "cop killer" bullets.  The administrative record contains no evidence that 7N6 was ever used to kill or injure a police officer.  In fact, before ATF banned 7N6, this ammunition was used lawfully by sportsmen as rifle ammunition for target shooting.  *See* Administrative Record (AR) 32.

ATF has rule-making authority through the Attorney General with respect to federal firearms law.  *See* 18 U.S.C. § 926 and 28 C.F.R. § 0.130(a)(1).  ATF's interpretative rule-making authority includes classification of ammunition as armor piercing under 18 U.S.C. § 921(a)(17)(B)(i).  However, ATF is bound by the statute.  Armor piercing ammunition is restricted to projectiles or projectile cores constructed "entirely" from one or a combination of seven metals, of which lead is not included.  As such, it is impermissible for ATF to classify ammunition as armor piercing when the projectile core is constructed partially from lead.

*b.  ATF's unlawful action impacting PWA's legal rights*

On April 7, 2014, ATF classified 7N6 as armor piercing under 18 U.S.C. § 921(a)(17)(B)(i) despite the fact it contains a projectile core constructed partially from lead.  *See* AR16 and 37.[2]  ATF approved PWA's Application and Permit for Importation of Ammunition Nos. 13-00760, 13-01216, and 14-00996, each authorizing PWA to import 7N6 for resale to federal licensed firearms dealers in the United States.  *See* AR3-10.  As noted by Congressman Matthew Salmon, as of March 2014, "[t]his popular type of ammunition [had been] in use among

---

[2]ATF's April 2014 classification turned on its supposed recent discovery of a handgun capable of using 7N6, which would make the ammunition illegal if indeed it was constructed entirely of one or a combination of the seven specified metals.  *See* AR 37.

PLAINTIFF P.W. ARMS, INC.'S FED R. CIV. P. 56
PARTIAL SUMMARY JUDGMENT MOTION UNDER
ADMINISTRATIVE PROCEDURE ACT - 3

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

many sportsmen and target-shooters alike." AR32. 7N6 was "reliable, cost-effective," and "efficient." *Id.*

After PWA received permit approval from ATF, PWA purchased 7N6, which Customs and Border Protection (CBP) agents ultimately stopped upon entry into the United States and subsequently inspected with ATF on February 25, 2014. *See* AR13. "The inspection was based off [unspecified] information received that P.W. ARMS INC was attempting to bring in Armor Piercing Ammunition." *Id.* However, well before February 2014, ATF knew this type of ammunition was constructed partially from steel. *See* AR45-46 and 71-74.[3] It remains unclear why, at this particular time, PWA's 7N6 was "suspected" of being armor piercing. AR13.

After ATF's inspection, at the request of ATF, the Federal Bureau of Investigation (FBI) conducted metallurgical testing on PWA's 7N6. *See* AR12 and 16-17. On March 21, 2014, the FBI reported that the ammunition contains a "multi-sectioned core." AR16. "The core sections include a void at the nose and two solid pieces. The solid pieces within the core of Item 1 were analyzed to determine their composition. The smaller, front core section of Item 1 is lead. The larger rear core section is steel." *Id.*

The administrative record establishes that 7N6 does not contain a projectile core constructed entirely from steel; rather, it constructed partially from steel and partially from lead. *See* AR 16-17, 20 and 46. Nevertheless, ATF classified 7N6 as armor piercing under 18 U.S.C. § 921(a)(17)(B)(i), which defines armor piercing ammunition as "a projectile or projectile core which may be used in a handgun and which is constructed **entirely** (excluding the presence of traces of other substances) from one or a combination of tungsten alloys, steel, iron, brass,

---

[3] Further, as of November 2011, ATF also knew it granted import permits for the Fabryka Bronie Radom, the handgun in which ATF claims 7N6 may be used. *See* AR37, 60-63 and 85.

PLAINTIFF P.W. ARMS, INC.'S FED R. CIV. P. 56
PARTIAL SUMMARY JUDGMENT MOTION UNDER
ADMINISTRATIVE PROCEDURE ACT - 4

bronze, beryllium copper, or depleted uranium[.]"  AR20, 23, and 37 (emphasis added).

Officially, on April 7, 2014, ATF issued a Special Advisory:

> When ATF tested the 7N6 samples provided by CBP, they were
> found to contain a steel core.  ATF's analysis also concluded that
> the ammunition could be used in a commercially available
> handgun, the Fabryka Bronie Radom, Model Onyks 89S, 5.45x39
> caliber semi-automatic pistol, which was approved for importation
> into the United States in November 2011.  Accordingly, the
> ammunition is "armor piercing" under the section 921(a)(17)(B)(i)
> and is therefore not importable.

AR37.[4]  PWA is now unable to import, sell or distribute 7N6 within the United States, including

the ammunition it purchased pursuant to ATF approved permits.

   "ATF does not consider there to be a difference between a partial and full steel core"

(AR143); however, under the statute, to be armor piercing, the projectile core must be

constructed "entirely" from steel, not partially from steel and partially from lead.  7N6 is

constructed partially from lead.  As such, under 18 U.S.C. § 921(a)(17)(B)(i), 7N6 cannot be

armor piercing.

### III. LEGAL DISCUSSION

   *a.   Fed. R. Civ. P. 56 as applied to an action brought under the APA*

   Summary judgment is appropriate when the pleadings and record demonstrate that "there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).  A court conducting judicial review under the APA may not resolve

factual questions, but instead determines "whether or not as a matter of law the evidence in the

administrative record permitted the agency to make the decision it did." *Sierra Club v. Mainella*,

459 F.Supp.2d 76, 90 (D.C. 2006), quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th

---

[4] In its Advisory, ATF failed to mention that 7N6's core is "multi-sectioned" or that one solid section of the core is lead.  *See* AR16-17.

PLAINTIFF P.W. ARMS, INC.'S FED R. CIV. P. 56
PARTIAL SUMMARY JUDGMENT MOTION UNDER
ADMINISTRATIVE PROCEDURE ACT - 5

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

Cir. 1985).  "[I]n a case involving review of a final agency action under the [APA] ... the standard set forth in Rule 56(c) does not apply because of the limited role of a court in reviewing the administrative record."  *Id*. at 89.  In this context, summary judgment becomes the "mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review."  *Id*. at 90; *see also, Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir.1994) ("[T]his case involves review of a final agency determination under the [APA]; therefore, resolution of th[e] matter does not require fact finding on behalf of this court.  Rather, the court's review is limited to the administrative record").[5]

Here, the metallurgy test results establish 7N6 is constructed partially from lead.  AR16-17.  As explained below, this alone is sufficient to establish that, as a matter of law, ATF impermissibly classified 7N6 as armor piercing.

  b.  *Under the APA, this Court may review ATF's wrongful classification of 7N6 as armor piercing.*

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  Courts may review a "final agency action for which there is no other adequate remedy in a court[.]"  *See* 5 U.S.C. § 704.

> As a general matter, two conditions must be satisfied for agency action to be 'final:' First, the action must mark the "consummation" of the agency's decision making process, it must not be of a merely tentative or interlocutory nature.  And second, the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow[.]"

*Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citations omitted),

---

[5] For purposes of this motion, PWA relies on the administrative record provided by ATF but reserves the right to argue that the record is incomplete.

PLAINTIFF P.W. ARMS, INC.'S FED R. CIV. P. 56
PARTIAL SUMMARY JUDGMENT MOTION UNDER
ADMINISTRATIVE PROCEDURE ACT - 6

On April 7, 2014, ATF issued its Special Advisory finding that 7N6 "is 'armor piercing' under the section 921(a)(17)(B)(i) and is therefore not importable."  AR37.  This marks the consummation of ATF's decision making process; ATF interpreted the statute and banned 7N6 as armor piercing.  Further, PWA imports and sells ammunition and previously imported and sold 7N6.  Specifically, PWA is no longer allowed to import and sell the 7N6 it purchased after ATF initially approved its permits.  ATF's classification of 7N6 as armor piercing determined PWA's ability to import and sell this ammunition and made importation and sale of 7N6 illegal.

   *c.  Scope and standard of review*

Regarding this Court's scope of review of ATF's interpretation of 18 U.S.C. § 921(a)(17)(B)(i), "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action."  5 U.S.C. § 706.  "The reviewing court shall… hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [or] in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]"  5 U.S.C. § 706(2)(A) and (C).

"An agency's interpretation or application of a statute is a question of law reviewed de novo."  *Brower v. Evans*, 257 F.3d 1058, 1065 (9th Cir. 2001), citing *Partridge v. Reich*, 141 F.3d 920, 923 (9th Cir. 1998).  The Ninth Circuit explained the process, as established by the U.S. Supreme Court, for a district court to review an agency's interpretation of a statue:

> On questions of statutory interpretation, we follow the approach from *Chevron U.S.A. Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984). *See NRDC v. EPA*, 966 F.2d 1292, 1297 (9th Cir. 1992) (so holding). In *Chevron*, 467 U.S. at 842-44, the Supreme Court devised a two-step process for reviewing an administrative agency's interpretation of a statute that it administers.  *See also, Bicycle Trails Council of Marin v. Babbitt*, 82 F.3d 1445, 1452 (9th Cir. 1996) ("The Supreme Court has established a two-step process

PLAINTIFF P.W. ARMS, INC.'S FED R. CIV. P. 56
PARTIAL SUMMARY JUDGMENT MOTION UNDER
ADMINISTRATIVE PROCEDURE ACT - 7

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

for reviewing an agency's construction of a statute it administers"). Under the first step, we employ "traditional tools of statutory construction" to determine whether Congress has expressed its intent unambiguously on the question before the court. *Chevron*, 467 U.S. at 843 n. 9. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id*. at 842-43(footnote omitted). If, instead, Congress has left a gap for the administrative agency to fill, we proceed to step two. *See id*. at 843. At step two, we must uphold the administrative regulation unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Id*. at 844.

*Defenders of Wildlife v. Browner*, 191 F.3d 1159, 1162 (9th Cir. 1999), opinion amended on denial of reh'g, 197 F.3d 1035 (9th Cir. 1999); *see also, Partridge*, 141 F.3d at 923 ("if Congress has spoken to the precise issue, the courts enforce that direction, but if the statute is 'silent or ambiguous' the courts defer to the agency's construction of the statute if it is a permissible one").

If a court finds that an agency's interpretation of a statute violates clear Congressional intent, the inquiry ends. *See Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co*., 522 U.S. 479 (1998) ("Because we conclude that Congress has made it clear that the same common bond of occupation must unite each member of an occupationally defined federal credit union, we hold that the NCUA's contrary interpretation is impermissible under the first step of *Chevron*"); *see also, Sierra Club v. EPA*, 118 F.3d 1324, 1327 (9th Cir. 1997) ("Congress has spoken clearly on the subject and the regulation violates the provisions of the statute. Our inquiry ends at the first prong of *Chevron*"); *see also, Browner*, 191 F.3d at 1164 ("[T]he Water Quality Act unambiguously demonstrates that Congress did not require municipal storm-sewer discharges to comply strictly with 33 U.S.C. § 1311(b)(1)(C). That being so, we end our inquiry at the first step of the *Chevron* analysis").

Here, Congress spoke to the precise question at issue: is a projectile core constructed partially from lead "entirely" constructed from steel? Under the unambiguous statute, the answer

PLAINTIFF P.W. ARMS, INC.'S FED R. CIV. P. 56
PARTIAL SUMMARY JUDGMENT MOTION UNDER
ADMINISTRATIVE PROCEDURE ACT - 8

is, "No."  ATF acted contrary to clear Congressional intent when it classified 7N6 as armor

piercing, so this Court need not go beyond step one under *Chevron*.

        d.   *Under the plain language of 18 U.S.C. § 921(a)(17), Congress unambiguously*
            *intended to exclude projectile cores constructed partially from lead from the*
            *definition of armor piercing ammunition.*

      "The purpose of statutory construction is to discern the intent of Congress in enacting a

particular statute."  *Robinson v. United States*, 586 F.3d 683, 686 (9th Cir. 2009) (quotation

omitted).  When reviewing statutory construction, courts begin the analysis with the plain

language of the statute itself.  *See Duncan v. Walker*, 533 U.S. 167, 172 (2001); *see also,*

*Browner*, 191 F.3d at 1164 ("Using our 'traditional tools of statutory construction,' when

interpreting a statute, we look first to the words that Congress used").  A court must reject an

agency's construction that is contrary to clear congressional intent.  *See NRDC v. EPA*, 966 F.2d

1292, 1297 (9th Cir. 1992) ("On questions of statutory construction, courts must carry out the

unambiguously expressed intent of Congress").

      Under 18 U.S.C. § 921(a)(17)(B)(i), Congressional intent is clear regarding what does,

and hence does not, constitute armor piercing ammunition.  ATF classified 7N6 as armor

piercing under 18 U.S.C. § 921(a)(17)(B)(i) (AR37), which defines the term "armor piercing

ammunition" as "a projectile or projectile core which may be used in a handgun and which is

constructed entirely (excluding the presence of traces of other substances) from one or a

combination of" seven specified metals.  18 U.S.C. § 921(a)(17)(B)(i).[6]

      When a word is undefined, courts give that term its ordinary meaning.  *See Asgrow Seed*

*Co. v. Winterboer,* 513 U.S. 179, 187 (1995); *see also, Browner*, 191 F.3d at 1164.  Oxford

---

[6] ATF's own regulation defining armor piercing ammunition is identical to the statute, but for use of the plural of 'projectile.'  *See* 27 C.F.R. § 478.11.

PLAINTIFF P.W. ARMS, INC.'S FED R. CIV. P. 56
PARTIAL SUMMARY JUDGMENT MOTION UNDER
ADMINISTRATIVE PROCEDURE ACT - 9

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

Dictionary defines the word "entirely" as "completely" and "solely."  The New Oxford American Dictionary, 2d Ed., Oxford University Press (2005).  Merriam-Webster's Dictionary defines "entirely" as "to the full or entire extent: completely" and "to the exclusion of others: solely."  Merriam-Webster's Collegiate Dictionary, 11th Ed., Merriam-Webster, Inc. (2009).  To be armor piercing, a projectile core must be constructed "solely and completely" from one or a combination of the seven metals; the seven metals must make up the projectile core "to the exclusion of others."

The FBI's metallurgy test results are factually dispositive on the question of law before the Court.  *See* AR16-17.  The examination documents that 7N6 bullets each have a "multi-sectioned core.  The core sections include a void at the nose and two solid pieces."  AR16.  Of the two solid pieces, one is lead and one is steel.  *Id.*  ATF's position that there is no difference between a partial and full steel core (AR147) stands in clear contradiction to the statute's plain language; if a projectile core is constructed partially from lead, it cannot be constructed entirely from steel.

Additionally, ATF's interpretation that a projectile core partially constructed from lead is armor piercing would make the statute's use of the word "entirely" surplusage.  Statutes do not contain meaningless words.  *See Williams v. Taylor,* 529 U.S. 362, 404 (2000) (noting the "cardinal principle of statutory construction" is that every word of a statute must be given effect if possible); *see also, Brower*, 257 F.3d at 1067 and 1071 (holding that the Secretary of Commerce acted contrary to law and abused his discretion under the APA and explaining that the Secretary's statutory construction "would render the required stress studies irrelevant").  Under ATF's construction of 18 U.S.C. § 921(a)(17)(B)(i), e.g., the statute does not differentiate between a partial and full steel core, the term "entirely" is rendered irrelevant and meaningless.

PLAINTIFF P.W. ARMS, INC.'S FED R. CIV. P. 56
PARTIAL SUMMARY JUDGMENT MOTION UNDER
ADMINISTRATIVE PROCEDURE ACT - 10

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

On issues of statutory construction, when the statute itself provides a clear answer, the court's analysis ends. *See Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238, 254 (2000).  18 U.S.C. § 921(a)(17)(B)(i) is clear; Congress meant "entirely" when it used the word.  Congress unambiguously defined armor piercing ammunition, and the statute does not create any gap for ATF to fill outside of this restricted definition.  *See* 18 U.S.C. § 921(a)(17) and *Chevron*, 467 U.S. 842-83.  7N6's projectile core is not constructed "entirely" from steel because it, undisputedly, is constructed partially from lead.  *See* AR16-17.  ATF's classification of 7N6 as armor piercing under 18 U.S.C. § 921(a)(17)(B)(i) is in clear contradiction to the unambiguous statute.  As such, this Court's inquiry is at an end.

      e.  *Congress did not intend to give ATF authority to ban projectiles or projectile cores in addition to those constructed entirely from the seven metals; if it had, Congress would have clearly authorized it.*

In addition to the plain language of 18 U.S.C. § 921(a)(17)(B)(i), the entire statute defining armor piercing ammunition also supports the conclusion that ATF acted contrary to clear Congressional intent when it classified (and banned) 7N6 as armor piercing.  For instance, the statute does provide ATF with a gap to fill regarding ammunition that does **not** constitute armor piercing, despite otherwise satisfying the statutory definition set forth in 18 U.S.C. § 921(a)(17)(B):

> The term "armor piercing ammunition" does not include shotgun shot required by Federal or State environmental or game regulations for hunting purposes, a frangible projectile designed for target shooting, a projectile **which the Attorney General[7] finds** is primarily intended to be used for sporting purposes, or any other projectile or projectile core **which the Attorney General finds** is intended to be used for industrial purposes, including a charge used in an oil and gas well perforating device

18 U.S.C. § 921(a)(17)(C) (emphasis added).

---

[7] ATF has rule-making authority through the Attorney General with respect to federal firearms law.  *See* 18 U.S.C. § 926 and 28 C.F.R. § 0.130(a)(1).

PLAINTIFF P.W. ARMS, INC.'S FED R. CIV. P. 56
PARTIAL SUMMARY JUDGMENT MOTION UNDER
ADMINISTRATIVE PROCEDURE ACT - 11

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The statute does not include a similar provision regarding what does constitute armor piercing ammunition.  In fact, Congress specifically considered, and ultimately rejected, this type of provision.  In June 1984, three identical bills defining armor piercing ammunition were introduced.  Below is an excerpt from the June 27, 1984 hearing before the Subcommittee on Crime of the Committee on the Judiciary, during which Chairman William J. Hughes raised concerns that if a projectile core contains a small amount of lead, it would not fall under the definition of armor piercing, and one suggestion to solve this issue was for Congress to grant the Secretary authority to expand the definition:

> Mr. Hughes.  One of the things that concerns me is that you could have a manufacturer make a projectile crafted like this Swedish projectile which has a small lead core. In fact, you could reduce it to just a little more than what you would consider trace. Trace, to me, suggests that it is the impurities that you would have in most metals, I would presume.
>
> Mr. Kass.  Correct.
>
> Mr. Hughes.  So it would be so easy to avoid being caught in this standard by having just a small amount of some other ferrous or non-ferrous metal.
>
> Mr. Kass.  However, I would feel that anybody trying to go to that extreme to circumvent this law could be handled by BATF in an administrative way, maybe include in the bill, in addition to the verbiage description say, "and any other ammunition the Secretary so defines as being armor-piercing."
>
> Mr. Hughes.  We would have to provide that for the Secretary to have that authority, though.
>
> Mr. Kass.  Yes, that is what I am saying. That way, if somebody tries to circumvent it, the Secretary would have the authority to include it under this bill and prevent its sale.
>
> Mr. Hughes.  That wouldn't be permitted under the terms of this bill?
>
> Mr. Kass.  No, I am saying add to the term at the end, "and any other ammunition the Secretary so rules as armor-piercing."

PLAINTIFF P.W. ARMS, INC.'S FED R. CIV. P. 56
PARTIAL SUMMARY JUDGMENT MOTION UNDER
ADMINISTRATIVE PROCEDURE ACT - 12

*Armor-Piercing Ammunition and the Criminal Misuse and Availability of Machine Guns and Silencers: Hearing Before Subcomm. on Crime of the H. Comm. on the Judiciary*, *H.R. 5835, H.R. 5844, H.R. 5845*, 98th Cong., 2d Sess. at 306 (June 27, 1984) (hereafter, "June 27, 1984 Hearing") (testimony of George Kass, owner of Forensic Ammunition Service).[8]

Following this hearing, the Subcommittee did develop amendments to authorize the Secretary to classify as armor piercing ammunition it determined to be of a substantially similar composition to projectiles constructed entirely from the seven specified metals. *See* H.R. 6067, 98th Cong., § 2 (2d Sess. 1984) (armor piercing ammunition "also includes any other ammunition determined by the Secretary to contain a projectile or projectile core of substantially similar composition; and any projectile or projectile core, designed for use in a firearm, determined by the Secretary to be so constructed or composed"). However, this bill never was called up for debate. During the following Congress, H.R. 4, a simplified version of H.R. 6067, and H.R. 13, were introduced; both excluded this provision. *See* H.R. 4, 99th Cong., § 2 (1st Sess. 1985) and H.R. 13, 99th Cong., § 2 (1st Sess. 1985). Ultimately, Congress rejected granting ATF this type of authority, as the enacted statute does not include this or similar provision. *See* P.L. 99-408.

Further, in *S.E.C. v. Sloan*, 436 U.S. 103 (1978), the Supreme Court recognized that if Congress provides significant power to an agency, this type of authority is expected to be explicitly authorized. The Supreme Court held that the Securities and Exchange Commission exceeded its statutory authority when it issued a series of ten-day orders suspending trading in

---

[8] For the Court's convenience, PWA has delivered a complete hard copy of the legislative history to the Court's attention via the Clerk of the Court.

PLAINTIFF P.W. ARMS, INC.'S FED R. CIV. P. 56
PARTIAL SUMMARY JUDGMENT MOTION UNDER
ADMINISTRATIVE PROCEDURE ACT - 13

corporate stock based upon no new facts but a mere redetermination that continued suspension

was required by the public interest:

> In sum, had Congress intended the Commission to have the power to summarily suspend trading virtually indefinitely we expect that it could and would have authorized it more clearly than it did in § 12(k).[9] The sweeping nature of that power supports this expectation.  The absence of any truly persuasive legislative history to support the Commission's view, and the entire statutory scheme suggesting that in fact the Commission is not so empowered, reinforce our conclusion that the Court of Appeals was correct in concluding no such power exists.

*Sloan*, 436 U.S. at 122-23.  The power to ban ammunition as illegal is sweeping and implicates

Second Amendment rights.  If Congress intended for ATF to have the power to ban projectiles or

projectile cores in addition to those constructed entirely from the seven metals, Congress would

have clearly authorized it.  Congress did not, so this power does not exist.

> f.   *ATF's interpretation that 18 U.S.C. § 921(a)(17)(B)(i) provides no difference between a partial and full steel core would eviscerate the statute, resulting in the classification of ammunition containing a projectile core constructed only partially from one of the seven metals as armor piercing.*

Statutory constructions leading to absurd, unreasonable or impractical results should be

avoided.  *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) and *Valladolid v.*

*Pac. Operations Offshore, LLP*, 604 F.3d 1126, 1133 (9th Cir. 2010), aff'd and remanded 132 S.

Ct. 680 (2012).  7N6 contains a projectile core constructed partially from a solid piece of lead

(AR16-17), and ATF claims that there is no difference between a partial and full steel core.  *See*

AR143.  Under ATF's impermissible construction of 18 U.S.C. § 921(a)(17)(B)(i), if a projectile

core contains any amount of one of the seven specified metals, this ammunition would be armor

piercing and illegal.  The statute restricting armor piercing ammunition to "a projectile or

---

9 "Section 12(k) authorizes the Commission "summarily to suspend trading in any security . . . for a period not exceeding ten days . . . ."  *S.E.C. v. Sloan*, 436 U.S. 103, 111 (1978), citing 15 U.S.C. § 78l (k) (1976 ed.).

PLAINTIFF P.W. ARMS, INC.'S FED R. CIV. P. 56
PARTIAL SUMMARY JUDGMENT MOTION UNDER
ADMINISTRATIVE PROCEDURE ACT - 14

projectile core constructed **entirely** from one or a combination of" seven specific metals would be eviscerated. The absurd, unreasonable and impracticable result: a completely different and alarmingly expansive definition of armor piercing ammunition that includes projectile cores constructed, not entirely, but only **partially** from one or a combination of the seven metals.

ATF's construction has broad implications reaching far beyond this matter. Large quantiles of ammunition, in addition to 7N6, could be classified as illegal armor piercing ammunition. This result stands in plain contradiction of Congressional intent to create a restricted and specific definition of armor piercing ammunition.

> g.  *ATF's longstanding but unlawful interpretation of 18 U.S.C. § 921(a)(17)(B)(i) does not provide ATF with authority to act in clear contradiction to Congressional intent.*

ATF may argue that its interpretation of 18 U.S.C. § 921(a)(17)(B)(i) has been longstanding; e.g., projectile cores constructed partially from one or a combination of the seven metals, and partially constructed from lead, have always been considered armor piercing if such ammunition may be used in a handgun. While the amount of deference due can be influenced by an agency's longstanding interpretation, an agency's consistent interpretation cannot stand when such interpretation is clearly contrary to Congressional intent. The Supreme Court articulated this in *S.E.C. v. Sloan*, 436 U.S. 103 (1978) when it held that Congress clearly did not intend to authorize the Commission to issue successive ten-day suspension orders:

> [T]he construction placed on the statute by the Commission, though of long standing, is, for the reasons given in Part III - A of this opinion, inconsistent with the statutory mandate. We explicitly contemplated just this situation in *FMC v. Seatrain Lines, Inc*., 411 U.S. 726, 745 (1973), where we said: "But the Commission contends that since it is charged with administration of the statutory scheme, its construction of the statute over an extended period should be given great weight. . . . This proposition may, as a general matter, be conceded, although it must be tempered with the caveat that an agency may not bootstrap itself into an area in which it has no jurisdiction by repeatedly violating its statutory mandate."

PLAINTIFF P.W. ARMS, INC.'S FED R. CIV. P. 56
PARTIAL SUMMARY JUDGMENT MOTION UNDER
ADMINISTRATIVE PROCEDURE ACT - 15

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

And our clear duty in such a situation is to reject the administrative interpretation of the statute.

*Sloan*, 436 U.S. at 118-19.  ATF may not bootstrap itself into an area in which it has no jurisdiction by repeatedly violating its statutory mandate, and this Court should reject ATF's administrative interpretation of 18 U.S.C. § 921(a)(17)(B)(i).

> *h.   The legislative history documents that Congress intended to exclude projectiles containing more than a trace amount of lead from the definition of armor piercing.*

If this Court is convinced that Congress unambiguously expressed its intent in 18 U.S.C. § 921(a)(17)(B)(i), the Court need go no further and is not required to consider the legislative history.  *See Nat'l Credit Union Admin. v. First Nat. Bank & Trust Co.*, 522 U.S. 479, 503, n.10 (1998) (after concluding "that the NCUA's current interpretation of § 109 is contrary to the unambiguously expressed intent of Congress and is thus impermissible under the first step of Chevron[,]" the Supreme Court notes, "We have no need to consider § 109's legislative history).[10]  However, if this Court considers the legislative history, the Congressional Record and Subcommittee testimony clearly establish Congressional intent to exclude projectile cores constructed partially from lead from the definition of armor piercing ammunition.

The GCA of 1968 was amended in 1986 by adding provisions defining armor piercing ammunition.  *See* P.L. 99-408.  The first bill to study armor piercing ammunition was introduced in 1981, and initially, the definition of "armor piercing ammunition" (or, "restricted handgun bullet") was based upon a standard of penetration of layers of Kevlar, determined by testing.  *See*

---

[10] Notably, the legislative history in this case was "murky."  *Nat'l Credit Union Admin.*, 522 U.S. at 503 n. 10.  Here, it is not.

PLAINTIFF P.W. ARMS, INC.'S FED R. CIV. P. 56
PARTIAL SUMMARY JUDGMENT MOTION UNDER
ADMINISTRATIVE PROCEDURE ACT - 16

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*e.g.*, S. 1762, 98th Cong. (1st Sess. 1983)[11] and H.R. 641, 98th Cong. (1st Sess. 1983).[12]  As

discussed in the November 6, 1985 House Report on H.R. 3132, one of the bills predating P.L.

99-408, significant disputes surrounded a definition based on a standard of penetration, as this

definition was considered too expansive:

> Associate Attorney General Rudolph W. Giuliani observed that, "we cannot justify legislation banning all ammunition capable of penetrating the type of soft body armor worn by law enforcement officials."  This objection was based on the problem of the interchangability of ammunition between long guns and handguns. If all ammunition which could be fired from a handgun, which would penetrate soft body armor under the test condition, were to be banned from manufacture, importation and sale, it would include many types of sporting ammunition as well. Such a definition was unacceptable. Mr. Giuliani concluded, "we will continue to work with the Department of Treasury and with this subcommittee and others to develop a workable definition of such bullets."

H.R. Rep. No. 99-360, 99th Cong. at 3 (1985).  Continuing to search for a suitable definition of

armor piercing, in June 1984, the Administration introduced a bill to define armor piercing based

upon the ammunition's composition, not upon its penetration capability:

> Under Treasury's guidance, in June 1984, the Administration announced that it had developed a bill which defined armor piercing ammunition on the basis of projectiles constructed from seven hard metals: tungsten alloys, steel, iron, brass, bronze, beryllium copper and depleted uranium.

*Id.* at 3-4.  The language of the above-referenced bill, H.R. 5835, in relevant part, was:

> The term 'armor piercing ammunition' means solid projectiles or projectile cores constructed from tungsten alloys, steel, iron, brass, bronze, beryllium copper, depleted

---

[11] "'[A]rmor-piercing ammunition' means ammunition which, when or if fired from any handgun used or carried in violation of subsection (a) under the test procedure of the National Institute of Law Enforcement and Criminal Justice Standard for the Ballistics Resistance of Police body Armor promulgated December 1978, is determined to be capable of penetrating bullet-resistant apparel or body armor meeting the requirements of Type IIA of Standard NILECJ-STD-0101.01 as formulated by the United States Department of Justice and published in December of 1978[.]'"

[12] "'[R]estricted handgun bullet' means a bullet that, as determined by the Secretary of the Treasury, when fired from a handgun with a barrel five inches or less in length, is capable of penetrating body armor."  ("'[B]ody armor' means a commercially available, soft, lightweight, material with penetration resistance equal to or greater than that of eighteen layers of Kevlar,] and 'handgun' means a firearm originally designed to be fired by the use of a single hand[.]'")

PLAINTIFF P.W. ARMS, INC.'S FED R. CIV. P. 56
PARTIAL SUMMARY JUDGMENT MOTION UNDER
ADMINISTRATIVE PROCEDURE ACT - 17

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

uranium…. The term 'solid' in the first sentence if this paragraph means made entirely from one or more of the substances specified therein, but may include the presence of trace elements of other substances.

H.R. 5835, 98th Cong. (2d Sess. 1984). Notably, this definition, while edited to be more concise, is substantively identical to P.L. 99-408.[13]

On June 27, 1984, the Subcommittee on Crime held a hearing on H.R. 5835 (and two identical bills, H.R. 5844 and H.R. 5845). *See* June 27, 1984 Hearing at 217-30. The new definition of armor piercing ammunition was a compromise. U.S. Representative Mario Biaggi, the Congressman who initiated legislation to ban armor piercing ammunition and who introduced H.R. 5835 along with 130 of his fellow Congressmen, called it "consensus legislation." *Id.* at 240 (statement of Rep. Biaggi). A witness for the Administration, John M. Walker, Jr., described the bill as

the successful culmination of a long and strenuous effort by the Administration to find an appropriate and enforceable definition of armor-piercing projectiles. By appropriate I mean a definition which would successfully balance the needs of law-abiding sportsmen and hunters with the important law enforcement goal of providing police officers with assurance that their soft-body armor will afford greater protection against gunfire from the criminal element.

*Id.* at 251 (statement of John M. Walker, Jr., Assistant Secretary of the Treasury).

During the June 27, 1984 hearing, Congress vetted the newly-proposed definition of armor piercing ammunition. Multiple witnesses offered testimony. Congress considered and acknowledged that under the proposed definition of armor piercing (which ultimately was enacted), projectile cores containing a small amount of lead (and/or materials other than the seven specified metals) would not be armor piercing. The Chairman of the Subcommittee on

---

[13] "The term 'armor piercing ammunition' means a projectile or projectile core which may be used in a handgun and which is constructed entirely (excluding the presence of traces of other substances) from one or a combination of tungsten alloys, steel, iron, brass, bronze, beryllium copper, or depleted uranium." P.L. 99-408, August 28, 1986.

PLAINTIFF P.W. ARMS, INC.'S FED R. CIV. P. 56
PARTIAL SUMMARY JUDGMENT MOTION UNDER
ADMINISTRATIVE PROCEDURE ACT - 18

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

Crime, William J. Hughes, expressed concern over the restricted definition of armor piercing and discussed this issue with a number of witnesses:

> Mr. Hughes.  And if I read the proposed legislation and the standard, it would seem to me that if any other metal, other than just a trace metal, is incorporated aside from the tungsten alloys, steel, iron, brass, bronze, beryllium copper, or depleted uranium any others -
>
> Mr. Biaggi.  Would be exempt.
>
> Mr. Hughes [continuing].  It would be exempt.
>
> Mr. Biaggi.  That is correct. I am not so sure that is exactly what we want. That is why I think it is important that the issue be raised and discussed, and why it is important that we have some further technical contribution.

*Id.* at 245 (testimony of Rep. Biaggi).

> Mr. Hughes.  Mr. Kass, would it be very difficult for one, in an attempt to avoid definition of armor-piercing in this proposed legislation, to fabricate a projectile that would be by and large steel or brass that would have a very small amount, let's say, of lead, right in the center, very small, more than a trace, but –
>
> Mr. Kass.  It is possible, Mr. Hughes.
>
> Mr. Hughes.  Would it be difficult?
>
> Mr. Kass.  No.

*Id.* at 315 (testimony of George Kass, owner of Forensic Ammunition Service).

> Mr. Hughes.  I indicated during Mr. Biaggi's testimony that it was my belief that under your definition of armor-piercing ammunition that if the projectile core had any other metallic substance other than those enumerate that it wouldn't trigger a violation of your proposal.  Am I correct in that?
>
> Mr. Walker.  That is correct, unless it is a trace element.

*Id.* at 278 (testimony of John M. Walker, Jr., Assistant Secretary of the Treasury).

Members of Congress fully vetted the issue that the definition of armor piercing would not encompass a projectile core containing a small amount of certain metals, such as lead.  After significant debate and review, P.L. 99-408 restricts the definition of armor piercing ammunition

PLAINTIFF P.W. ARMS, INC.'S FED R. CIV. P. 56
PARTIAL SUMMARY JUDGMENT MOTION UNDER
ADMINISTRATIVE PROCEDURE ACT - 19

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

to a projectile or projectile core composed "entirely" from one or a combination of the seven

metals.  Projectile cores constructed partially from even a small amount of lead are excluded.

During the June 27, 1984 hearing, witnesses also acknowledged that the law could be,

and would have to be, amended in order to include ammunition not currently covered under the

restricted definition:

> Mr. Walker. But Mr. Biaggi's bill, of course - I hope those 120 by the way, are in addition to our 160, because that would give us a majority right there, because the bills are identical. Mr. Biaggi introduced the Administration's bill.  So I think that is why we can - from a practical viewpoint, if the bill is not amended, we believe we can get the bill through now, in this session, in both houses, and it can be signed into law, and provide the protection that it does provide.
>
> It may not go as far as other bills in the future.  It may not accomplish everything that you, Mr. Chairman, would like to see.  But it is a practical, workable, solution to an immediate problem.

*Id.* at 283.  Congress never amended the statute defining armor piercing ammunition.

The definition of armor piercing ammunition was a satisfactory compromise, and without

such, the law would not have passed:

> Mr. Doyle: More importantly, for the first time it has established a compromise upon which both pro and anti-gun force can agree….
>
> We realize that it is not as comprehensive as many people would like it to be; it is not as restrictive as the Chairman would like it to be, but we realize that in the face of the tremendous anti-gun-control lobby that any more restrictively worded bill would have no chance of passage whatsoever. We would rather see this bill pass than have no bill pass at all.

*Id.* at 319 and 335 (testimony of Thomas W. Doyle, National Executive Vice President and

Legislative Co-Chair of the Federal Law Enforcement Officers Association).

As documented by the legislative history, Congress plainly intended to enact a law that

restricts the definition of armor piercing ammunition to projectiles and projectile cores

constructed entirely from one or a combination of seven specified metals.  Lead is not included,

PLAINTIFF P.W. ARMS, INC.'S FED R. CIV. P. 56
PARTIAL SUMMARY JUDGMENT MOTION UNDER
ADMINISTRATIVE PROCEDURE ACT - 20

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

so a projectile core constructed partially from lead is not armor piercing.  Further, as previously discussed, after considering the issue, Congress declined to provide ATF with authority to classify ammunition as armor piercing if ATF determined it to be substantially similar in composition to projectiles constructed entirely from one or a combination of the seven metals. *See generally*, H.R. 6067, 98th Cong. (2d Sess. 1984) and P.L 99-408.

 ATF's interpretation of the statute is inconsistent with clear Congressional intent as established by the legislative history.  The Ninth Circuit, in *Brower v. Evans*, 257 F.3d 1058 (9th Cir. 2001), stated,

> Congress rejected Panama Declaration language which sought an immediate change in the dolphin safe label.  It would be inconsistent with that history and congressional concern to interpret the statute as establishing the new less-protective labeling standard as the default.  Just as we may not substitute our judgment for the agency's, the agency may not ignore Congress[.]

*Brower*, 257 F.3d at 1066-67 (citations omitted) (footnote 9 omitted).

Here, it would be inconsistent with Congressional intent to interpret 18 U.S.C. § 921(a)(17)(B)(i) as establishing an over-inclusive definition of armor piercing ammunition, especially after Congress specifically rejected such.  ATF may not ignore Congress, and this Court should reject ATF's plainly erroneous interpretation.

## IV.   CONCLUSION

7N6 contains a projectile core constructed partially from lead.  AR16-17.  Hence, it cannot be armor piercing.  Summary judgment under Fed. R. Civ. P. 56 is appropriate because, as a matter of law established by the administrative record, ATF's classification of 7N6 as armor piercing under 18 U.S.C. § 921(a)(17)(B)(i) is inconsistent with the statute's plain language and clear Congressional intent.  The Court should enter an Order granting PWA partial summary judgment on its APA claim, holding unlawful and setting aside ATF's classification of 7N6 as

PLAINTIFF P.W. ARMS, INC.'S FED R. CIV. P. 56
PARTIAL SUMMARY JUDGMENT MOTION UNDER
ADMINISTRATIVE PROCEDURE ACT - 21

1   armor piercing, and authorizing PWA to lawfully import, sell and distribute 7N6 ammunition in

2   the United States.

3          DATED March 18, 2016.

4

5                                          McKAY CHADWELL, PLLC

6

7                                          By s/ Robert G. Chadwell
8                                          By s/ Patrick J. Preston
                                           By s/ Thomas M. Brennan
9                                          Robert G. Chadwell, WSBA No. 22683
                                           Patrick J. Preston, WSBA No. 24361
10                                         Thomas M. Brennan, WSBA No. 30662
                                           Attorneys for Plaintiff P.W. Arms, Inc.
11                                         600 University Street, Suite 1601
                                           Seattle, WA  98101-4124
12                                         Phone: (206) 233-2800
                                           Fax:    (206) 233-2809
13                                         Email: rgc1@mckay-chadwell.com
14                                                 pjp@mckay-chadwell.com
                                                   tmb@mckay-chadwell.com
15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF P.W. ARMS, INC.'S FED R. CIV. P. 56
PARTIAL SUMMARY JUDGMENT MOTION UNDER
ADMINISTRATIVE PROCEDURE ACT - 22