Judge John C. Coughenour

1

2

3

4

5

6

7        UNITED STATES DISTRICT COURT FOR THE
         WESTERN DISTRICT OF WASHINGTON
8                    AT SEATTLE

9    P.W. ARMS, INC., a                    CASE NO. 15-cv-01990
     Washington corporation,
10                                         DEFENDANTS' OPPOSITION TO
                         Plaintiff,        PLAINTIFF'S MOTION FOR PARTIAL
11                                         SUMMARY JUDGMENT & CROSS-
             v.                            MOTION FOR PARTIAL SUMMARY
12                                         JUDGMENT
     UNITED STATES OF AMERICA and the
13   BUREAU OF ALCOHOL, TOBACCO,           Noted for Consideration on:
     FIREARMS AND EXPLOSIVES, a Federal    May 20, 2016
14   Agency,

15                       Defendants.

16        Defendants United States of America and Bureau of Alcohol, Tobacco, Firearms and

17   Explosives ("ATF") (collectively "Defendants" or "Government"), by and through their attorneys,

18   Annette L. Hayes, United States Attorney for the Western District of Washington, and Jessica M.

     Andrade, Assistant United States Attorney, hereby respectfully submit this memorandum in
19
     opposition to plaintiff P.W. Arms, Inc.'s ("Plaintiff") motion for partial summary judgment, and in
20
     support of their cross-motion for partial summary judgment.
21
                              **I.      INTRODUCTION**
22
          The dispute in this matter arose from Plaintiff's applications to import what it then referred to
23
     as "Russian State Factories (Former USSR) Russia" 5.45x39mm "FMJ Ball" ammunition.  Based

upon Plaintiff's representations regarding the ammunition, ATF approved permits numbered 13-00760, 13-01216, and 14-00996, which, collectively, authorized Plaintiff to import 150,000,000 rounds of the ammunition listed.  Each permit issued by ATF was stamped with a notice that the permit did *not* authorize the import of the described ammunition if it contained a core made of certain metals and could be used in a handgun.  These are the two qualities that define "armor piercing ammunition," the import of which is prohibited under the Gun Control Act of 1968 ("GCA").  18 U.S.C. § 92l(a)(l7)(B).  After Plaintiff began to import the ammunition in question, ATF, with the assistance of Customs & Border Patrol ("CBP"), inspected some of the ammunition.  Subsequent testing and investigation by ATF revealed that the ammunition in question (1) had a steel core, and (2) could be chambered in a handgun.  ATF thus found the ammunition to be armor piercing and revoked Plaintiff's import permits.  Subsequently, ATF issued a notice advising the public that certain "Russian-made 7N6 5.45.x39mm ammunition" had been analyzed and found to be armor-piercing.  ATF specified, however, that this finding was limited to the ammunition analyzed.  Plaintiff subsequently brought this suit.

Plaintiff's lawsuit alleges that ATF's actions were arbitrary and capricious under the Administrative Procedure Act ("APA"), and also brings claims under the Federal Tort Claims Act ("FTCA"), and Freedom of Information Act ("FOIA").[1]  Plaintiff, for its APA claim, refers to ATF's actions described above as a "rule-making" and asserts that ATF's actions were:

> (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, including 18 U.S.C. § 921(a)(17)(B) and lacked a rational connection between the facts found and the classification of the ammunition; (b) contrary to [Plaintiff's] constitutional rights and constitute a deprivation of property without due process of law; (c) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, including the Commerce Clause, since there is no substantial link between any known custom made handgun that may use 7N6 5.45x39mm ammunition and interstate commerce; and (d) without observance of procedure required by law, including but not limited to the requirement under 18 U.S.C. 926(b)

---

[1]     Defendants have moved to dismiss Plaintiff's FTCA claim on the ground that this Court lacks subject matter jurisdiction.  Defendants produced documents responsive to Plaintiff's FOIA request on March 31, 2016.  Defendants intend to file a separate motion for summary judgment on the FOIA claim.

DEFENDANTS' CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 2
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

that the "Attorney General shall give not less than ninety days public notice, and shall afford interested parties opportunity for hearing, before prescribing such rules and regulations," and under 5 U.S.C. § 553(b)(3), (c), which similarly requires an agency to provide and publish notice of such proposed rule-making decisions.

2

3

Complaint (hereinafter "Compl.") ¶ 74 (Dkt. No. 1).  In support of these theories Plaintiff alleges

4

that "the projectile core of this ammunition is not constructed entirely of steel, or from a

5

combination of steel and tungsten alloys, iron, brass, bronze, beryllium copper, or depleted

6

uranium," and that "no production handgun capable of discharging 5.45x39mm ammunition is

7

currently, or ever has been, commercially available." Compl. ¶¶ 33-34.  Plaintiff's motion for partial

8

summary judgment (hereinafter "Motion") (Dkt. No. 18), however, argues only that the ammunition

9

at issue does not have a metal "core" within the meaning of the GCA's armor piercing provision

10

because it has a lead nose cone.  18 U.S.C. § 921(a)(17)(B)(i).  Significantly, Plaintiff's Motion

abandons the other arguments made in its Complaint.

11

Pursuant to the parties' stipulated briefing schedule, Defendants hereby submit that

12

Plaintiff's Motion should be denied, and that the government is entitled to summary judgment

13

against all of the theories propounded in Plaintiff's APA claim.  First, ATF's actions were not

14

arbitrary and capricious because, as the administrative record shows, the ammunition in question

15

was found to (1) have a steel core; and (2) be capable of being chambered in a handgun, the two

16

requirements for ammunition to be prohibited under the armor piercing provision of the GCA.

17

Plaintiff's argument in its Motion that the ammunition does not have a steel core because it

18

possesses a lead plug, or nose cone, is inapposite because it completely ignores that the term "core"

refers to the central or innermost part of the ammunition, not its nose cone, or the gunpowder

19

chambered at its rear.  Furthermore, there are multiple handguns which "may" chamber the

20

ammunition under the statute.  While the statue is unambiguous and ATF's application

21

straightforward, if this Court finds the statute ambiguous, ATF's interpretation comports with the

22

legislative history and purpose of the statute, and is therefore entitled to respect.  Second, ATF's

23

actions did not deprive Plaintiff of due process, as the administrative record shows that Plaintiff was

DEFENDANTS' CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 3
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

given all of the process required.  Third, ATF did not act outside its statutory authority, nor does the statutory authority given in the GCA exceed the powers of Congress under the Commerce Clause.  Fourth, ATF's actions are not arbitrary and capricious for lack of notice and comment, because the actions taken were not of the type that requires notice and comment under the APA.

## II.     STATEMENT OF FACTS

### A.     Regulatory Background.

The administrative framework relevant to this case begins with Section 38 of the Arms Export Control Act ("AECA"), which authorizes the President to control the importation of defense articles and defense services.  22 U.S.C. § 2778(a)(1).  The statute also provides that no designated defense articles may be imported without a license in accordance with AECA and regulations issued thereunder.  22 U.S.C. § 2778(b)(2).  Authority under Section 38 has, in turn, been delegated to the Secretaries of State, Treasury, and Defense. Exec. Order No. 11958, 3 C.F.R. § 79 (1977), reprinted in 22 U.S.C. § 2751.  The delegation grants the Secretary of the Treasury primary responsibility for issuing and administering permanent import controls of defense articles and services.  The Secretary of Treasury has re-delegated implementation authority to ATF.  Executive Order No. 11432 (October 22, 1968); 1968–2 C.B. 906; Treasury Department Order No. 120–01 (formerly No. 221), 37 Fed. Reg. 11696 (1972).  Following the Homeland Security Act of 2002, ATF was transferred to the Department of Justice.  Pub. L. No. 107-296, 116 Stat. 2163.  The President ultimately granted the Attorney General primary responsibility for issuing and administering permanent import controls of defense articles and services.  *See* Exec. Order No. 13637, 78 Fed. Reg. 16129 (March 8, 2013).  The Attorney General delegated this authority to ATF. 28 CFR § 0.130.

The United States Munitions Import List ("USMIL") enumerates firearms and ammunition which may be imported into the United States under the provisions of the AECA administered by ATF.  27 C.F.R. § 447.21.  Importers must submit and receive ATF approval of an ATF Form 6, "Application and Permit" t in order to import "Firearms, Ammunition and Implements of War" into the United States.  27 C.F.R. § 447.41-447.42.  An ATF Form 6 requires applicants to provide ATF

DEFENDANTS' CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 4
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   various information, including the type of ammunition, and the caliber, gauge, or size of the

2   ammunition, among other things.  *Id.* § 447.42(a)(1)(iv).

3          The GCA, P.L. 90-618 (1968), *codified at* 18 U.S.C. §§ 921 *et seq.*, as amended by the Law

4   Enforcement Officers Protection Act of 1986 ("LEOPA"), Pub. L. 99-408 (1986), *codified at* 18

5   U.S.C. §§ 921(a)(17), 922(a)(7)-(8), prohibits the import, manufacture, and distribution of "armor

6   piercing ammunition."  "Armor piercing ammunition" is defined by the statute as:

7          (i) a projectile or projectile core which may be used in a handgun and which is
           constructed entirely (excluding the presence of traces of other substances) from one
8          or a combination of tungsten alloys, steel, iron, brass, bronze, beryllium copper or
           depleted uranium; or

9          (ii) a full jacketed projectile larger than .22 caliber designed and intended for use in a
           handgun and whose jacket has a weight or more than 25 percent of the total weight of
10         the projectile.

11   18 U.S.C. § 92l(a)(l7)(B).  Relevant to this matter is subparagraph (i) which defines "armor piercing

12   ammunition" as: a projectile *or projectile core* which (1) may be used in a handgun; and (2) is

13   constructed entirely of a specified hard metal (i.e. has a metal core rather than just a metal jacket).

     *Id.*  The GCA also allows the Attorney General to exempt "a projectile which the Attorney General
14
     finds is primarily intended to be used for sporting purposes, or any other projectile or projectile core
15
     which the Attorney General finds is intended to be used for industrial purposes."  18 U.S.C.
16
     § 92l(a)(l7)(C).
17
                    **B.     Plaintiff's Import Permit Applications.**
18
            Plaintiff is a registered importer of munitions.  AR1-AR2.  On January 22, 2013, Plaintiff
19
     filed the first of several "Application and Permit for Importation of Firearms, Ammunition and
20
     implements of War" forms (hereinafter "Form 6 Application") at issue in this case.  This Form 6
21
     Application, signed by Plaintiff's President Stacy Prineas, sought permission to import 50,000,000

22   rounds of what was described as "5.45x33mm FMJ Ball" ammunition.  AR3.[2]  For the manufacturer,

23   _____
     [2]      This first Form 6 Application also sought permission to import 50,000,000 rounds of "7.65x54R FMJ
     Ball" and 20,000,000 rounds of "7.62x38R Ball" ammunition, which is not at issue in this case.  AR3.

DEFENDANTS' CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 5
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Plaintiff listed "Russian State Factories (Former USSR) Russia." *Id.* Where the Form 6 asks the applicant to indicate the "Type" of ammunition, including "(Ball, Wadcutter, Shot, AP, Tracer) (Rounds)," Plaintiff circled only "Ball" and did not circle "AP" or armor-piercing. *Id.* The purpose of importation was listed was "resale in USA market." *Id.* The Form 6 Application was approved on February 5, 2013 and was signed by William Majors, director of ATF's import division. *Id.* The permit number given was 13-00760. *Id.* Importantly, upon approval, the permit was stamped with the following notice:

> NOTE: this permit does not authorize the importation of the ammunition described thereon if: (1) it has a projectile or projectile core which may be used in a handgun and which is constructed entirely (excluding the presence of traces of other substances) from one or a combination of tungsten alloys, steel, iron, brass, bronze, beryllium, copper, or depleted uranium . . .

AR3.1 (capitalization in original).

On January 31, 2013, Plaintiff submitted a near-identical Form 6 Application for the importation of multiple types of ammunition, including another 50,000,000 rounds of "5.45x39mm FMJ Ball." AR5.[3] When identifying the manufacturer, Plaintiff again indicated that the ammunition was made by "Russian State Factories (Former USSR) Russia" but also listed a "Ruag Amnotec." *Id.* Again, Plaintiff did not circle "AP" and indicated that the ammunition was for "resale in USA market." AR5. The permit was granted on February 15, 2013, signed by William Majors, and given the number 13-01216. *Id.* It was stamped with the same notice as the previous permit, 13-00760, indicating that the permit did not allow for importation of projectile cores made of metal that could be used in handguns. AR6.

Almost a year later, on January 21, 2014, Plaintiff submitted a third Form 6 Application. The application sought permission to import another 50,000,000 rounds of .45x39mm FMJ Ball, as well as various other types of ammunition.[4] AR8. Ruag Amnotec was no longer listed as a manufacturer,

---

[3]     The second Form 6 Application also sought to import 50,000,000 rounds of 7.62x54R FMJ Ball, 25,000,000 rounds of 7.62x58R FMJ Ball, and 25,000,000 rounds of 7.5x55mm FMJ Ball ammunition. AR5.

[4]     550,000,000 rounds of 7.62x54R FMJ Ball, and 25,000,000 rounds of 7.62x38R Ball. AR8.

DEFENDANTS' CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 6
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and the purpose of importation was described as "resale to FFL [Federal Firearm Licensed] dealers." *Id.* The permit was approved on February 21, 2014, assigned by William Majors, and given the number 14-00996. *Id.* Once again, the permit was stamped with the notice that it did not grant permission to import the materials listed if they included metal-cored projectiles that could be chambered in a handgun. AR9. None of the permit applications indicated the 5.45x39mm ammunition was "AP" (armor piercing) or that it had a steel core. Plaintiff also never described the projectiles as "7N6" on any of the applications, as it repeatedly describes the ammunition in its Complaint.

## C. ATF's Seizure & Investigation of Plaintiff's Shipment.

One of Plaintiff's shipments of the "5.45x39mm FMJ Ball" ammunition arrived in Norfolk, Virginia on February 13, 2014. AR11 (Form 6A for Release and Receipt of Imported Firearms, Ammunition, and Implements of War, showing receipt in Norfolk on February 13, 2014). An ATF Special Agent ("SA"), with the assistance of CBP, inspected the ammunition. AR13. The SA found that the ammunition was magnetic, indicating that it might have a metal core. *Id.* The SA then deconstructed one of the rounds and "found that the projectile alone was sticking to the magnet further indicating that the projectile contained metals other than copper, brass or lead." *Id.* In order to determine whether the ammunition might fit the GCA's definition of armor piercing, the SA then researched, and found, that there was a "handgun present in the US that can fire" the ammunition, a FB Radom, Model Onyks 89S. *Id.* On February 27, 2016 the SA then seized one package of 30 rounds, out of the 2,903,040 rounds that had been detained, and sent samples to the ATF Laboratory and the Firearms Technology Branch for analysis. AR15. The Firearms Technology Branch (which has since been renamed the Firearms and Ammunition Technology Division) is responsible for providing expert technical support to ATF, and often provides expert testimony on firearms and ammunition.[5] Five samples were transmitted to the lab for confirmation that the ammunitions did,

---

[5]    *See* ATF Firearms and Ammunition Technology, https://www.atf.gov/firearms/firearms-and-ammunition-technology (last visited April 14, 2106).

indeed, have a steel core.  AR18 (Evidence Transmittal Form, showing shipment to Firearms Technology Branch, describing ammunitions as "steel core").

### D.  ATF's Revocation of Plaintiff's Permits.

On March 6, 2014, the Firearms Technology Branch issued a report of its findings that the subject ammunition contained a "lead plug, steel core, and steel jacket; therefore, the submitted ammunition is classified as 'armor piercing ammunition' per 18 U.S.C. § 921(a)(17)(B)(i) and may be used in a handgun."  AR20-22 (full signed Firearms Technology Branch report, with photos).  On March 11th ATF informed PW Arms that the ammunition had been found to be armor piercing, and indicated that it would need to be exported out of the United States, abandoned to CBP, or placed in a foreign trade zone ("FTZ") until further disposition could be made.  AR216.

On March 6th, after ATF had made its finding that the ammunition was armor-piercing, ATF sent a sample of the ammunition to the Federal Bureau of Investigation's ("FBI") Laboratory Division for metallurgy testing.  *See* AR16 (FBI report, noting communication date of March 6, 2014).  This was to confirm ATF's finding that the material at the center of the ammunitions was indeed steel, and did not include more than trace elements of metals other than "tungsten alloys, steel, iron, brass, bronze, beryllium copper or depleted uranium" under the language of the GCA.  18 U.S.C. § 92l(a)(l7)(B).  The FBI completed its testing and issued a report to ATF on March 21, 2014.  The testing confirmed that the core section of the ammunition was steel.  While the FBI Ph.D chemist who composed the report used the following language, "[t]he smaller, front core section of Item 1 [the ammunition] is lead.  The larger, rear core section is steel," this phrasing was unrelated to, did not constitute an interpretation or finding pursuant to, the GCA—unlike the Firearm Technology Branch's prior report.  AR20-AR22.

On March 28, 2014, ATF approved an additional Form 6 Application by Plaintiff, this time to transport the ammunition in question to an FTZ in Nevada for future sales to law enforcement purchasers, a lawful distribution of armor-piercing ammunition under the GCA.  AR30 (ATF letter

DEFENDANTS' CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 8
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of approval); AR25 (approved Form 6); *see also* 18 U.S.C. § 922(a)(7)-(8) (specifying allowable

distributions of armor piercing ammunition).  On April 7, 2014, ATF issued a Special Advisory to

the general public indicating that certain "Russian-made 7N6 5.45x39 ammunition" had been tested

and found to contain a steel core.  AR37.  The advisory specifically stated:

> When ATF tested the 7N6 samples provided by CBP, they were found to contain a
> steel core.  ATF's analysis also concluded that the ammunition could be used in a
> commercially available handgun, the Fabryka Bronie Radom, Model Onyks 89s,
> 5.45x39 caliber semi-automatic pistol, which was approved for importation into the
> United States in November 2011.  Accordingly, the ammunition is "armor piercing"
> under the section 921(a)(17)(B)(i) and is therefore not importable.  *ATF's
> determination applies only to the Russian-Made 7N6 ammunition analyzed, not to all
> 5.45x39 ammunition.  Ammunition of that caliber using projectiles without a steel
> core would have to be independently examined to determine their importability.*

*Id.* (emphasis added).

In oversight communications with members of Congress, ATF also clarified that more than

100 of the Fabryka Bronie Radom, Model Onyks 89s pistols had been requested and approved for

importation,[6] and that there were other available handguns that could chamber the round, including

the XCR-L Pistol and other custom built 5.45x39mm AK-type pistols.  AR38; *see also* AR54-AR59

(information regarding XCR-L Pistol, including its ability to chamber 5.45x39mm round); AR124-

AR140, AR204-AR210, AR211-AR212, AR213-AR215 (internal ATF emails relating to handguns

capable of chambering the 5.45x39mm round).

By letter dated April 24, 2014, Plaintiff asked ATF to reconsider its classification of the

ammunition as armor piercing.  AR40-AR42.  On Jun 2, 2014, ATF responded with a letter

explaining the reasoning for its classification and declining to alter that classification.  AR43-AR44.

The letter countered Plaintiff's reasoning regarding the core of the ammunition as follows:

> In your correspondence, you contend that the ammo your client is concerned with is
> made up of a "steel insert" encapsulated by a "lead core."  Regardless of the name
> that may be given to each component makeup of this ammunition, the center and

---

[6]    The Fabryka Bronie Radom, Model Onyks 89s, specifically, had been the subject of a November 22,
2011 private advisory letter from ATF to importer Dalvar of USA.  AR60-AR69 (ATF letter responding to
Dalvar's request).

innermost foundation (core) of the projectile is steel.  The purpose of the lead surrounding the "steel core" is intended to allow the projectile to press into the rifling as the projectile travels down the bore.

You are also concerned about the Fabryka Bronie Radom, Model Onyx 89S submitted to FTB for an evaluation to determine "Sporting Purpose and Importability" which was referenced in the classification of 5.45.x39 steel core ammunition.  This determination was made in the context of an evaluation and classification regarding importability pursuant to 18 U.S.C. § 925(d)(3)—of which the intent is for use by an individual and/or commercial market for sporting purposes—as opposed to importation under § 925(d)(1), which permits importation of a firearm for scientific or research purposes.

Regardless of this matter, § 921(a)(17)(B)(i), references a projectile or projectile core which may be used in "a" handgun.  There is no mention respecting the amount of handguns which must be available, only that a *handgun* can use such ammunition.

AR44 (emphasis in original).  At this point Plaintiff had no further administrative avenue of appeal, and subsequently filed suit in this Court.

## III.   <u>STANDARD OF REVIEW</u>

The judicial review provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701-706, *et seq.*, provide the jurisdictional basis for a claim which challenges the legality of a final agency action.  In such cases, judicial review is confined to the administrative record.  *San Luis & Delta-Mendota Water Auth. v. United States*, 672 F.3d 676, 713 (9th Cir. 2012). A plaintiff's burden is to show that a final agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  The Supreme Court has described in general terms how this standard operates:

[A]n agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).  The Ninth Circuit has been careful to adhere to a narrow application of the standard, while ensuring that the agency's action is considered and rational.

DEFENDANTS' CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 10
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Alaska Oil & Gas Ass'n. v. Jewell*, No. 13-35619,__ F.3d __, 2016 WL 766855, *6 (9th Cir. Feb. 29, 2016).  The Ninth Circuit has also described the arbitrary and capricious standard as deferential and narrow, establishing a "high threshold" for setting aside agency action. *River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1067, 1070 (9th Cir. 2010).

In cases where agency judgment involves "technical expertise," or where specialists express conflicting views, judicial review is limited to an assessment of whether the agency conducted a reasoned evaluation of the relevant information and reached a decision that, although perhaps disputable, was not arbitrary or capricious. *Mt. Graham Red Squirrel v. Espy*, 986 F.2d 1568, 1571, 1576 (9th Cir. 1993).  A court must not substitute its judgment for that of the agency, but also must not "rubber-stamp" administrative decisions. *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife Serv.*, 273 F.3d 1229, 1236 (9th Cir. 2001).  Instead, the action is presumed valid and is upheld if a reasonable basis exists for the decision. *Nw. Ecosystem All. v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1140 (9th Cir. 2007). So long as the agency "considered the relevant factors and articulated a rational connection between the facts found and the choices made," the court should defer to the agency's expertise and uphold the action. *Id.* (citation omitted).

## IV.   ARGUMENT

Defendants here submit that Plaintiff's Motion should be denied, and summary judgment granted in favor of the government for the following reasons.  First, the administrative record shows that ATF's actions were supported by the evidence, and were neither arbitrary nor capricious, because the ammunition at issue does, in fact, have a steel core, and there are multiple firearms commercially available that may chamber the round.  Further, ATF's actions neither denied Plaintiff due process of law, nor did they exceed ATF's statutory authority, or the powers of the Commerce Clause.  Finally, black letter administrative law shows that no notice and comment procedures were required for the revocation action that occurred here.

DEFENDANTS' CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 11
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**A.**   **ATF's Revocation of the Import Permits Was Neither Arbitrary Nor Capricious.**

2    Courts conduct the "familiar two-step inquiry to determine whether to defer to the agency's

3  interpretation" under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843, 104 S.

4  Ct. 2778, 2782, 81 L. Ed. 2d 694 (1984).   At step one, the court asks "whether Congress has directly

5  spoken to the precise question at issue.  *Id.* (internal quotations omitted).   "If so, then the inquiry is

over, and we must give effect to the 'unambiguously expressed intent of Congress.'" *Id.* at 843.   If

6  the statute is silent or ambiguous with respect to the specific issue, the question for the court is

7  whether the agency's answer is based on a permissible construction of the statute.  *Id.*   Under this

8  prong, deference is to be given to an agency's interpretation of a statute as, "it is the agencies, not

9  the courts, that have the technical expertise and political authority to carry out statutory mandates."

10  *General Elec. Co. v. EPA*, 53 F.3d 1324, 1327 (D.C. Cir. 1995).

11    Not all agency actions, however, are due the highest level of deference outlined in *Chevron*.

12  *See, e.g.*, *United States v. Mead Corp.*, 533 U.S. 218, 227-228, 121 S.Ct. 2164, 150 L.Ed.2d 292

13  (2001) (tariff ruling not entitled to *Chevron* deference, but instead entitled, under *Skidmore*, *infra*, to

"respect according to its persuasiveness"); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161,

14  89 L.Ed. 24 (1944) ("The weight of such a judgment in a particular case will depend upon the

15  thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier

16  and later pronouncements, and all those factors which give it power to persuade, if lacking power to

17  control.").   The Supreme Court explained in *Barnhart v. Walton* the factors that should influence a

18  court's decision of whether to apply *Chevron* or *Skidmore* deference to an agency action, including

19  the "interstitial nature of the legal question, the related expertise of the Agency, the importance of

the question to administration of the statute, the complexity of that administration, and the careful

20  consideration the Agency has given the question over a long period of time"  535 U.S. 212, 221-222,

21  122 S.Ct. 1265, 152 L.Ed.2d 330 (2002) (capitalization in original).

22    With regard to ATF classifications, courts have not been consistent on the level of deference

23  to be applied.  *Compare Firearms Import/Export Roundtable Trade Group v. Jones*, 854 F. Supp. 2d

DEFENDANTS' CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 12
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1, 18 (D.D.C. 2012) (Rothstein, J.) (upholding ATF's interpretation of 18 U.S.C. § 925(d) to ban importation of certain firearms under *Chevron* step one); *Modern Muzzleloading, Inc. v. Magaw*, 18 F. Supp. 2d 29, 36 (D.D.C. 1998) (applying *Chevron* deference to review of ATF classification of rifle as a firearm) *with Innovator Enters. v. Jones*, 28 F. Supp. 3d 14 (D.D.C. 2014) (ATF not entitled to full deference under *Chevron* because classification decision involved "straightforward question of statutory interpretation" as opposed to an "interstitial" legal question); *Springfield, Inc. v. Buckles*, 116 F. Supp. 2d 85, 89 (D.D.C. 2000) (upholding ATF's interpretation of "sporting purposes" in 18 U.S.C. § 925(d)(3) under *Skidmore* deference).

Through the GCA, as amended by LEOPA, Congress has directly spoken to the issue of whether the ammunition sought to be imported by Plaintiff is armor piercing under the definition codified at 18 U.S.C. 921(a)(17)(B)(i).  While Plaintiff argues that this definition does not include the ammunition at issue because of its lead plug, or nose cone, this interpretation is contrary to the plain language of the statute.  Accordingly, ATF's actions should be affirmed as a correct interpretation of the unambiguous intent of Congress under *Chevron* step one.  If this Court finds that the statute is ambiguous, ATF submits that the agency action at issue certainly bears enough of the characteristics described in *Barnhart* to merit *Chevron* deference.  Regardless, however, ATF's interpretation still passes muster under either *Chevron* or *Skidmore*.  ATF's adjudication is not only textually supportable, but is also in furtherance of the policy and legislative intent of the GCA and LEOPA.

### 1. The Clear Intent of the Armor Piercing Provision is to Prohibit Importation of Metal-Cored Handgun Ammunition.

Plaintiff's argument that the "projectile core" is not "constructed entirely" of one of the seven specified metals under the statute because it has a lead nose cone in front of a steel center completely ignores the term "core."  Core, undefined by the statute, is defined in the dictionary as "a central and often foundational part usually distinct from the enveloping part by a difference in nature." Merriam-Webster's Collegiate Dictionary, 11th Ed., Merriam-Webster, Inc. (2009).  Here, the

DEFENDANTS' CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 13
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

administrative record shows that the "central" or middle part of the ammunition at issue is steel, while the "enveloping" parts include a lead nose cone, full metal jacket, and gunpowder.  *See* AR20-21 (ATF Firearms Technology Branch Report of Technical Examination finding the ammunition to contain "a lead plug, steel core, and steel jacket").  In other words, the "projectile core," or the center of the ammunition enveloped by the plug or nose cone, jacket, and powder, is "constructed entirely" of steel such that the ammunition is armor piercing if it may be chambered in a handgun.  18 U.S.C. 921(a)(17)(B)(i).

This plain-reading interpretation takes into account the whole of the GCA's armor-piercing provision, in keeping with rules of statutory interpretation.  *Boise Cascade Corp. v. Environ. Prot. Agency*, 942 F.2d 1427, 1432 (9th Cir. 1991) ("[W]e must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.").  In particular, the statute distinguishes the term "projectile" from "projectile *core*."  This clarifies that the entire projectile need not be made from one of the seven specified metals, but rather that only the core element need be metal in order for the ammunition to be armor piercing.  While Plaintiff relies on the phrase "constructed entirely" to argue otherwise, this reading is not supported by the parenthetical explanation of "constructed entirely" that is included in the statute: "(excluding the presence of traces of other substances)."  The helpful statutory parenthetical, and in particular the word "trace," indicates that "composed entirely" was meant to ensure the metallic purity of the projectile *or projectile core*, not to exclude all projectiles that have other materials in their interior, as opposed to their core.  This reading does not, as Plaintiff argues, render the word entirely "surplussage."  Rather, it ensures the utility of all phrases in the definition.  Under Plaintiff's interpretation, there would be no need for the term "projectile core" as distinguished from "projectile," since Plaintiff

DEFENDANTS' CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 14
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

would require *all* of the projectile to be made of one of the seven metals in every instance, regardless of its "core" or center composition.[7]

Plaintiff's reliance on the language of the FBI metallurgist's report for the finding that the ammunition at issue does not have a core made entirely of steel is misguided.  ATF is the agency charged with interpreting and applying the GCA, and as such its finding should control.  AR20-AR21.  This is not only because explicitly only ATF (not FBI metallurgists) were given this authority by statute (*see* Part III.A, *infra*), but because ATF has the expertise necessary to make findings in this technical area.  *Mt. Graham*, 986 F.2d at 1576 (courts should defer to agency's own technical expertise).  Plaintiff cannot rely on a singular description of the lead nose cone of the ammunition as part of the projectile "core" by an individual who is neither a firearms expert nor the individual (or entity) charged with making the administrative finding.  *See, e.g.*, *Cumberland Pharmaceuticals, Inc. v. Food & Drug Admin.*, 981 F. Supp. 2d 38, 53 (D.D.C. 2013) (discussing how focus of APA should be on reasons state for the decision by the agency, and that deference is not owed to individual statements of agency employees).  Further, the agency record should be viewed as a whole, and not piecemeal, in order to review the agency's action.  5 U.S.C. § 706; *see also Portland Audubon Soc. v. Endangered Species Comm.,* 984 F.2d 1534, 1548 (9th Cir.1993) ("Section 706 of the APA provides that judicial review of agency action shall be based on 'the whole record' . . . [which] includes everything that was before the agency pertaining to the merits of its decision").  Plaintiff's interpretation of the armor piercing provision in its Motion, and in its Complaint, is contrary to the tenets of statutory construction.  ATF's interpretation of the statute

---

[7]     Plaintiff also invokes the rule that the statue must be viewed as a whole (Motion at 11-14), but Plaintiff's argument on this point is inapposite.  Plaintiff posits that because the GCA gives ATF the power to exempt armor piercing ammunition from prohibition if it is for sporting or industrial purposes (18 U.S.C. § 921(a)(17)(C)), it must provide ATF countervailing authority to define "armor piercing" in order for ATF to "ban" the ammunition at issue here.  ATF acted within its statutory authority by applying the definition of armor piercing to the ammunition at issue, and did not add to the definition of armor piercing, nor totally "ban" a class of ammunition.  AR37

DEFENDANTS' CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 15
Case No. 15-cv-01990-JCC

1    mirrors the clear intention of Congress as expressed in the statutory language, and thus should be

2    affirmed under the first prong of *Chevron*.

3                    **2.**      **The 5.45x39mm Round May be Used in a Handgun Under the GCA.**

4            Plaintiff's Complaint also argues that the ammunition at issue is not "armor piercing"

5    because there is no handgun available to chamber the round, chiefly on the allegation that the

6    Fabryka Bronie Radon handgun is not sufficiently "commercially available."  Compl.  ¶¶ 54-56.

7    Plaintiff abandons this argument in its Motion.  This is likely because the GCA language states that

     for ammunition to be armor piercing, the requirement is only that it "*may* be used in a handgun."  18

8    U.S.C. 921(a)(17)(B)(i) (emphasis added).  A "handgun" is defined by the GCA as "a firearm which

9    has a short stock and is designed to be held and fired by the use of a single hand" as well as any

10   combination of parts from which the same can be assembled.  18 U.S.C. 921(a)(29)(A)-(B).  This

11   definition does not require that the handgun of a certain level of popularity or available, and

12   certainly not that it be abstractly defined as "commercially available."  *United States v. Watkins*, 278

13   F.3d 961, 965 (9th Cir. 2002) ("We are mindful of the rule that a court should not read words into a

     statute that are not there.").  Here, the Fabryka Bronie Radom is a known short stock handgun that is

14   available in the United States and which uses 5.45x39mm ammunition.  AR60-AR63.  In addition,

15   ATF located multiple other handguns available in the United States that are capable of chambering a

16   5.45x39mm round.  AR38; *see also* AR54-AR59 (information regarding XCR-L Pistol, including its

17   ability to chamber 5.45x39mm round); AR124-AR140, AR204-AR210, AR211-AR212, AR213-

18   AR215 (internal ATF emails relating to handguns capable of chambering the 5.45x39mm round).

19   ATF's finding with regards to the second prong of the armor-piercing definition is supported by the

     evidence and is far from arbitrary or capricious.

20                   **3.**      **If This Court Finds the GCA to be Ambiguous, ATF's Interpretation**
21                            **Withstands Review Under Either *Chevron* or *Skidmore*.**

22           Should this Court find that the GCA does not indicate clear Congressional intent to prohibit

23   the import of ammunition bearing the characteristics of the ammunition at issue here, the Court

DEFENDANTS' CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 16
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

should then consider whether ATF's interpretation is "a permissible construction" of the GCA under the second prong of *Chevron* (*Chevron*, 467 U.S. at 842-43) or is a "persuasive" interpretation "entitled to respect" under *Skidmore*.  *Skidmore*, 323 U.S. at 140.  Here, ATF's interpretation of the GCA is reasonable, rational and consistent with the statute both textually (as described in Part IV.A.1., *supra*), and as a matter of policy and Congressional intent.  This makes ATF's actions most certainly "rational and consistent with the statute" under *Chevron*.  *Sullivan v. Everhart*, 494 U.S. 83, 89, 110 S.Ct. 960, 108 L.Ed.2d 72 (1990) (*quoting NLRB v. United Food & Commercial Workers*, 484 U.S. 112, 123, 108 S.Ct. 413, 416, 98 L.Ed.2d 429 (1987)).  Furthermore, ATF's revocations of the permits here bear "thoroughness," valid reasoning, consistency, and other characteristics which are persuasive under *Skidmore*.  *Skidmore*, 323 U.S. at 140.

While legislative history generally is not considered under the first prong of *Chevron,* it may be of assistance in determining whether an agency's construction is permissible.  *Schneider v. Chertoff*, 450 F.3d 944, 955 fn. 15 (2006) (citing *Chevron*, 467 U.S. at 842-43).[8]  The legislative history of the GCA, including the legislative history cited by Plaintiff in its Motion, supports ATF's interpretation here.  First, the legislative history clarifies that the language "projectile or projectile core" is disjunctive, and is meant to include ammunition with metal cores as opposed to just solid metal projectiles.  *See Armor-Piercing Ammunition and the Criminal Misuse and Availability of Machine Guns and Silencers: Hearing Before Subcomm. On Crime of the H. Comm. On the Judiciary, H.R. 5835, H.R. 5844, H.R. 5845*, 98th Cong., 2d Sess. (June 27, 1984) (hereinafter "June 27, 1984 Hearing") at 278 (discussion of Reps. Walker and Hughes).  Furthermore the term "projectile or projectile core" was chosen so that only certain components of the ammunition need

---

[8]     The Ninth Circuit's approach to statutory interpretation is to look to legislative history only where it concludes the statutory language does not resolve an interpretive issue.  In other words, where a statute is ambiguous, we may look to legislative history to ascertain its purpose. *United States v. Aguilar,* 21 F.3d 1475, 1480 (9th Cir.1994) (*en banc*), *aff'd in part, rev'd in part,* and *remanded,* 515 U.S. 593, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995).  The Ninth Circuit also recognizes the principle that "[l]egislative history—no matter how clear—can't override statutory text. Where the statute's language 'can be construed in a consistent and workable fashion,' [this Court] must put aside contrary legislative history." *Hearn v. Western Conf. of Teamsters Pension Trust Fund*, 68 F.3d 301, 304 (9th Cir. 1995) (citations omitted).

be composed of one of the seven metals, rather than requiring the entire casing of the ammunition to contain metal. *Hearing before the Subcommittee on Crime of the Committee on the Judiciary, House of Representatives, 99th Congress, on H.R. 4 and H.R. 13* (May 9, 1985) (hereinafter "May 9, 1985 Hearing")[9] at 36 (Statement of Edward T. Stevenson, Dep'y Assistant Secretary of Treasury For Operations) ("The administration's bill [referring to 'projectiles or projectile cores'] would reach the projectile alone; thus ensuring the restrictions on manufacture and importation apply to the projectile even before it has been assembled as part of a cartridge."). Further, the legislative history indicates that the term "trace" is in reference to the metallic purity of the core, just as ATF had interpreted. June 27, 1984 Hearing at 24 (discussion of Reps. Biaggi and Hughes). Altogether, these explanations of the various terms of the armor-piercing definition support the interpretation adopted by ATF.

Plaintiff's Motion focuses solely, however, on testimony during the June 27, 1984 Hearing where members of Congress discussed whether the proposed statute was too lenient because, as they interpreted it, one could get around the definition by including lead in the core of the ammunition. Plaintiff argues that the ammunition at issue here would be similarly excluded, because of its lead nose cone. Motion at 18-19. This discussion does not support Plaintiff's interpretation. In fact, the Congressmen discussing the situation explicitly noted that the example ammunition (a Swedish import) would not be armor piercing because it contained lead at the *center* of the ammunition—in other words, at the core. *See* June 27, 1984 Hearing at 244 ("there are some foreign countries that manufacture ammunition that would penetrate Kevlar, soft body armor, but which would have lead in the center of it, such as this type of ammunition, which is still armor piercing, which in my judgment, wouldn't be covered by the definition"); *see also id.* at 315 (statement of George Kass, owner of Forensic Ammunition Service) (Mr. Kass answering that it would be possible to circumvent the statute by placing lead "right in the center" of ammunition). Here, the ammunition

---

[9]     A copy of this hearing is attached as Exhibit A to the Declaration of Jessica M. Andrade, filed concurrently herewith.  A courtesy copy will be provided to the Court in paper form.

DEFENDANTS' CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 18
Case No. 15-cv-01990-JCC

has a solid steel piece at its core, which testing confirmed contained no more than a trace of other metals.

This comports with the Congressional understanding of what makes ammunition armor piercing, as well as the goals of the statute to prevent such ammunition from being available on the open market.  Legislative history reveals that it is the hardness of the dense alloys outlined in the statute that have a particularly armor piercing quality.  *Id.* at 259 (statement of Deputy Associate Attorney General Jay Stephens) ("[A]ll armor piercing ammunition of which we are aware are composed of dense metals, dense alloys, metal alloys, which possess hardness, they resist deformation upon impact.  So when you get the combination of the weight and resistance to expansion upon impact, it gives these projectiles, which are made of these particular hard materials, a great penetration ability.")  In other words, the inclusion of more than a trace amount of lead within a steel projectile could decrease this hardness and make the ammunition non-armor piercing. In contrast, the presence of a hard steel core behind a lead plug, such as that found in the ammunition at issue here, would still have the same piercing effect.  Notably, Plaintiff wisely does not contend that the ammunition it sought to import does not have the capability to pierce body armor, contrary to the purpose of the statute.  Given these extemporaneous indications of the meaning of the armor piercing provision, ATF's actions here were "rational and consistent with the statute," and as such must be upheld under either *Chevron* or *Skidmore* deference by this Court.

## B.  ATF's Actions Did Not Violate Due Process.

The Plaintiff alleges that "ATF's stoppage of [Plaintiff's] imported shipments" is contrary to its constitutional rights and "constitute[s] a deprivation of property without due process of law." Compl. ¶ 74.  Plaintiff does not raise this argument in its Motion.  To succeed on a due process claim, the plaintiff "must first demonstrate that he was deprived of a constitutionally protected property interest." *Gerhart v. Lake County, Montana*, 637 F.3d 1013, 1019 (9th Cir. 2011).  "To have a property interest in a government benefit, 'a person clearly must have more than an abstract

DEFENDANTS' CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 19
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  need or desire for [the benefit].  He must have more than a unilateral expectation to it.  He must,

2  instead have a legitimate claim of *entitlement* to it."  *Id.* (*citing Roth*, 408 U.S. at 577).  "

3       Here, ATF may revoke an import permit at any time (27 C.F.R. § 447.44(a))[10] and as the

4  Federal Circuit has ruled "the statutes and regulations governing the importation of arms ma[ke] it

5  clear that the right to import arms from overseas is subject to such extensive control that the denial

6  or revocation of an import permit cannot be regarded as . . . property" protected by the Fifth

7  Amendment's due process clause.  *B-West Imports, Inc. v. United States*, 75 F.3d 633, 635 (Fed. Cir.

8  1996); *see also Mitchell Arms, Inc. v. United States,* 7 F.3d 212 (Fed. Cir. 1993), *cert. denied,* 511

9  U.S. 1106, 114 S.Ct. 2100, 128 L.Ed.2d 662 (1994) (rejecting a takings claim made by an arms

10  importer when import permits were revoked).  As the Court in *B-West* further noted "the [ ] right to

11  import and sell [ ] arms in the United States was subject at all times to the hazard that [ ] permits

12  would be revoked, pursuant to statute and regulation, on foreign policy grounds or for other reasons.

13  The Due Process Clause does not require the government to stand as a surety against the adverse

14  consequences sometimes suffered by persons who knowingly undertake that kind of commercial

15  risk."  *B-West*, 75 F.3d at 638.  Under due process precedent, including both *B-West* and *Mitchell*

16  *Arms*, Plaintiff's claim that the revocation of permits violated due process, here styled as part of its

17  APA claim, must be dismissed as a matter of law.[11]

---

[10]     27 C.F.R. § 447.44(a) provides as follows: "Import permits under this subpart may be denied, revoked, suspended or revised without prior notice whenever the appropriate ATF officer finds the proposed importation to be inconsistent with the purpose or in violation of section 38, Arms Export Control Act of 1976 or the regulations in this part."  ATF even emphasized the impermanent and conditional nature of the permits, applying restriction stamps to each issued permit stating that if the ammunition described by Plaintiff was actually armor piercing, its importation would not be authorized by the permit.  AR 3.1, 6, 9; 91.

[11]     If the Court finds the Plaintiff has a protected property interest in the permits, Plaintiff still received all the process it was due.  It was notified of the "stoppage" of the goods (AR 23-AR24, AR30-AR31), and was given multiple opportunities to present its case.  AR34-AR36, AR40-AR42, AR99.  "All that is necessary is that the procedures be tailored . . . to insure that [claimants] are given meaningful opportunity to present their case."  *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 590 (9th Cir. 1998).

DEFENDANTS' CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 20
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**C.**   **ATF Did Not Act Outside its Statutory Authority, Which Authority is Within Congress' Commerce Clause Powers to Grant.**

2

3      Plaintiff claims ATF acted in "excess of statutory jurisdiction, authority, or limitations, or

4   short of statutory right, including the Commerce Clause, since there is no substantial link between

5   any known custom made handgun that may use 7N6 5.45x39mm ammunition and interstate

6   commerce." Compl. ¶ 74. Plaintiff abandons this argument in its Motion. First and foremost, ATF

7   clearly acted within its authority here. Pursuant to 28 U.S.C. § 599A(b)(1), ATF is responsible for

8   investigating "criminal and regulatory violations of the Federal firearms . . . laws." More

9   specifically, pursuant to 28 C.F.R. § 0.130(a)(vi), ATF shall "[i]nvestigate, administer, and enforce

10  the laws related to alcohol, tobacco, firearms, explosives, and arson, and perform other duties as

11  assigned by the Attorney General, including exercising the functions and powers of the Attorney

12  General under the following provisions of law: . . . Section 38 of the Arms Export Control Act, as

13  added by Public Law 94-329, section 212(a)(1), as amended, 22 U.S.C. 2778 (relating to the

14  importation of items on the U.S. Munitions Import List)." As the plaintiff concedes, this "includes

15  the classification of ammunition." Compl. ¶ 14. Also specifically included is the denial, revocation,

16  suspension or revision "without prior notice" of import permits "whenever the appropriate ATF

17  officer finds the proposed importation to be inconsistent with the purpose or in violation of Section

18  38 of the Arms Export Control Act of 1976 or the regulations in this part." 27 C.F.R. § 447.44(a).

19  The revocation of Plaintiff's import permits was thus within ATF'S statutory authority.

20      Similarly, federal case law is clear that the authority given to ATF here is not only within

21  Congress' power under the Commerce Clause, but also the Foreign Commerce Clause. Plaintiff is

22  being prohibited from importing armor-piercing ammunition from another country, which is

23  explicitly the province of Congress. U.S. Const. Art. 1, § 8, cl. 3 (delegating to Congress the power

"[t]o regulate Commerce with foreign Nations, and among the several States"). Similarly, both the

GCA and the LEOPA's regulation of interstate commerce, not factually at issue in this case, are

within the Commerce Clause powers of Congress. The provisions at issue here regulate "channels of

DEFENDANTS' CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 21
Case No. 15-cv-01990-JCC

interstate commerce" such that they fall within the first, and most broad, categorization of Commerce Clause powers under Supreme Court jurisprudence.  *See United States v. Lopez*, 514 U.S. 549, 558, 115 S.Ct. 1624, 131 L.Ed. 626 (1995) [12] (outlining three categories of Commerce Clause powers, "channels of interstate commerce," "instrumentalities of interstate commerce," and activities with "substantial relation to interstate commerce").  As a matter of law, the Commerce Clause does not form a bar to ATF's actions here, whether styled as a basis for Plaintiff's APA claim, or as a separate Constitutional claim.

### D.    ATF's Actions Did Not Require Notice and Comment.

Plaintiff argues that ATF acted arbitrarily and capriciously by not providing notice and comment for its revocation of Plaintiff's permit.  Compl. ¶¶ 60-61, 74.  Again, Plaintiff abandons this argument in its Motion.  ATF's revocation of the permits, however, was not a "rulemaking" that required notice or comment under the APA or 18 U.S.C. 926(b) (federal firearms statute requirement of notice and comment prior to rulemaking).  ATF's revocation of the permits was an interpretation and application of the GCA specifically-prescribed by 27 C.F.R. § 447.44(a), which only applied to the ammunition attempted to be imported by Plaintiff.  AR37 ("ATF's determination applies only to the Russian-Made 7N6 ammunition analyzed, not to all 5.45x39 ammunition.  Ammunition of that caliber using projectiles without a steel core would have to be independently examined to determine their importability").  Neither was ATF's April 7, 2014 "Special Advisory" a "rulemaking" under the APA.  The advisory did not create a new law, but rather explained why the ammunition at issue had met the definition of armor-piercing—a statutory definition that preexisted the advisory.  Furthermore, apart from the fact that neither the revocation nor the subsequent public announcement were a rulemaking, the APA specifically exempts "interpretive rules or statements of policy" from the notice and comment requirement.  5 U.S.C. § 553(d).

---

[12]    The provision of the GCA at issue here is easily distinguishable from the Gun-Free School Zones Act of 1990, which was invalidated as outside of Congress' Commerce Clause power in *Lopez*.  That act prohibited bringing guns within a school zone, an explicitly *intra*state activity, while the armor-piercing provisions are specifically targeted at *inter*state activity.

DEFENDANTS' CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 22
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Plaintiff also argues that ATF's provision of a "public comment period" relating to a possible withdrawal of the exemption of M855 "green tip" ammunition under 18 U.S.C. § 921(a)(17)(C) means that a similar comment period must have been held before Plaintiff's permits were revoked. Comp. ¶ 60.  The M855 ammunition, which bears a steel core and lead nose cone similar to the ammunition at issue here, was exempted as "for sporting purposes" in 1986.  *See* M855 Exemption Letter; *see also ATF Framework for Determining Whether Certain Projectiles are "Primarily Intended for Sporting Purposes" Within the Meaning of 18 U.S.C. § 921(a)(17)(C)*, at p. 5, *available at* https://www.atf.gov/file/11266/download.[13]  ATF's notice and comment regarding the withdrawal of that exemption would have been a change in the Attorney General's interpretation under Section 921(a)(17)(C)—a revocation of the exemption—which even then would still not require notice and comment under the APA.  *Firearms Import/Export Roundtable v. Jones*, 854 F. Supp. 2d 1, 13 (D.D.C. 2012) (change in interpretation of GCA, where ATF would no longer grant certain import permits, did not require notice and comment).  ATF was not obligated to provide notice and comment prior to revoking Plaintiff's import permits, and to the extent Plaintiff's APA claim rests on this argument, it should be dismissed as a matter of law.

## V.   **CONCLUSION**

For the reasons stated above, Defendants respectfully request that this Court deny Plaintiff's motion for summary judgment and instead grant summary judgment in favor of Defendants, against Plaintiff's APA claim.

//
//
//
//
//

---

[13]     A copy of this document is attached as Exhibit B to the Declaration of Jessica M. Andrade.  A courtesy copy will be provided to the Court in paper form.

DEFENDANTS' CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 23
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

Respectfully submitted,

2

ANNETTE L. HAYES
United States Attorney

3

4

*/s/ Jessica M. Andrade*
Jessica M. Andrade, WSBA No. 39297
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington  98101
Phone:  (206) 553-7970
Fax:      (206) 553-4073
Email:  Jessica.Andrade@usdoj.gov

5

6

7

8

Attorney for Defendants

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

DEFENDANTS' CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 24
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

<u>**CERTIFICATE OF SERVICE**</u>

2      I hereby certify that on this date, I electronically filed the foregoing with the Clerk of

3 Court using the CM/ECF system which will send notification of such filing to the attorney(s) of

4 record for the plaintiff(s).

5      McKAY CHADWELL, PLLC
       Robert G. Chadwell, WSBA No. 22683
6      Patrick J. Preston, WSBA No. 24361
       Thomas M. Brennan, WSBA No. 30662
7      600 University Street, Suite 1601
       Seattle, WA 98101-4124
8      Email: rgc1@mckay-chadwell.com
              pjp@mckay-chadwell.com
9             tmb@mckay-chadwell.com

10      I hereby certify that I have served the foregoing document to the following non-CM/ECF

11 participant(s)/CM/ECF participant(s), via USPS mail, postage pre-paid.

12      -0-

13          Dated this 15th day of April, 2016.

14                                          */s/ Tara Faulds*
                                            TARA FAULDS, Legal Assistant
15                                          United States Attorney's Office
                                            700 Stewart Street, Suite 5220
16                                          Seattle, Washington 98101-1271
                                            Phone: 206-553-7970
17                                          Fax: 206-553-4073
                                            Email: tara.faulds@usdoj.gov

18

19

20

21

22

23

DEFENDANTS' CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 25
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970