THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| P.W. ARMS, INC., a<br>Washington corporation,<br><br>                Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA and the<br>BUREAU OF ALCOHOL, TOBACCO,<br>FIREARMS AND EXPLOSIVES, a Federal<br>Agency,<br><br>                Defendants. | No.  2:15-cv-01990 JCC<br><br>**PLAINTIFF P.W. ARMS,<br>INC.'S REPLY BRIEF IN<br>SUPPORT OF FED. R. CIV. P.<br>56 APA MOTION AND<br>OPPOSITION TO ATF'S APA<br>CROSS-MOTION FOR<br>PARTIAL SUMMARY<br>JUDGMENT** |

## I.    Introduction

Under 18 U.S.C. § 921(a)(17)(B)(i), an 'armor piercing projectile' is one solid unit

constructed entirely from of one of seven specific metals.  A 'projectile' does not have a

cartridge casing.  A 'projectile core' does have a cartridge casing.  Indeed, a 'projectile core' is

all the material encapsulated by this casing, e.g., the jacket and/or liner.  If and only if all the

material encapsulated by the cartridge casing is constructed entirely from one of the seven

enumerated metals is it armor piercing.  This conclusion is the only reasonable and permissible

interpretation of 18 U.S.C. § 921(a)(17)(B)(i).

P.W. ARMS, INC.'S REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT UNDER APA - 1

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

7N6 5.45x39mm rifle ammunition (7N6)'s core is constructed from both steel and lead. On April 7, 2014, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) classified 7N6 as 'armor piercing' despite the fact that 7N6 does not contain a core constructed entirely of steel. The fact that 7N6 contains a core constructed partially from steel and partially from lead was irrelevant to ATF's classification as 'armor piercing' because "ATF does not consider there to be a difference between a partial and full steel core[.]" AR 143. This was ATF's longstanding interpretation of 18 U.S.C. § 921(a)(17)(B)(i). ATF originally took this position in 1986, immediately after the enactment of the statute defining 'armor piercing ammunition.'[1] *See* October 31, 1986 letter by ATF Deputy Director William Drake attached as Exhibit 1 to the Declaration of Thomas M. Brennan (Brennan Decl.) in Support of PWA's APA Reply Brief at ¶2. As recently as February 19, 2016, ATF reported to this Court that ATF "does not consider there to be a difference between a partial and full steel core." *See* Dkt. # 11, Declaration of William Majors (Majors Decl.) at ¶22.[2]

However, ATF's historic interpretation of 'armor piercing ammunition' contradicted the clear statute, requiring an 'armor piercing' 'projectile' or 'projectile core' to be constructed **entirely** from one of seven metals; lead is not one of those metals. *See* 18 U.S.C. §

---

[1] Generally, courts do not consider material outside the administrative record, but the administrative record may be supplemented when the agency has relied upon materials not included in the record. *See Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996). ATF submitted an exhibit in support of its cross-motion for summary judgment on the APA. *See* Dkt. # 24, p. 23 and # 24-3 (e.g., "ATF Framework For Determining Whether Certain Projectiles are 'Primarily Intended For Sporting Purposes' within the Meaning of 18 U.S.C. § 921(a)(17)(c)"). This document, which ATF relied on and which was not part of the administrative record, discusses ATF's historical classification of SS109/M855 as 'armor piecing.' The Drake letter discusses the same subject -- ATF's classification of SS109/M855 as 'armor piecing' (under its unlawful interpretation of 'projectile core'). Therefore, it is reasonable to conclude that ATF, at least indirectly, relied on this 1986 ATF letter. *See Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) ("The 'whole' administrative record, therefore, consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position"). Further, the reviewing court can go outside the administrative record for the limited purpose of background information. *See Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980). The Drake letter provides this necessary background information.

[2] ATF submitted this declaration to the Court with its Federal Tort Claims Act briefing. *See* Dkt. # 11.

P.W. ARMS, INC.'S REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT UNDER APA - 2

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

921(a)(17)(B)(i).  Quietly, in response to plaintiff P.W. Arms, Inc. (PWA), ATF abandoned its

initial unlawful interpretation only to replace it with a similarly unlawful one: only "the center

and innermost foundation" constitutes the core.  Dkt. # 24, pp. 3, 9-10.

ATF's new interpretation, again, conflicts with the plain language of 18 U.S.C. §

921(a)(17)(B)(i) and clear Congressional intent.  Further, even if this Court finds 18 U.S.C. §

921(a)(17)(B)(i) ambiguous, ATF's interpretation is arbitrary and capricious.  ATF offered no

explanation when it changed its longstanding position on what constituted an 'armor piercing

projectile core.'  The administrative record (1) contains no evidence that 7N6's "center and

innermost foundation" is constructed entirely from steel and (2) lacks sufficient documentation

that a commercially available handgun existed at the time it classified 7N6 as 'armor piercing.'

Indeed, the administrative records supports the conclusion that 7N6 contains lead in its "center

and innermost foundation."  Whether under ATF's original interpretation or its new one, ATF

unlawfully classified 7N6 as 'armor piercing.'  PWA is entitled to partial summary judgment

under the Administrative Procedure Act (APA) as a matter of law.

**II.    As a Matter of Law Established by the Administrative Record,
7N6 Contains a Core Constructed Partially from Lead So Fails
the Statutory Definition of 'Armor Piercing Ammunition'**

ATF's forensic ammunition expert, in this case the FBI, conducted metallurgy testing

establishing 7N6's core contained a "solid piece" of lead: "[t]he smaller, front core section of

[7N6] is lead."[3]  AR 16.  ATF relied upon this report in support of its decision to classify 7N6 as

'armor piercing.'  *See* AR 16-17.  ATF admits that the FBI "is responsible for providing expert

technical support to ATF, and often provides expert testimony on firearms and ammunition."

---

[3] ATF inaccurately claims the FBI's report as the "singular description" of 7N6's core containing lead.  Dkt. # 24, p. 15. While this report alone could be factually dispositive as ATF's expert concluded 7N6's core contained a solid piece of lead (*see* AR 16), the administrative record contains significantly more proof that 7N6's core contains lead.

P.W. ARMS, INC.'S REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT UNDER APA - 3

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington 98101-4124
(206) 233-2800  Fax (206) 233-2809

Dkt. # 24, p. 7. ATF does not dispute the FBI's findings in the administrative record. ATF

cannot, after-the-fact, disavow its own expert's conclusions. *See* Dkt. # 24, p. 15. In this light,

ATF's own expertise is dubious. ATF's new "expert" opinion that only the "center and

innermost foundation" constitute the 'core' contradicts its previous, longstanding "expert"

opinion that there is no difference between a partial and full steel core. *See* AR 143 and Exh. 1

attached to Brennan Decl. at ¶2.

Like its expert, ATF opined that 7N6's core is constructed partially from lead. ATF

internally discussed its forthcoming decision to classify 7N6 as 'armor piercing:'

> You said the DHS found shipments of 5.45x.39 ammo with a "full steel core"
> which is illegal. Is there a statute stating this? Also, it seems this ammo was
> available made with steel. Is there is a difference between a "steel core" and "full
> steel core"?

AR 104. Answering this question, ATF stated, "ATF does not consider there to be a difference

between a partial and full steel core [e.g., ATF's position in 1986]." AR 143. ATF employed its

own 'armor piercing' definition, contrary to the statute's plain requirement that a 'projectile

core' be constructed entirely, not partially, from steel. *See* 18 U.S.C. § 921(a)(17)(B)(i).

ATF submitted documentation describing the "technical" composition of 7N6. "The very

low drag, full metal jacket boat-tail bullet is a three-piece design with a copper alloy jacket, lead

core and steel penetrator." AR 46. This statement, part of ATF's administrative record, is

rightfully attributable to ATF (and is contrary to its current position).

"[T]he function of the district court is to determine whether or not as a matter of law the

evidence in the administrative record permitted the agency to make the decision it did."

*Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985). "The term 'armor piercing

ammunition' means... a projectile or projectile core which may be used in a handgun and which

is constructed entirely (excluding the presence of traces of other substances) from one or a

P.W. ARMS, INC.'S REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT UNDER APA - 4

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington 98101-4124
(206) 233-2800  Fax (206) 233-2809

combination of" seven metals, including steel but not lead.  18 U.S.C. § 921(a)(17)(B)(i).  As a matter of law, ATF impermissibly classified 7N6 as 'armor piercing' because the administrative record (1) establishes that 7N6 contains a core constructed partially from lead, and (2) does not contain evidence that 7N6's "center and innermost foundation" is steel.  ATF's classification of 7N6 as 'armor piercing' under 18 U.S.C. § 921(a)(17)(B)(i) clearly contradicts this unambiguous statute.  As such, this Court's inquiry should end.  *See Chevron U.S.A. Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 842 (1984).

## III.  ATF's New Interpretation of 'Armor Piercing Ammunition' Conflicts with the Plain Language of 18 U.S.C. § 921(a)(17)(B)(i)

ATF does not dispute that a 'projectile core' constructed partially from lead cannot be 'armor piercing.'  *See* 18 U.S.C. § 921(a)(17)(B)(i).  Contrary to its initial position, ATF's response submits that only the "center and innermost foundation" is the 'projectile core.'  Dkt. # 24, pp. 3, 9-10.  According to ATF, the material encapsulated by a jacket is the 'projectile,' not the 'projectile core.'  *See* Dkt. # 24, pp. 14-15.  This interpretation fails to acknowledge that certain ammunition does not have cartridge casing.  Further, any 'projectile' constructed entirely from one or a combination of the seven metals categorically has a "center and innermost foundation" also constructed entirely from one or a combination of the seven metals.  Under ATF's new interpretation, the term 'projectile' (inapposite to ATF's conclusion (*see* Dkt. # 24, pp. 14-15) would be rendered superfluous.  This is impermissible.  *See Burrey v. Pacific Gas & Elec. Co.*, 159 F.3d 388, 394 (9th Cir.1998) ("In interpreting a statutory provision, we must avoid any construction that renders some of its language superfluous").

PWA's lawful interpretation correctly gives effect to both 'projectile' and 'projectile core.'  Contrary to ATF's assertion, PWA does not now, and never did, contend that the entire 'projectile' need be made from one of the seven metals to be armor piercing.  *See* Dkt. # 24, p.

P.W. ARMS, INC.'S REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT UNDER APA - 5

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington 98101-4124
(206) 233-2800  Fax (206) 233-2809

14. Indeed, if the entire 'projectile core' is constructed from one of the seven metals, it is 'armor piercing.' Congress used the terms 'projectile' and 'projectile core' in the disjunctive in order to make clear that solid metal projectiles and projectiles cores, ammunition with a cartridge case but otherwise constructed entirely from one or a combination of the seven metals, are both 'armor piercing.' *See* 18 U.S.C. § 921(a)(17)(B)(i).

ATF defines 'core' as "'a central and foundational part usually distinct from the enveloping part by a different nature.'" Dkt # 24, p. 13. Consistent with this definition, the enveloping part of 7N6 is its jacket; the entire inside is the 'projectile core,' which includes a solid piece of lead. *See* AR 16-17, 22. Further, the steel piece of 7N6 is not "enveloped" by lead so would be excluded from ATF's cited definition of "core." *See* AR 17 (diagram of 7N6's solid, non-enveloping lead core piece).

ATF again supports PWA's interpretation when it states that "the term[s] 'projectile or projectile core' [were] chosen so that only certain components of the ammunition need be composed of one of the seven metals, rather than requiring the entire casing of the ammunition to contain metal." Dkt. # 24, p.18. PWA agrees. The casing material is irrelevant to the definition of 'armor piercing;' if the material encapsulated by the casing (e.g., 'projectile core') is constructed entirely from one of the seven metals, it is 'armor piercing.' If it contains lead, however, it is not.

Congressman Stevenson's statements support PWA's position that the bill defining armor piercing ammunition "would reach the projectile alone; thus ensuring the restrictions on manufacture and importation apply to the projectile even before it has been assembled as part of a cartridge." Dkt. # 24, p. 18. 'Armor piercing ammunition' includes ammunition with a cartridge, e.g., a 'projectile core,' which is constructed entirely from one of the seven metals.

P.W. ARMS, INC.'S REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT UNDER APA - 6

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington 98101-4124
(206) 233-2800 Fax (206) 233-2809

ATF diminishes Congress' use of the term "entirely." ATF seemingly argues that "entirely" and "excluding the presence of trace elements" are synonymous. *See* Dkt. # 24, p. 14. Congress, however, does not use redundant words. Applying rules of statutory construction, the Supreme Court said, courts "will avoid a reading which renders some words altogether redundant." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995), citing *U.S. v. Menasche*, 348 U.S. 528, 538-39 (1955). As is plain from the statute, a 'projectile' or 'projectile core' containing the presence of trace elements other than the seven metals but otherwise constructed entirely from one of the seven metals is 'armor piercing.' *See* 18 U.S.C. § 921(a)(17)(B)(i). There is no issue in this case of trace elements; lead is a solid piece of 7N6. *See* AR 16-17.

"In interpreting a statute, [courts] look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress." *U.S. v. Mohrbacher*, 182 F.3d 1041, 1048 (9th Cir. 1999) (quotation omitted). ATF's briefing is replete with the conclusory phrase "steel core" but conspicuously refrains from using the complete relevant statutory definition of 'armor piercing:' "a projectile core constructed entirely... from steel[.]" 18 U.S.C. § 921(a)(17)(B)(i). ATF goes so far as to claim that to be 'armor piercing,' "only the core element need be metal[.]" Dkt. # 24, p. 14. "Core element" stands in plain contradiction to "constructed entirely from." To interpret "constructed entirely from steel" to mean "constructed from steel only in the center and innermost part" would impermissibly render the word "entirely" surplusage. *See Burrey*, 159 F.3d at 394.

ATF's response emphasizes that its classification applies only to 7N6. *See* Dkt. # 24, p. 9. While a limited application of an agency construction does not excuse unlawfulness, ATF's impermissible interpretation of 18 U.S.C. § 921(a)(17)(B)(i) has drastic implications far beyond this case, as ATF's interpretation here applies to all ammunition. Under ATF's new

interpretation that a 'projectile core' is only "the center and innermost foundation," ammunition containing one of the seven listed metals in its very center, in any amount, would be 'armor piercing' and illegal in the hands of licensed dealers and citizens in every state exercising their Second Amendment rights. ATF's unlawful construction of 18 U.S.C. § 921(a)(17)(B)(i) would eviscerate clear Congressional intent to limit 'armor piercing ammunition' to a projectile or projectile core constructed entirely from one of seven metals. Under the plain language of 18 U.S.C. § 921(a)(17)(B)(i), 7N6 is not 'armor piercing' because its core contains lead.

### IV. The Legislative History Makes Clear that 7N6's Projectile Core Includes a Solid Piece of Lead So Is Not 'Armor Piercing'

A 'projectile core' is not only the "the center and innermost foundation." Dkt. # 24, p. 3, citing AR 43. Congress methodically considered the statute defining 'armor piercing ammunition.' The bill was introduced in 1981 and ultimately enacted in 1986. Speaker William John Hughes stated in 1985, "The ammunition covered is carefully and narrowly defined, and has no sporting purpose." *The Law Enforcement Officers Protection Act of 1985*, 99th Cong., 1st Sess. (September 19, 1985) (statement by William J. Hughes).[4] The interpretation of 'projectile core' proffered by ATF is inconsistent with Congress' "narrow" definition.

Congress carefully examined this issue during the June 27, 1984 hearing, where Samuel Kramer, the deputy director of the National Engineering Laboratory at the National Bureau of Standards (NBS), testified. *See Armor-Piercing Ammunition and the Criminal Misuse and Availability of Machine Guns and Silencers: Hearing Before Subcomm. on Crime of the H. Comm. on the Judiciary, H.R. 5835, H.R. 5844, H.R. 5845*, 98th Cong., 2d Sess. at 286-87 and

---

[4] PWA provides a courtesy copy of this statement to the Court on the same date it files this brief.

295-98 (June 27, 1984)[5] (testimony of Samuel Kramer).  NBS conducted research on body armor

and used performance based methods to develop tests to identify ammunition that would

penetrate body armor.  *Id.*  Mr. Kramer offered as exhibits diagrams of three types of

ammunition.  *Id.* at 309-12.  At its most complex, ammunition contains only four components: an

outer jacket, a liner, an inner jacket, and a core:



*Id.*[6]  Demonstratively, the "core" is everything other than the outer jacket, jacket or liner, e.g.

cartridge casing.  *Id.*  There is no evidence of legislative intent to limit 'projectile core' to the

"innermost foundation,"[7] an interpretation which is plainly controverted by these diagrams.

The FBI and ATF testing document that 7N6's core contains a solid piece of lead:



Figure 1. Materials within the Rem 1 bullet.

---

[5] PWA focuses on this hearing because Congress most fully vetted the narrow definition of 'armor piercing' during
this testimony to reflect Congressional intent for the law.  ATF inaccurately claims this was PWA's "sole" focus
(Dkt. # 24, p. 18) when PWA provided additional legislative authority.

[6] PWA previously provided a courtesy copy of this June 27, 1984 hearing to the Court with its March 18, 2016 APA
summary judgment motion.  These diagrams are located on pages 309-312.

[7] ATF cites to Congressional testimony mentioning that if lead is in the center of ammunition, it would not be
'armor piercing.'  *See* Dkt. # 24, p. 18.  PWA agrees.  If there is a solid piece of lead in the center, rear or front, it is
not 'armor piercing ammunition.'

P.W. ARMS, INC.'S REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT UNDER APA - 9

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

AR 17 and AR 22 (upper right photo).

Courts strike down agency decisions that are contrary to clear Congressional intent as established by the statute itself and the legislative history. *See U.S. v. Shimmer*, 367 U.S. 374, 382 (1961). As established by 18 U.S.C. § 921(a)(17)(B)(i) and the legislative history, Congress spoke to the precise question at issue. *See Chevron,* 467 U.S. at 842-43. 7N6 is not 'armor piercing' because it is not a 'projectile core' constructed "entirely" from steel.

### V.   ATF's Reclassification of 7N6 as 'Armor Piercing' is Arbitrary and Capricious, Under Any Standard of Review

Even if this Court were to find that the statutory definition of 'projectile core' is ambiguous, ATF's interpretation nevertheless fails as arbitrary and capricious. When assessing if an agency action is arbitrary and capricious, courts conduct a narrow but searching and careful inquiry. *See Marsh v. Oregon Natural Res. Council,* 490 U.S. 360, 378 (1989).

> An agency's action may be arbitrary and capricious if 'the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'

*Brower v. Evans*, 257 F.3d 1058, 1065 (9th Cir. 2001) (quotation omitted). Courts apply different standards of deference when assessing agency action depending on a number of factors: "the interstitial nature of the legal question, the related expertise of the agency, the importance of the question to administration of the statute, the complexity of that administration, and the careful consideration the agency has given the question over a long period of time." *Barnhart v. Walton*, 535 U.S. 212, 222 (2002).

Applying the *Barnhart* factors, courts will provide deference under either *Chevron U.S.A. Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984), where an agency's interpretation

P.W. ARMS, INC.'S REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT UNDER APA - 10

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington 98101-4124
(206) 233-2800  Fax (206) 233-2809

will be upheld if (and only if) it is permissible, or *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), where an agency's interpretation is merely entitled to "respect" (which is less than full deference), limited to its "power to persuade." *Springfield, Inc. v. Buckles*, 116 F. Supp. 2d 85, 88-89 (D.D.C. 2000), aff'd, 292 F.3d 813 (D.C. Cir. 2002).

ATF has a long history of unlawfully interpreting a clear statute (18 U.S.C. § 921(a)(17)(B)(i)), which presents a straightforward, but not interstitial, legal question. ATF did not carefully consider this issue initially, and certainly not over a long period of time, as ATF only recently changed its position. ATF's decision (made without explanation) runs counter to the administrative record, including its own expert's report. These facts weigh in favor of limited *Skidmore* deference. *See Barnhart*, 535 U.S. at 222.

Under *Skidmore*, "[t]he weight accorded to an administrative judgment 'will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" *U. S. v. Mead Corp.*, 533 U.S. 218, 219 (2001), citing *Skidmore*, 323 U.S. at 140. ATF's very recent interpretation of 'projectile core' was made only after PWA's counsel confronted ATF on this precise issue, which documents a lack of thoroughness in its consideration, not to mention that its new interpretation contradicts its historic interpretation. Further, the administrative record is void of support for the conclusion that 7N6's "center and innermost foundation" is steel, so ATF's reasoning is invalid. ATF's new interpretation of 18 U.S.C. § 921(a)(17)(B)(i) lacks the power to persuade.

Even under *Chevron*, ATF's new interpretation is impermissible. ATF employed factors that Congress never intended it to consider and offered no explanation for its decision, which is undocumented, runs counter to the administrative record, and is so implausible that it could not

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington 98101-4124
(206) 233-2800  Fax (206) 233-2809

be ascribed to the product of ATF's expertise. *See Brower*, 257 F.3d at 1065. Under either standard, ATF's interpretation of 18 U.S.C. § 921(a)(17)(B)(i), and classification of 7N6 as 'armor piercing,' is arbitrary and capricious.

<strong>a.   ATF abandoned its historic, unlawful interpretation of 18 U.S.C. § 921(a)(17)(B)(i) without explanation, and ATF's conflicting positions on similar ammunition belie the illegality of ATF's new interpretation</strong>

ATF admits that the FBI, its expert, found that 7N6's core contained lead. *See* Dkt. # 24, p. 15. ATF expects this Court to reject the FBI's findings "because ATF has the expertise necessary to make findings in this technical field." Dkt. # 24, p. 15. ATF's new "expert" opinion should be given no credence when ATF abruptly changed its historic interpretation of 18 U.S.C. § 921(a)(17)(B)(i). Initially in this case, ATF accepted that 7N6's core was constructed partially from lead and partially from steel but considered there to be no difference between a partial and full steel core. *See* AR 143.

Since its enactment, ATF unlawfully interpreted 18 U.S.C. § 921(a)(17)(B)(i) to classify ammunition as 'armor piercing' when a 'projectile core' contained lead. "In 1986, ATF exempted 5.6 mm (.223) SS109 and M855 'green tip' ammunition containing a steel core." Dkt # 24-3, p. 5. Regarding why this ammunition required exemption, in 1986 ATF said, "Examination of the SS109 (M855 Ball) ammunition indicates that the projectile is constructed using a full metal jacket and projectile cores constructed of a steel penetrator located forward of a lead core." *See* Exhibit 1 attached to Brennan Decl. at ¶2. Despite SS109/M855 having, in ATF's assessment, a 'projectile core' constructed from both steel and lead, ATF classified this ammunition as 'armor piercing.' "Based on its construction, the SS109/M855 projectile meets the above definition [18. U.S.C. § 921(a)(17)(B)] of armor piercing ammunition." *Id.* SS109 and M855 plainly does not contain a 'projectile core' constructed "entirely" from steel because,

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington 98101-4124
(206) 233-2800  Fax (206) 233-2809

as ATF reported, it contains lead. *Id.*

This classification in 1986 is consistent with ATF's initial (and unlawful) position in this case that there is no difference between a partial and full steel core. *See* AR 143. ATF recently reiterated its initial, unlawful position to this Court. "The ATF as a matter of policy and industry expertise does not consider there to be a difference between a partial and full steel core, as both have the same impact on whether the ammunition is armor piercing." Majors Decl. at ¶22.[8]

ATF's June 2, 2014 letter by Earl Griffith is the first instance in which ATF publically opined that only "the center and innermost foundation" constitutes the core.[9] AR 43-44. ATF developed this new position nearly two months after it made its decision to classify 7N6 as 'armor piercing.' *See* AR 37. However, the administrative record only includes materials that were before the agency at the time the decision was made. *See Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) (concluding "that the district court properly struck extra-record documents submitted by Southwest Center. Judicial review of an agency decision typically focuses on the administrative record in existence at the time of the decision and does not encompass any part of the record that is made initially in the reviewing court"). This administrative record should not include the June 2, 2014 letter or other documents that ATF created after April 7, 2014, the date ATF classified 7N6 as 'armor piercing.'

Nevertheless, Griffith's individual statement that only "the center and innermost foundation" constitute the "core" (AR 43-44) is owed no deference. Indeed, as ATF points out, "deference is not owed to individual statements of agency employees." Dkt. # 24, p. 15, citing

---

[8] The basis Majors offers for ATF's "expert" position (rather, its previous "expert" position) was considered, and rejected, by Congress. *See* Dkt. # 18, pp. 16-18. ATF asks this Court to accept its "industry expertise," yet also set forth a position that Congress specifically rejected over 30 years ago. ATF also claims that PWA "wisely" did not discuss 7N6's penetration capability. Dkt. # 24, p. 19. This was wise because Congress rejected this definition.

[9] Even after sending the June 2, 2014 letter, ATF reverted to its original unlawful interpretation, as documented by Major's declaration submitted in this case. *See* Dkt. # 24-3, p. 5 (Majors Decl. at ¶22).

P.W. ARMS, INC.'S REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT UNDER APA - 13

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington 98101-4124
(206) 233-2800  Fax (206) 233-2809

*Cumberland Pharmaceuticals, Inc. v. Food & Drug Admin.*, 981 F. Supp. 2d 38, 53 (D.D.C. 2013). ATF improperly relies on Griffith's statements as arguments in its briefing, which are similarly due no deference. *See* Dkt. # 24, pp. 3, 9-10.

Additionally, ATF takes a position in its response regarding SS109/M855 ammunition that is inconsistent with ATF's position in 1986. "The M855 ammunition... bears a steel core and lead nose cone similar to the ammunition at issue here[.]" Dkt. # 24, p. 23. In 1986, ATF classified the lead piece of M855 (which ATF admits is similar to 7N6) as a "lead core" (not "lead nose cone"). *See* Exhibit 1 attached to Brennan Decl. at ¶2. In its response, ATF semantically attempts to avoid the statutory definition of 'armor piercing' by calling the lead piece of 7N6 a "lead nose cone" as opposed to what it is, part of the 'projectile core.'

Further still, ATF agrees that 7N6 and M855 both have a steel and lead piece (*see* Dkt. # 24, p. 23), but there is a critical distinction -- the positions of the steel and lead are reversed. Lead is in the front and steel is in the rear of 7N6 (*see* AR 16-17) while steel is in front and lead is in the rear of M855 (*see* Exhibit 1 attached to Brennan Decl. at ¶2). ATF claims that only the "center and innermost" (Dkt. # 24, pp. 3, 9-10) part constitutes its "core," but due to the projectiles' compositions, it is axiomatic that 7N6 and M855 cannot both have steel at their "center and innermost." Yet, ATF (unlawfully) classified both as 'armor piercing.'

ATF attempts to shift the blame to PWA and argues that PWA did not accurately identify 7N6 as "armor piercing" during the permit application process. *See* Dkt. # 24, pp. 6, 7. PWA, however, submitted each of its permits before April 7, 2014, the date ATF (unlawfully) classified 7N6 as 'armor piercing.' Before this date, 7N6 was not, and could not be, 'armor piercing' -- it is ATF (not PWA) that makes such classification. *See* 18 U.S.C. § 926 and 28 C.F.R. § 0.130(a)(1). Besides, PWA had no reason to believe that ammunition with a partial lead core

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington 98101-4124
(206) 233-2800  Fax (206) 233-2809

1    would be deemed 'armor piercing.'

2        ATF properly abandoned its unlawful interpretation of 18 U.S.C. § 921(a)(17)(B)(i) but

3    did so without a word of explanation. Discussing quasi-judicial agency action under the APA,

4    courts must look "to the record that was considered by the agency not to post hoc rationalizations

5    of counsel or even agency members and not to evidentiary materials that were not considered by

6

7    the agency." *Am. Iron & Steel Inst. V. E.P.A.*, 568 F.2d 284, 296-97 (3d Cir. 1977).[10]

8        For three decades, ATF unlawfully interpreted 18 U.S.C. § 921(a)(17)(B)(i), and only

9    very recently reimagined the law under an alternate unlawful interpretation. ATF's June 2, 2014

10   letter was an unsuccessful post hoc attempt to rationalize 7N6's classification as 'armor

11   piercing.' ATF crafted this letter responding to PWA's counsel, who indicated in his April 24,

12   2014 letter to ATF that 7N6 was "encapsulated in a lead core." AR 41. This statement was

13   made without the benefit of the administrative record, and while lead is part of 7N6's core, lead

14

15   does not encapsulate the steel. *See* AR 16-17, 20-22. ATF employee Griffith reiterated the

16   inaccurate statement that the steel is "encapsulated by a 'lead core.'" AR 43. Griffith, however,

17   had the benefit of the ATF and FBI reports establishing that lead is a solid, non-enveloping

18   piece. This evidences an attempt to placate PWA, as ATF knowingly failed to provide accurate

19   information. Indeed, ATF tailored its new position that only the "center and innermost

20   foundation" constitutes the "core" in direct response to PWA's counsel's inaccurate statement

21   that 7N6's steel piece was encapsulated by lead. *See* AR 41. ATF's change in interpretation

22

23   reasonably can be viewed as a litigation tactic as opposed to the product of agency expertise.

24

25       ATF offered no explanation for its abrupt change in statutory construction, and following

26   the requirements of quasi-judicial APA decisions, this Court should require ATF to have offered

27

28   ───────────

[10] PWA cites to jurisdictions outside the U.S. Supreme Court and Ninth Circuit as persuasive authority.

P.W. ARMS, INC.'S REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT UNDER APA - 15

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington 98101-4124
(206) 233-2800  Fax (206) 233-2809

an explanation.  ATF's new interpretation of 'projectile core' was initially set forth in its untimely June 2, 2014 letter crafted in response to PWA.  As such, its new interpretation is not a considered decision based on agency expertise.  ATF cannot remedy its failures in reply briefing. Doing so would constitute additional meaningless post hoc rationalizations of counsel.

Lastly, ATF took blatantly contradictory positions regarding the composition of SS109/M855 in its response compared to its 1986 letter, which highlight the disingenuousness of ATF's position that 7N6 has a "lead nose cone" and not lead in its core.  *See* Dkt # 24-3, p. 5 and Exhibit 1 attached to Brennan Decl. at ¶2.  Further, ATF compared SS109/M855 to 7N6, finding them "similar" and both 'armor 'piercing.'  *Id.*  However, due to the reverse placement of lead and steel within SS109/M855 and 7N6, it is impossible that both contain steel in their "innermost foundation."  This makes ATF's newly-contrived interpretation so implausible that it could not be the product of agency expertise.  *See Brower*, 257 F.3d at 1065.

### b.   The administrative record never documents that the "center and innermost foundation" of 7N6 is steel or that a "commercially available handgun" exists

A decision is arbitrary and capricious if an agency fails to examine the relevant data and articulate a satisfactory explanation for its action, which would be a clear error of judgment.  *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 30-31 (1983).  "A finding based upon no reliable evidence whatever is a clear error of judgment and an abuse of discretion."  *First Girl, Inc. v. Reg'l Manpower Adm'r of U. S. Dep't of Labor*, 499 F.2d 122, 124 (7th Cir. 1974), citing *Song Jook Suh v. Rosenberg*, 437 F.2d 1098 (9th Cir. 1971).

ATF claims that it sent 7N6 to the FBI "to confirm ATF's finding that the material at the center of the ammunition was indeed steel[.]"  Dkt. # 24, p. 8.  This is inaccurate because neither the FBI nor the ATF concluded that steel is located in the "center" of 7N6.  *See* AR 16-17, 20-

21. In fact, the FBI reported that 7N6's steel piece was the "rear [not middle] core section." AR 16. The administrative record fails to establish that 7N6's "center and innermost foundation" is constructed entirely from steel. It contains only ATF's unsubstantiated assertions that 7N6 has a "steel core" and "lead plug," a term noticeably missing from the statute and legislative history.

With no evidence to support its new position and without explanation, ATF cannot claim its decision was a considered one, and its irrational classification of 7N6 as 'armor piercing' is arbitrary and capricious. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 48 ("We have frequently reiterated that an agency must cogently explain why it has exercised its discretion in a given manner").

ATF also arbitrarily and capriciously "concluded that [7N6] could be used in a commercially available handgun, the Fabryka[.]"[11] AR 37 (e.g., ATF's April 7, 2014 Special Advisory). ATF made this finding without collecting reliable evidence.[12] The administrative record should only include materials that were before the agency at the time the decision was made. *See Sw. Ctr. For Biological Diversity*, 100 F.3d at 1450. ATF submitted 89 documents created on or after April 7, 2014 in support of its decision that a commercially available handgun existed. *See* AR 124-54, 156-215. PWA objects to this Court's consideration of these records.[13] The records that predate April 7, 2014 merely establish that ATF approved the import of the Fabryka, not that such handgun was, in fact, "imported," contrary to ATF's claim. AR 88; see also, AR 60-69, 85-87. ATF's finding on April 7, 2014 that 7N6 could be used in a "commercially available handgun" is not based upon reliable evidence, so its classification of

---

[11] The availability of a handgun constitutes the second prong of the 'armor piercing ammunition.'

[12] Inconsistently, ATF claims that "there are multiple firearms commercially available that may chamber [7N6]" and yet then claims that "commercially available" is an abstract term that does not apply. Dkt. # 24, pp. 11, 16.

[13] The record contains eight undated pages regarding handguns. These documents should not be considered by the Court since it is not clear whether ATF considered this information before its decision. *See* AR 51-59.

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington 98101-4124
(206) 233-2800  Fax (206) 233-2809

7N6 as 'armor piercing' is a clear error of judgment. *See First Girl, Inc.*, 499 F.2d at 124.

###   c.   Administrative record supports the conclusion that 7N6 contains lead in its "center and innermost foundation"

ATF submits that "[c]ore, undefined by the statute, is defined in the dictionary as 'a central and foundational part usually distinct from the enveloping part by a different nature.'" Dkt. # 24, p. 13. Fitting within this definition, 7N6's core, its foundational part containing lead and steel, is enveloped by a jacket, a different nature. ATF's administrative record (AR 43-44) contains factual inaccuracies. *See* Dkt. # 24, pp. 10, 14. The steel piece of 7N6 is not "encapsulated" or surrounded by lead; lead makes up a "solid piece" of 7N6. AR 16. The 7N6 diagram makes this visually obvious. *See* AR 17.

7N6 has a full metal jacket, which is the outermost part of 7N6, and the jacket surrounds or envelops its "central" or "middle part," which is how ATF additionally describes "core." Dkt. # 24, p. 13. The "central" or "middle part" of 7N6 includes lead. *See* AR 17. 7N6's lead piece is encapsulated separately by the jacket to the same extent as the steel piece. AR 16, 22.

Additionally, the only conclusion based upon the administrative record is that "the center and innermost foundation" of 7N6 is constructed partially from lead:



Figure 1. Materials within the 7mm 1 bullet

The diagram speaks for itself.[14] AR 17. The above line drawn down the center and innermost part of the 7N6 has been added by counsel for demonstrative purposes. The original, unedited

---

[14] ATF cannot claim that a spot in which the steel piece is located is "the center and innermost" because that is impossible given the shape of ammunition.

diagram can be found at p. 9 above and AR 17. Even under ATF's new interpretation, 7N6 cannot be 'armor piercing' because its "center and innermost" part contains lead. ATF's classification is arbitrary and capricious, as it runs counter to the administrative record. *See Nw. Envt'l Defense Ctr. V. Bonneville Power Admin.*, 477 F.3d 668, 687 (9th Cir. 2007) ("An agency decision is arbitrary and capricious 'if the agency . . . offered an explanation for its decision that runs counter to the evidence before the agency").

### VI.    PWA's Response to ATF's Premature Cross-Motion for Partial Summary Judgment

The gravamen of PWA's APA claim is that ATF unlawfully interpreted 18 U.S.C. § 921(a)(17)(B)(i) to reclassify 7N6 as 'armor piercing.' But PWA does not abandon its other APA claims despite ATF's assertion otherwise. PWA addresses these arguments below.

### a.    ATF's cross-motion for summary judgment under the APA should be denied because administrative record is both incomplete and over-inclusive

Procedurally, ATF's cross-motion for partial summary judgment should be denied as premature because the administrative record is incomplete.[15] Judicial review of agency action is limited to the record on which the administrative decision was based. *See Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989). "The whole administrative record, however, is not necessarily those documents that the agency has compiled and submitted as 'the' administrative record. The 'whole' administrative record, therefore, consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Id* (internal quotations omitted).

Material outside the administrative record is allowed in limited circumstances: (1) if

---

[15] This Court may rule on PWA's APA motion for summary judgment on the administrative record before it; ATF cannot similarly claim lack of a complete administrative record.

P.W. ARMS, INC.'S REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT UNDER APA - 19

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington 98101-4124
(206) 233-2800  Fax (206) 233-2809

necessary to determine whether the agency has considered all relevant factors and has explained

its decision, (2) when the agency has (directly or indirectly) relied on documents not in the

record, (3) when supplementing the record is necessary to explain technical terms or complex

subject matter, (4) or when plaintiffs make a showing of agency bad faith. *See Sw. Ctr. For*

*Biological Diversity*, 100 F.3d at 1450.  Based on these factors, ATF submitted an incomplete

administrative record that should be supplemented, at least, with the following:

(1)   PWA provides two pages of an unknown book describing 7N6. *See* AR 45-46. The administrative record should include the entire book. ATF indirectly relied on this entire book, and PWA is entitled to review the composition of other ammunition and compare those to ATF's other classifications of 'armor piercing ammunition' to determine if ATF acted in accordance with the APA in this case;

(2)   A January 28, 2014 email that is partially produced in administrative record. AR 113. This email is obstructed, but the subject line is clear, "Importer Stacy Prineas (PW Arms)." A legible and complete copy of this email should be part of the administrative record, as it was obviously considered by ATF when it was partially produced as part of the administrative record;

(3)   An April 7, 2014 email from Griffith produced as part of ATF's belated FOIA production should have been included in the administrative record. *See* Exhibit 2 attached to Brennan Decl. at ¶3. This is email documents the actual reason for ATF's seizure of PWA's ammunition -- an informant's tip (which had been proven false by the date ATF stopped PWA's ammunition). The information in this email indicates that ATF was less than fulsome in its purported reason for stopping PWA's ammunition: "SA Mike Scott was called by customs from the Norfolk Port referring a shipment of suspected APA." AR 143. No informant is mentioned anywhere in the administrative record. ATF unquestionably relied on this informant's tip, so this email, and its related communications, should be part of the administrative record; and

(4)   The October 31, 1986 letter by ATF Deputy Director William Drake describes ammunition similar to 7N6 as having a 'projectile core' containing both steel and lead. This letter directly relates to a document submitted by ATF in support of its cross-motion under the APA. *See* Dkt. # 25-3. By filing this, ATF constructively supplemented the administrative record, so the administrative record should include this related letter, upon which ATF at least indirectly relied.

Further, ATF has yet to produce a *Vaughn* index for its FOIA production. PWA requires

the *Vaughn* index to assess the completeness of the FOIA production and administrative record

P.W. ARMS, INC.'S REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT UNDER APA - 20

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

relating to its APA claim. PWA is entitled to review the complete administrative record in formulating a response, so ATF's APA motion for summary judgment is premature.

Additionally, ATF submitted 107 pages in the administrative record that ATF created on or after April 7, 2014, the date ATF classified 7N6 as 'armor piercing.' *See* AR 108 - 215. These materials were improperly included as part of the administrative record, and this Court should not consider these in support of ATF's arguments.[16] *See Sw. Ctr. for Biological Diversity*, 100 F.3d at 1450.

### b.   ATF cannot unlawfully revoke permits

ATF claims that its actions did not violate due process and references 27 C.F.R. § 447.44(a) as a basis for suggesting it is afforded broad authority to revoke permits without notice. *See* Dkt. # 24, p. 20, n. 10. The regulation notes that "[i]mport permits under this subpart may be denied, revoked, suspended or revised without prior notice whenever the appropriate ATF officer finds the proposed importation to be inconsistent with the purpose or in violation of section 38, Arms Export Control Act of 1976 or the regulations in this part." 27 C.F.R. § 447.44(a). Indeed, Congress delegated such authority to ATF via the Department of the Treasury, but this regulatory power does not mean ATF has discretion to unlawfully interpret 18 U.S.C. ¶ 921(a)(17)(B)(i). As a result, PWA is entitled to summary judgment on this issue.

### c.   ATF exceeded its statutory authority

ATF acted in excess of its statutory authority when it classified 7N6 as 'armor piercing' under its unlawful interpretation of 18 U.S.C. § 921(a)(17)(B)(i). ATF is prohibited from interpreting statutes in contradiction to a statute's plain language or arbitrarily or capriciously.

---

[16] PWA is entitled to rely on all materials in the administrative record. The material does not support ATF's decision to classify 7N6 as 'armor piercing,' but it does show that ATF considered factors that Congress did not intend and otherwise establishes its impermissible statutory interpretation and arbitrary and capricious action.

P.W. ARMS, INC.'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT UNDER APA - 21

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington 98101-4124
(206) 233-2800  Fax (206) 233-2809

*See* 5 U.S.C. § 706(2)(A), (C). PWA does not contend that ATF has no authority to regulate firearms or that Congress did not delegate such authority to ATF, but ATF cannot interpret a statute inconsistent with its plain language. As mentioned above, PWA is entitled to summary judgment under this analysis.

### d.   ATF was required by law to provide a notice and comment period

"Under the APA, a federal administrative agency is required to follow prescribed notice-and-comment procedures before promulgating substantive rules." *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1124 (9th Cir. 2009). "The definition of a substantive rule is 'broad' and includes action that is 'legislative in nature, is primarily concerned with policy considerations for the future rather than the evaluation of past conduct, and looks not to the evidentiary facts but to policy-making conclusions to be drawn from the facts.'" *Coal. For Common Sense in Gov't Procurement v. Sec'y of Veterans Affairs*, 464 F.3d 1306, 1317 (Fed. Cir. 2006) (quotation omitted). "[A]n interpretative statement simply indicates an agency's reading of a statute or a rule. It does not intend to create new rights or duties, but only reminds affected parties of existing duties." *Orengo Caraballo v. Reich*, 11 F.3d 186, 195 (D.C. Cir. 1993) (internal quotes omitted). In contrast, "'substantive rules' [are] those that effect a change in existing law or policy or which affect individual rights and obligations." *Paralyzed Veterans of Am. V. West*, 138 F.3d 1434, 1436 (Fed. Cir. 1998).

ATF's implementation of the "commercially available" standard and its revised application of the statutory language defining 'armor piercing' in its April 7, 2014 Special Advisory (*see* AR 37) constituted rulemaking requiring notice and comment period. In *Target Corp. v. U.S.*, 609 F.3d 1352 (Fed. Cir. 2010), the plaintiff challenged the Department of Commerce's (DOC's) implementation of antidumping provisions within the Tariff Act of 1930.

P.W. ARMS, INC.'S REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT UNDER APA - 22

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

*Id.* At 1360.  In order to determine whether "later-developed merchandise" fell into the scope of the antidumping provisions, DOC reasoned that it was appropriate to inquire whether Target merchandise was "commercially available" at the time a relevant antidumping order issues.  *Id.* at 1357.  Pursuant to its duties under the APA, DOC had provided notice and comment periods for the development and application of the "commercially available" standard.  *See Later-Developed Merchandise Anticircumvention Inquiry of the Antidumping Duty Order on Petroleum Wax Candles from the People's Republic of China: Affirmative Preliminary Determination of Circumvention of the Antidumping Duty Order*, 71 FR 32033-01, 2006 WL 1500744 (June 2, 2006).

Additionally, ATF's deviation from its decades-old determination that 7N6 was not 'armor piercing' "create[d] new . . . duties" (and took away old rights) relating to the possession and importation of 7N6, which went far beyond merely "remind[ing] affected parties of existing duties." *Orengo*, 11 F.3d at 195 (quotation omitted).  The decision to criminalize possession and prohibit import of this popular sporting ammunition, with no advanced notice to the public or market, underscores the necessity for a notice and comment period.

ATF engaged in substantive rulemaking when it classified 7N6 as 'armor piercing' under an impermissible definition of 'projectile core' and under a 'commercially available' handgun standard.  ATF's failure to provide a notice and comment period violated the APA.  Hence, PWA is entitled to summary judgment on this APA argument due to ATF's failure to follow the law.

## VII.   Conclusion

7N6 contains a 'projectile core' constructed partially from lead so does not satisfy the statutory definition of 'armor piercing ammunition.'  PWA is entitled to summary judgment

P.W. ARMS, INC.'S REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT UNDER APA - 23

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

establishing its APA claim because, as a matter of law established by the administrative record, ATF's classification of 7N6 as 'armor piercing' under 18 U.S.C. § 921(a)(17)(B)(i), either under its previous interpretation or its new one, is unlawful under the statute's plain language and contrary to clear Congressional intent, or at least, arbitrary and capricious. PWA seeks an Order granting PWA summary judgment on its APA claim and setting aside ATF's classification of 7N6 as 'armor piercing.' PWA desires to lawfully import, sell and distribute 7N6 in the United States. The Court should deny ATF's cross-motion.

DATED May 6, 2016.

McKAY CHADWELL, PLLC

By s/ Robert G. Chadwell
By s/ Patrick J. Preston
By s/ Thomas M. Brennan
Robert G. Chadwell, WSBA No. 22683
Patrick J. Preston, WSBA No. 24361
Thomas M. Brennan, WSBA No. 30662
Attorneys for Plaintiff P.W. Arms, Inc.
600 University Street, Suite 1601
Seattle, WA 98101-4124
Phone: (206) 233-2800
Fax:   (206) 233-2809
Email: rgc1@mckay-chadwell.com
        pjp@mckay-chadwell.com
        tmb@mckay-chadwell.com

P.W. ARMS, INC.'S REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT UNDER APA - 24

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington 98101-4124
(206) 233-2800  Fax (206) 233-2809