THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| P.W. ARMS, INC., a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA and the BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, a Federal Agency,<br><br>Defendants. | No. 2:15-cv-01990 JCC<br><br>**DECLARATION OF THOMAS M. BRENNAN IN SUPPORT OF PWA'S APA REPLY BRIEF** |

I, Thomas M. Brennan, declare as follows:

1. I am a member in the law firm McKay Chadwell, PLLC and counsel for P.W. Arms, Inc. in this case.

2. I have attached as Exhibit 1 a true and correct copy of a letter obtained on the internet that purports to be an October 31, 1986 letter drafted by ATF Deputy Director William Drake at that time. The letter was located at the following website address: https://princelaw.files.wordpress.com/2015/03/m855-ss109-determination-letter_page_2-2.jpg.

3. I have attached as Exhibit 2 a true and correct copy of an April 7, 2014 internal

ATF email sent to E. Griffith. The author's name has been redacted by ATF. It is understood that E. Griffith was an ATF employee on the date that the email was created. The email was produced by ATF as part of a response to a request made by P.W. Arms, Inc. under the Freedom of Information Act.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 6, 2016 in Seattle, Washington.

*/s/ Thomas M. Brennan*

Thomas M. Brennan

# Exhibit 1



DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
WASHINGTON, D.C. 20226

OCT 31 1986

LE:F:TE:EMO

Dear Mr. ▓▓▓▓:

This refers to your letter of October 23, 1986, in which you asked about 5.56mm (.223) caliber SS109 and M855 ball ammunition with respect to the recently enacted legislation restricting the manufacture, importation and sale of armor piercing ammunition.

Section 921(a)(17)(B), Chapter 44, Title 18, U.S.C. defines armor piercing ammunition as:

> The term armor piercing ammunition means a projectile or projectile core which may be used in a handgun and which is constructed entirely (excluding the presence of traces of other substances) from one or a combination of tungsten alloys, steel, iron, brass, bronze, beryllium copper, or depleted uranium. Such term does not include shotgun shot required by federal or state environmental or game regulations for hunting purposes, a frangible projectile designed for target shooting, a projectile which the Secretary finds is primarily intended to be used for sporting purposes, or any other projectile or projectile core which the Secretary finds is intended to be used for industrial purposes, including a charge used in an oil and gas well perforating device.

Examination of the SS109 (M855 Ball) ammunition indicates that the projectile is constructed using a full metal jacket and projectile cores constructed of a steel penetrator located forward of a lead core. Based on its construction, the SS109/M855 projectile meets the above definition of armor piercing ammunition.

-2-

Mr. ███████████

However, our examination also indicates that SS109/M855 ammunition will be the official U.S. military 5.56mm ammunition for use in service rifles. The cartridge was designed to have increased accuracy and range over the previous M193 ball cartridge. Additionally, major U.S. manufacturers of sporting 5.56mm rifles have begun producing their 5.56mm rifle barrels with a one in seven inch twist specifically for the SS109/M855 cartridge. This cartridge is to be the standard 5.56mm rifle cartridge for use in military and civilian rifle match competition. It was also noted that of the few handguns which are produced for the 5.56mm cartridge, the majority are specialized long range competition weapons.

Therefore, the Bureau of Alcohol, Tobacco and Firearms feels that the SS109/M855 ball ammunition in caliber 5.56mm is primarily intended for sporting purposes and is not subject to the restrictions imposed on the manufacture, importation, or distribution of armor piercing ammunition.

Please be advised that should unforeseen problems develop or if the design or construction of the projectile is changed, this classification is subject to review.

We trust that the foregoing has been responsive to your inquiry. If we can be of any further assistance, please contact us.

Sincerely yours,

William T. Drake
Deputy Director

# Exhibit 2

▇▇ (b)(6) ▇▇

**From:** ▇▇ (b)(6), (b)(7)(C) ▇▇
**Sent:** Monday, April 07, 2014 4:51 PM
**To:** Griffith, Earl L.
**Cc:** ▇▇ (b)(6), (b)(7)(C) ▇▇
**Subject:** PW ARMS
**Attachments:** ROI 1.doc; ROI 2.doc; Metallurgy lab report.pdf

Earl,
I received information regarding possible illegal activity involving PW ARMS on January 28, 2014. The information relayed to the WFD was that PW ARMS was attempting to have APA imported in through BC, Canada. Also, PW ARMS purchased M-1 Garand rifles in S. Korea, these rifles were previously exported from the US. On 2/18/14, SA▇▇and I went and inspected a shipment of rifles (not M-1 Garands) and found that the rifles were not illegal and matched the ATF form 6. This shipment proceeded without any issues. On this same day (2/18/2014) I learned that PW ARMS had a shipment of ammunition that was coming in and advised US Customs that ATF would like to inspect the shipment. On 2/25/14, SA▇▇and I inspected the shipment of ammunition (5.45x39mm) and found that the ammunition possible had a steel core. SA▇▇reached out to FTB on 2/25/14 to inquire about the ammunition. This investigation led to the discovery of a 5.45x39mm handgun that had been previously imported into the US in 2011. I sent a sample of the ammunition to FTB as well as the FBI Lab to have a Metallurgy test conducted. See attached report for results. Overall, I found that the ammunition would meet the definition of APA.

Please let me know if you have any further questions. ▇▇(b)(6),(b)(7)(C)▇▇