THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PW ARMS, INC.,

               Plaintiff,

    v.

UNITED STATES OF AMERICA and
THE BUREAU OF ALCOHOL,
TOBACCO, FIREARMS, AND
EXPLOSIVES,

              Defendants.

CASE NO. C15-1990-JCC

ORDER GRANTING
DEFENDANTS' PARTIAL MOTION
TO DISMISS

      This matter comes before the Court on Defendants' Partial Motion to Dismiss (Dkt. No. 10), Plaintiff's Opposition (Dkt. No. 15), Defendants' Reply (Dkt. No. 19), and Plaintiff's Surreply (Dkt. No. 21). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

## I.    BACKGROUND

      Plaintiff, a Washington corporation that distributes ammunition and firearms wholesale, brings suit against the United States and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). (Dkt. No. 1.) Plaintiff's suit arises out of its having sought and received permits to import 50 million rounds of banned, "armor piercing" ammunition from Germany. (*Id.* at 9.) The ammunition in question, 7N6 5.45x39 mm, was designed and introduced by the Soviet

Union in the 1970s for military use in the AK-74 assault rifle. (*Id.* at 8.) Upon discovery that the bullets contain a steel core and could be used in a commercially-available handgun, the ATF classified them as "armor piercing" and therefore banned under the Gun Control Act, 18 U.S.C. § 921(a)(17)(B)(i). (*Id.* at 11.)

Under permits issued between February 2013 and February 2014, Nos. 13-00760, 13-01216, and 14-00996, Plaintiff imported over 37 million rounds of such ammunition for resale in the United States. (*Id.* at 9–10.) In this process, from May 2013 to early 2014, Plaintiff incurred numerous associated costs, including packaging, shipping, marine loading and sea freight, and customs broker expenses. (*Id.* at 10.) On February 17, 2014, two containers of the ammunition arrived in Norfolk, Virginia and were stopped by Customs and Border Protection agents. (*Id.* at 11.) Permit No. 14-00996, authorizing the importation of an additional 50 million rounds of the 7N6 5.45x39 mm ammunition, was approved on February 21, 2014. (*Id.*) On March 11, 2014, ATF notified Plaintiff that the ammunition was classified as armor piercing and could not be imported. (*Id.*) Plaintiff then put a hold on the remaining importation of its order and has since incurred additional expenses storing remaining ammunition in Hamburg, Germany and in a Free Trade Zone facility in Reno, Nevada. (*Id.*) On April 7, 2014, the ATF issued a special advisory "reclassifying 7N6 5.45x39 mm ammunition as armor piercing and illegal . . ." (*Id.* at 12–13.)

Plaintiff sues, alleging that the ATF's "reclassification" of the 5.45x39 mm ammunition was "arbitrary and capricious" under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* (Dkt. No. 1 at 17–19.) Additionally, Plaintiff brings a claim under the Federal Tort Claims Act, ("FTCA"), alleging that the United States failed to exercise ordinary care in reviewing and approving Plaintiff's ammunition import permits. (*Id.* at 19.) Plaintiff alleges that the United States already knew that the ammunition in question was "armor piercing" but instead "rubber stamped" Plaintiff's permit applications and "neglected to ask if the ammunition was lead core or steel core." (*Id.* at 20.) Plaintiff also brings a FOIA claim against the ATF, though the ATF asserts it is in the process of producing documents in response. (*Id.* at 21–22; Dkt. No. 10 at 2.)

Defendants move to dismiss Plaintiff's FTCA claim only, arguing that this Court lacks jurisdiction over the claim because (1) there is no private analogue for the tort alleged and so the FTCA does not waive sovereign immunity in such circumstances, (2) the "discretionary function" exception to the FTCA applies, (3) the claim relates to the "detention of goods" and is thus not covered by the FTCA, and/or (4) the claim arises out of the interference with contractual rights and is thus exempt from the FTCA. (Dkt. No. 10; *see also* 28 U.S.C. § 2680(a), (c), and (h).)

Attached to their motion, Defendants include the Declaration of William E. Majors, the Chief of the ATF's Firearms & Explosives Import Branch. (Dkt. No. 11.) In it, Mr. Majors explains the ATF procedures for reviewing and issuing importation permits, which begins by submitting what is known as a "Form 6" application. (*Id.* at 2; *see also* 27 C.F.R. § 447.41(a).) Among other things, the Form 6 requires applicants to give a description of the item to be imported including whether it is "AP" or "armor piercing." (Dkt. No. 11 at 3, 12.) Plaintiff's application did not disclose that the 5.45x39 mm ammunition was armor piercing. (*See* Dkt. No. 1.) Mr. Majors describes the process by which Form 6 applications are received and reviewed. First, the form is reviewed by a Deputy Project Manager and checked for completeness and accuracy. (Dkt. No. 11 at 34.) If necessary information has been omitted, or it is otherwise deemed appropriate, an application may be referred to an ATF Specialist. (*Id.* at 35.) Depending on the nature of Specialist review, if any, the form is then referred to an Examiner for review and to make a determination whether to grant or deny the application. (*Id.* at 4, 36–37.) "There are no set rules in the Procedures for the Examiner's review and decision on whether to grant or deny the application. In general, however, examiners review the form 6 applications in order to determine if the requested items are importable . . . [they] review the information provided, research the items to be imported, and review applicable laws and regulations in order to determine whether the items are importable." (*Id.* at 4.) Once conditionally approved, permits may be revoked at any time. 27 C.F.R. § 447.44;

1   The Court finds that Plaintiff may not proceed under the FTCA because there is both no

2   private analogue for the importation of goods into the United States, and because the ATF's

3   permit review process constitutes a "discretionary function" of the Government. In other words,

4   both facial and factual challenges to Plaintiff's standing to bring a claim under the FTCA have

5   merit. Accordingly, Defendants' Partial Motion to Dismiss (Dkt. No. 10) is GRANTED.

6   **II.   DISCUSSION**

7       **A.   Standard of Review**

8   Under Fed. R. Civ. P. 12(b)(1), a complaint must be dismissed if the court lacks subject

9   matter jurisdiction. Jurisdiction is a threshold separation of powers issue, and may not be

10   deferred until trial. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

11   A motion to dismiss under Rule 12(b)(1) for lack of jurisdiction may be facial or factual;

12   Defendants bring both. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In facially

13   attacking a complaint for lack of subject matter jurisdiction, the defendant asserts that the

14   allegations are insufficient on their face to confer federal jurisdiction. In reviewing a facial

15   attack, the court assumes all materials allegations in the complaint are true. *Thornhill Publ'g Co.*

16   *v. General Tel. Elec.*, 594 F.2d 730, 733 (9th Cir. 1979). Defendants also bring a factual

17   challenge to subject matter jurisdiction in arguing that the government action challenged here

18   constitutes a discretionary function of the ATF immune from FTCA liability. In reviewing a

19   factual challenge, the Court may consider materials beyond the complaint. *Savage v. Glendale*

20   *Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003).

21   Plaintiff argues, both in response and surreply, that the Declaration of William E. Majors

22   may not be considered based on relevance and a separation of powers issue. (Dkt. No. 15 at 11;

23   Dkt. No. 21 at 2.) The Court is not persuaded by Plaintiff's assertion. Upon consideration of

24   Defendants' factual challenges based on the applicability of the "discretionary function"

25   exception to the FTCA, the Court reviews the evidence provided. Plaintiff's weak separation of

26   powers argument essentially goes to the question of whether the ATF had discretion to authorize

1    import permits for the ammunition in question, *not* to whether the Court may consider the

2    statements in the Majors declaration. (Dkt. No. 15 at 11.) The Court considers the contents of the

3    Majors declaration in assessing the factual question of standing under Rule 12(b)(1).

4       **C.    Relevant Administrative and Statutory Framework**

5       The amended Gun Control Act prohibits the importation, manufacture, or distribution of

6    "armor piercing ammunition." 18 U.S.C. § 921(a)(17)(B). The Law Enforcement Officers

7    Protection Act of 1986 ("LEOPA") originally defined armor piercing definition, and was

8    intended to ban "bullets capable of penetrating body armor and designed to be fired from a

9    handgun." Armor-Piercing Ammunition: Hearings Before the Subcommittee on Criminal Law,

10   Senate Judiciary Committee, 98th Cong., 2nd Sess., 8 (1985). Armor piercing ammunition is

11   defined as:

12       (i) a projectile or projectile core which may be used in a handgun and which is
13       constructed entirely (excluding the presence of traces of other substances) from
         one or a combination of tungsten alloys, steel, iron, brass, bronze, beryllium
14       copper, or depleted uranium; or

15       (ii) a full jacketed projectile larger than .22 caliber designed and intended for use
16       in a handgun and whose jacket has a weight of more than 25 percent of the total
         weight of the projectile.

17       18 U.S.C. § 921(a)(17)(B).

18       The Gun Control Act imposes licensing requirements on all persons or entities that

19   manufacture, import, or sell firearms and ammunition. 18 U.S.C. § 923. The ATF has rule-

20   making authority, under the Attorney General, with respect to the classification of ammunition.

21   18 U.S.C. § 926; 28 C.F.R. § 0.130(a)(1).

22       **D.    The Federal Tort Claims Act**

23       The FTCA provides that the "United States shall be liable . . . to tort claims in the same

24   manner and to the same extent as a private individual under like circumstances." 28 U.S.C.

25   § 2674. The "broad and just purpose" of the FTCA, which is "to compensate the victims of

26   negligence in the conduct of governmental activities in circumstances like unto those in which a

ORDER GRANTING DEFENDANTS' PARTIAL
MOTION TO DISMISS
PAGE - 5

1   private person would be liable," extends to certain negligence claims where a government entity

2   fails to exercise due care. *Indian Towing Co. v. United States*, 350 U.S. 61, 68–69, (1955).

3       **1.      Lack of Private Analogue**

4       However, "the FTCA applies only if state law would impose liability on private persons

5   under similar circumstances." *Woodbridge Plaza v. Bank of Irvine*, 815 F.2d 538, 543 (9th Cir.

6   1987). While this private analogue need not be exact, there must be some persuasive analogy to

7   show that the government actor sued would be subject to liability under state law if it were a

8   private actor. *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992). "Because

9   the federal government could never be exactly like a private actor, a court's job in applying the

10  standard is to find the most reasonable analogy." *LaBarge v. Mariposa Cty.*, 798 F.2d 364, 367

11  (9th Cir. 1986).

12      Defendants argue that this action should be dismissed as there is no reasonable private

13  analogue to the government action challenged: restricting and permitting various imports into the

14  United States. (Dkt. No. 10 at 10.) The U.S. Constitution establishes that the federal government

15  has exclusive control over restricting imports into the country. U.S. CONST. Art. I, § 8. And, as

16  the parties discuss, a similar case before the U.S. District Court for the District of Columbia

17  addressed a factually-similar case against the ATF and found dismissal warranted for lack of a

18  private analogue. *Appleton v. United States*, 180 F. Supp. 2d 177, 184–86 (D.D.C. 2002)

19  ("*Appleton IV*"). In *Appleton IV*, the plaintiff sued the ATF for negligence in its review and

20  approval of import applications for ammunition. *Id.* at 184. "Reviewing applications for the

21  purpose of determining whether the applicant is authorized to import ammunition is exclusively

22  a governmental function governed by federal regulations administered by [the] ATF without any

23  private counterpart. If there is no local law that imposes liability for negligent review of

24  applications to import goods into the United States, then the government cannot be held legally

25  responsible for the acts of its 'negligent' employees." *Id.* at 185.

26      Plaintiff argues that it brings its FTCA claim under a general negligence theory to which

ORDER GRANTING DEFENDANTS' PARTIAL
MOTION TO DISMISS
PAGE - 6

1   there is a private analogue, and that requiring "an exact tort analog" would "read the FTCA out

2   of existence." (Dkt. No. 15 at 5.) In so arguing, Plaintiff cites to a precursor to *Appleton IV*.

3   *Appleton v. United States*, 69 F. Supp. 2d 83 (D.D.C. 1999). This is unpersuasive. As Defendants

4   point out, to read the earlier *Appleton* case cited by Plaintiff as somehow contradicting the

5   reasoning of the D.C. District Court in its final decision in that case is illogical. Moreover, while

6   none of the *Appleton* decisions are binding, *Appleton IV* is the more persuasive authority, and

7   cites to Ninth Circuit law holding that "[t]o bring suit under the FTCA based on negligence per

8   se, a duty must be identified, and this duty cannot spring from a federal law. The duty must arise

9   from a state statutory or decisional law, and must impose on the defendants a duty to refrain from

10  committing the sort of wrong alleged." *Appleton IV*, 177 F. Supp. 2d at 185 (citing *Delta Savings*

11  *Bank v. United States*, 265 F.3d 1017, 1026 (9th Cir. 2001)).

12          In other words, rather than simply asserting that ATF owed Plaintiff a duty, Plaintiff is

13  required to demonstrate that a similar situation, under state law, would confer an analogous duty.

14  As Defendants correctly discuss, *Block v. Neal* does not represent the approval of a "simple

15  negligence" theory under the FTCA. 460 U.S. 289 (1983) (*see also* Dkt. No. 15 at 7; 19 at 4.) In

16  fact, the Court specifically pointed out that its review did *not* reach a negligence claim: "we need

17  not decide precisely what [Plaintiff] must prove in order to prevail on her negligence claim, nor

18  even whether such a claim lies." *Id.* at 294.

19          The government action challenged by Plaintiff does not have a reasonable private

20  analogue such that the United States may be held liable under the FTCA. Accordingly, the Court

21  lacks jurisdiction to hear Plaintiff's FTCA claim.

22          **2.      Discretionary Function Exception**

23          The discretionary function exception to FTCA liability provides an additional basis for

24  granting Defendants' motion. The FTCA is subject to several exceptions. One such exception is

25  for the "discretionary functions" of government employees. 28 U.S.C. § 2680(a).

26          Historically, it has been difficult for courts to delineate exactly where a government

ORDER GRANTING DEFENDANTS' PARTIAL
MOTION TO DISMISS
PAGE - 7

function enters the territory of a "discretionary function." In *Dalehite v. United States*, 346 U.S. 15 (1953), the U.S. Supreme Court held that the Government, though negligent, was not liable for its role in a deadly cargo ship explosion. *Id.* at 42. The Court reasoned that, "the decisions held culpable were all responsibly made at a planning rather than operational level." *Id.* This distinction between operation and planning was reiterated in *Indian Towing Co. v. United States*, in which the Court held that the Coast Guard's negligent maintenance of a lighthouse was actionable because, rather than representing a policy decision, the Government was being sued for negligence in the performance of its duty. 350 U.S. 61, 69 (1955). The Court has, more recently, identified a handful of factors with respect to the discretionary function exception. First, "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 813 (1984). Second, the discretionary function exception is "intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals." *Id.* The Court emphasized the legislative history's repetition of regulatory agencies as examples of those covered by the exception, and Congress's intent to prevent judicial review of policy decisions. *Id.* at 814. In *Berkovitz v. United States*, the Court held that an FTCA suit could not proceed against the Government related to the inspection and approval of polio vaccines, stating that "conduct cannot be discretionary unless it involves an element of judgment or choice." 486 U.S. 531, 536 (1988). And in *United States v. Gaubert*, the Court held that federal regulators could not stand suit under the FTCA for negligent supervision, asserting, "[d]ay-to-day management of banking affairs . . . regularly requires judgment as to which of a range of permissible courses is the wisest. Discretionary conduct is not confined to the policy or planning level." 499 U.S. 315, 325 (1991).

In following Supreme Court precedent, Courts generally use a two-step analysis to determine whether an action is "discretionary" for the purposes of the FTCA. First, a court must determine whether the challenged action involves "an element of judgment or choice." *Berkovitz*,

486 U.S. at 536. If a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," the action is not considered discretionary because the government employee "has no rightful option but to adhere to the directive." *Id.* Second, if the action does involve an element of choice, the court must assess whether the choice involved "is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322–23. This second step, essentially, means that if the decision involves "considerations of social, economic, or political policy, the exception applies." *In re Glacier Bay*, 71 F.3d 1147, 1450 (9th Cir. 1995).

Here, the process of reviewing, approving, and revoking an importation permit is subject to considerable discretion by Government employees. While the ATF has general written procedures describing the various employees who review Form 6 applications, it is clear that these procedures are not formulaic or devoid of choice. Reviewing employees may, or may not seek additional information while reading an application. Reviewing employees may, or may not involve specialists from within the ATF. And even when a permit is approved, the ATF permit may be revoked at any time, including upon inspection after the imported goods arrive in the United States. In short, the Court is satisfied that the first step of the "discretionary function" analysis is met.

Second, the discretion afforded to ATF employees in reviewing importation permits involves social, economic, and political policy. Regulatory functions, such as permitting and inspecting incoming shipments of ammunition, are precisely the type of government actions intended to fall under the discretionary function exception. *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 814 (1984).

Plaintiff argues that the statute banning armor piercing ammunition, 18 U.S.C. § 921(a)(17)(B)(i) creates a Government mandate that is not discretionary. (Dkt. No. 15 at 11.) This argument, however, misses the mark. Plaintiff's FTCA claim is not based so squarely on the statute banning armor piercing ammunition, but rather on allegations of negligence by the ATF

1 | in the process of approving and subsequently revoking its import permit. (*See* Dkt. No. 1 at 9–
2 | 13.) While Plaintiff correctly asserts that the Gun Control Act forbids the importation of armor
3 | piercing ammunition, it does not prescribe a course of action specifically for employees of the
4 | ATF; rather, the ATF has set up structures and processes—subject to discretion—to regulate the
5 | importation and distribution of firearms and ammunition. In short, the negligence asserted by
6 | Plaintiff on the part of ATF deals with precisely the sort of discretionary government action that
7 | may not give rise to a case under the FTCA.

8 | **III.   CONCLUSION**

9 |      Defendants validly bring both a facial and factual challenge to Plaintiff's standing under
10 | Rule 12(b)(1). For the foregoing reasons, Defendants' partial motion to dismiss (Dkt. No. 10) is
11 | GRANTED. Plaintiff's FTCA claim against Defendants is hereby dismissed with prejudice.
12 |      DATED this 12th day of May 2016.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER GRANTING DEFENDANTS' PARTIAL
MOTION TO DISMISS
PAGE - 10