Judge John C. Coughenour

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| P.W. ARMS, INC., a Washington corporation,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA and the BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, a Federal Agency,<br><br>　　　　　　　Defendants. | CASE NO. 15-cv-01990<br><br>DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Noted for Consideration on:<br>May 20, 2016 |

DEFENDANTS' REPLY IN SUPPORT OF
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## I.      INTRODUCTION

The Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") and the United States (collectively, "Defendants") request that this Court grant summary judgment against Plaintiff's Administrative Procedure Act ("APA") claim.[1]  Plaintiff's Reply Brief (Dkt. 26, "Reply") sets forth many arguments, however the answers to the pertinent legal and factual questions remain the same. ATF's actions were neither arbitrary nor capricious because they gave effect to the intent of Congress as expressed in the Gun Control Act ("GCA"), 18 U.S.C. 921(a)(17)(B)(i), and are otherwise supported by the facts and evidence before ATF.  *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).  To the extent the provisions of the GCA are considered ambiguous on the question at issue, ATF's interpretation still withstands review as a "permissible construction" under *Chevron*, or is "persuasive" and thus due "respect" under *Skidmore*.  *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 24 (1944).  Furthermore, Plaintiff's arguments regarding the administrative record are both legally and factually incorrect and, in any event, do not form a barrier to summary judgment against Plaintiff's claims.  Likewise, Plaintiff does not present sufficient arguments in defense of its alternative theories for its APA claim that (1) ATF's actions violated due process; (2) ATF's actions were outside of statutory or commerce clause authority; and (3) ATF's actions required notice and comment. Summary judgment should be granted against these alternative theories as well.

## II.      ARGUMENT

### A. Plaintiff's Complaints Regarding the Administrative Record Do Not Bar Summary Judgment on the APA Claim.

Plaintiff argues, for the first time in response to Defendants' Cross-Motion for Partial Summary Judgment ("Cross-Motion"), that the administrative record is both incomplete and over

---

[1] ATF made its FOIA disclosure on March 31, 2016.  On May 10, 2016 Defendants provided Plaintiff's counsel with a draft *Vaughn* index in order to identify withholdings to which Plaintiff did not object, and thus decrease the number of issues to put before the Court.  During the course of creating the *Vaughn* index, the undersigned made additional inquiries to ATF, which will result in a small supplemental production.  Defendants will file their motion on the FOIA claim once this supplemental production is made.

DEFENDANTS' REPLY IN SUPPORT OF
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 1
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

inclusive.[2] Plaintiff's argument focuses on case law relating to whether this Court may consider documents *outside* of the administrative record, not on case law regarding whether and when an administrative record is incomplete or overinclusive. *See* Reply at 19-20 (citing *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996)); *see also Oceana, Inc. v. Locke*, 674 F.Supp.2d 39, 44 (D.D.C. 2009) (noting frequent confusion between supplementing record and considering items outside of the record).

There is a "presumption of regularity" as to administrative actions. *Kohli v. Gonzales*, 473 F.3d 1061, 1068 (9th Cir.2007) (applying a presumption of regularity regarding the official acts of public officers). This presumption applies to the records of judicial proceedings. *Ybarra v. United States*, 461 F.2d 1195, 1200 n. 1 (9th Cir. 1972). The Ninth Circuit has applied this presumption to administrative records. *See Red Top Mercury Mines, Inc. v. United States*, 887 F.2d 198, 202 (9th Cir. 1989) (where notice was absent from BIA administrative record, a presumption arose (because of the presumption of the completeness of the administrative record) that one had not been filed) (*citing Wilson v. Hodel*, 758 F.2d 1369, 1370 (10th Cir. 1985) (applying presumption of regularity to a question of administrative record completeness)). Various district courts within the Ninth Circuit have applied this presumption to the completeness of administrative records. *See, e.g.*, *Glasser v. Nat'l Marine Fisheries Serv.*, No. C06-0561 BHS, 2008 WL 114913, *1 (W.D. Wash. Jan. 10, 2008) ("administrative record is entitled to a presumption of administrative regularity which can only be rebutted by the presentation of clear evidence to the contrary," citing *McCrary v. Gutierrez*, 495 F.Supp.2d 1038, 1041 (N.D. Cal. 2007)). This is also the rule in the District of Columbia Circuit, where most APA cases arise. *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000).

---

[2] The administrative record was filed on February 19, 2016. Dkt. 9. The ATF affirmed that the administrative record includes the documents considered during the ATF's decision-making process. Dkt. No. 9-1 ¶ 2 (Decl. of Curtis Gilbert). Plaintiff stipulated to a briefing schedule for cross-motions for summary judgment, implicitly agreeing that Defendants' motion was timely and that the record was complete. Dk. 16. Plaintiff filed its own motion without complaint as to the completeness of the record. Dkt. 18.

DEFENDANTS' REPLY IN SUPPORT OF
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 2
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

With regard to the four documents Plaintiff claims were excluded, Plaintiff has only offered speculation that does not rebut the presumption of completeness.  Reply at 20.  With regard to the ammunition encyclopedia excerpted at AR45-46, MICHAEL BUSSARD, AMMO ENCYCLOPEDIA 595-96 (John B. Allen, et al. eds., 4th ed. 2012), ATF included the only pages relevant to "5.45x39mm Soviet" ammunition because they were the only pages considered in making the challenged decision.  The administrative record need not include this voluminous book so Plaintiff may "review the composition of other ammunition and compare those to ATF's other classifications of 'armor piercing ammunition.'"  Reply at 20.  Neither was the 1986 informal letter ruling regarding the entirely separate M855 bullet "considered" by ATF in making its decision.[3]  Neither of these documents should be considered part of the record.[4]  The two emails referenced by Plaintiff were also not considered by ATF (they relate to the initial tip regarding Plaintiff's shipment, not the later decision making).  *See* Supplemental Declaration of Jessica M. Andrade Ex. C (email appearing in photograph at AR113); Declaration of Thomas Brennan (Dkt. 26-1) Ex. 3 (internal ATF email referencing investigative tip, tip also discussed at AR13).  However, for the sake of expediency Defendants are willing to stipulate to the inclusion of the two emails in the administrative record.

Finally, Plaintiff complains that documents at AR108-215 should be excluded from the record because they were created on or after April 7, 2014.  Plaintiff's representation is inaccurate as many documents within this bates range were created before that date, but forwarded via email on or after April 7, 2014.  *See, e.g.* AR108 (created before April 7th but forwarded *on* that date); AR114 (same); AR118 (undated forward).  Regardless, April 7, 2014 is the date of the ATF's special

---

[3]   Notably, a precursor to this letter is found in the legislative history, which this Court may take judicial notice of under FRE 201.  *See Hearing before the Subcommittee on Crime of the Committee on the Judiciary, House of Representatives, 99th Congress, on H.R. 4 and H.R. 13* at 147-148 (May 9, 1985) (hereinafter "May 9, 1985 Hearing"), Declaration of Jessica Andrade Ex. A, Dkt. 25-1 at 147-49.

[4]   Neither is Plaintiff due an opportunity to review a *Vaughn* index for ATF's FOIA production to "assess the completeness" of the administrative record.  *Vaughn* indexes are only created to support summary judgment on FOIA claims.  Documents responsive to Plaintiff's FOIA requests (Compl. ¶ 63 (Dkt. 1)), and designations of the administrative record are not coextensive. *TOMAC v. Norton*, 193 F. Supp. 2d 182, 195 (D.D.C. 2002) (noting difference in expanse of FOIA as compared to administrative record).

DEFENDANTS' REPLY IN SUPPORT OF
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 3
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

advisory to the public (AR37), *not* the date of the final agency action.  ATF communicated its preliminary finding to Plaintiff on March 11, 2014 (AR216), the ATF's special advisory was issued on April 24, 2014 (AR37), after which Plaintiff requested that ATF reexamine its position (AR40-42), which ATF did before it issued a final definitive statement in response on June 2, 2014.  AR44.  This June 2nd communication was the final agency action, and all of the documents considered by the agency at the time should be part of the administrative record.  *See FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239-41, 101 S.Ct. 488, 66 L. Ed. 2d 416 (1980) (factors suggesting finality of agency action include whether there is a "definitive statement" of the agency's position, and whether the question presented is a "legal issue fit for judicial resolution"); *see also id.* at 244 (noting purpose of finality requirement is to ensure compilation of complete agency record for judicial review).  All documents created on or after June 2, 2014, are thus appropriately parts of the administrative record.  Regardless, there is certainly enough in the record dated on or before April 7, 2014 to support ATF's decision. *See, e.g.*, AR20-22 (ATF Firearms Technology Branch Report, noting handgun capable of chambering round).  Again, none of Plaintiff's arguments regarding the administrative record prevent summary judgment.

      **B.**    **Summary Judgment Should be Granted Against Plaintiff's Claim that the ATF's Decision Was Arbitrary and Capricious.**

Plaintiff argues that ATF's actions were arbitrary and capricious because they conflicted with the plain language of the GCA, or, in the alternative, because under either *Chevron* or *Skidmore* deference, ATF's reasoning is unsupported by legislative history, ATF's own historical interpretation of the GCA, or the administrative record.  Reply at 5-19.  Plaintiff's arguments are unavailing, and summary judgment should be granted in favor of Defendants.

        **1.**    **ATF's Decision Comports with the Plain Language of the GCA.**

The first step of any administrative review process is to determine whether Congress has directly spoken to the question at issue.  *Chevron*, 467 U.S. at 843.  Both parties in this case contend that Congress did speak directly to the question at issue, however the parties differ as to the meaning

DEFENDANTS' REPLY IN SUPPORT OF
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 4
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    of the plain language of the statute.  ATF interprets "a projectile or projectile core . . . constructed

2    entirely (excluding the presence of traces of other substances)" to include the ammunition at issue in

3    this case, which indisputably has a solid steel piece at its core. 18 U.S.C. § 921(a)(17)(B)(i); *see also*

4    AR20-21.  In opposition, Plaintiff argues that the plain language of the GCA indicates that

5    everything inside the "jacket" of ammunition must be metal, and that to read the statute otherwise

6    makes the terms "projectile" and "entirely" superfluous.  Reply at 5-8.  There is no basis in the

7    statutory language, however, for an understanding of the term "projectile core" to mean "all the

8    material encapsulated by [the] casing."  Reply at 1:23-24.  This interpretation contradicts the basic

     meaning of the term "core." Cross-Motion at 13-15. Notably, the GCA does refer to the "jackets" of

9    projectiles in its alternative definition for armor piercing as "a full jacketed projectile larger than .22

10   caliber . . ." 18 U.S.C. § 921(a)(17)(B)(ii). If Congress believed everything inside the jacket to be

11   the "core," it would have stated "a full jacketed projectile core."

12          Further, the term "projectile" is not rendered superfluous by ATF's interpretation.  Just

13   because a projectile (i.e. the entire bullet) composed of metal would also have a metal core does not

     make the term "projectile" irrelevant. Plaintiff's reasoning on this point shows the strained nature of

14   its statutory interpretation, and glosses over the fact that its interpretation much more clearly

15   obviates the need for the term "projectile core."  The term "entirely" also is not rendered redundant

16   by interpreting it in line with its parenthetical explanation.  The operation of a parenthetical in

17   grammar is often to provide an explanation of the preceding phrase.  The parenthetical in this

18   instance clarifies that the tern "entirely" means that the core piece of the ammunition should be

19   composed of one of the seven metals "excluding trace elements" of other materials.  In other words,

     the core piece should be metallically pure. In contrast, Plaintiff's reading makes the parenthetical

20   superfluous.  Plaintiff's tortured interpretation of the GCA's armor piercing provision is clearly

21   aimed at making the statute more permissive, to its benefit.  This is contrary to the intent of Congress

22   expressed by the clear language of the GCA. *Chevron*, 467 U.S. at 843.

23

DEFENDANTS' REPLY IN SUPPORT OF
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 5
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### 2. ATF's Reasoning Withstands Review, Whether Given *Chevron* or *Skidmore* Deference.

Should this Court find the GCA to be ambiguous, the question for the court is whether ATF's interpretation is based on a permissible construction of the statute under *Chevron*, or whether ATF's interpretation is persuasive such that it is due "respect" under *Skidmore*. Defendants reiterate that *Chevron* review is more appropriate in this instance, based upon a review of the *Barnhart* factors. *Barnhart v. Walton*, 535 U.S. 212, 221-22, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). The legal question is interstitial, as ATF's interpretation of the armor-piercing standard necessarily fills any gaps left by Congress in its definition. *Id.* at 222. The relative expertise of the agency, ATF, is emphasized by the very technical nature of the question of what constitutes armor piercing ammunition. *Id.* The question is important to the administration of the GCA, as it goes to the heart of the implementation of the armor piercing provision, which is administered through a complex set of agency actions, such as the import controls at issue in this case, as well as domestic enforcement actions. *Id.* Finally, the very Form 6 process, which in this case began as long ago as January 2013, involves careful review of applications, inspection of shipped materials, and testing and consideration of the shipped materials--as evidenced by the administrative record. *See* Defendants' Cross Motion at 4-9. Regardless, as stated in Defendant's Cross-Motion, ATF's reasoning stands under either *Chevron* "permissible construction" or *Skidmore* "respect" deference.

### a. The Legislative History Supports ATF's Decision.

Though Plaintiff cites to legislative history in support of its argument that the "plain language" of the GCA requires everything inside the "jacket" of a bullet to be metal in order for the bullet to be armor piercing (Reply at 8-10), case law is clear that legislative history is only considered under the second step of *Chevron*. *Schneider v. Chertoff*, 450 F.3d 944, 955 fn. 15 (9th Cir. 2006) (citing *Chevron*, 467 U.S. at 842-43). As stated in Defendants' Cross-Motion, the legislative history here supports ATF's analysis. Cross Motion at 17-19. In opposition, Plaintiff cites to testimony from the National Engineering Laboratory at the National Bureau of Standards

DEFENDANTS' REPLY IN SUPPORT OF
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 6
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

regarding testing on various types of ammunition.  *See Armor –Piercing Ammunition and the Criminal Misuse and Availability of Machine Guns and Silencers: Hearing Before Subcomm. On Crime of the H. Comm. On the Judiciary, HR. 5835, H.R. 5844, H.R. 5845*, 98th Cong., 2d Sess. at 307-18 (June 27, 1984).  The diagrams that Plaintiff points to on pages 310-312 of the legislative record are of the bullets tested by Mr. Kramer, none of which were 5.45x39mm Soviet ammunition.  *Id.*  Accordingly, any indication of a "core" on the diagrams is irrelevant to the meaning of core under the statute, or the core of the ammunition at issue in this case.  *See, e.g.*, *Id.* at 309 (testimony of Mr. Kramer) ("armor piercing' and I have to put it in quotes, because we are not the agency to make the designation").  Further the diagrams show that, contrary to Plaintiff's interpretation, the entire inside of the bullet jacket is not referred to as the "core."  *Id.* at 311-12 (showing liner, inner jacket as separate from core).  Mr. Kramer's diagrams thus only support ATF's reasoning in this case.  The legislative record, viewed as a whole, supports ATF's interpretation for purposes of the second prong of *Chevron*.

### b. The Administrative Record Supports ATF's Decision.

Plaintiff argues that the administrative record does not support ATF's actions.  Reply at 3-4, 16-19.  In other words, summary judgment is inappropriate because ATF could not have reasonably found the facts as it did.  Plaintiff's argument, however, cherry-picks and distorts the record, which is inappropriate under Ninth Circuit precedent.  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998) (the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [agency's] conclusion").  Furthermore, Plaintiff's complaints rely upon statements of individual agency employees (and even employees of entirely separate agencies), which is also inappropriate under APA precedent.  *See, e.g.*, *Cumberland Pharmaceuticals, Inc. v. Food & Drug Admin.*, 981 F. Supp. 2d 38, 53 (D.D.C. 2013).  Regardless, none of the three documents cited by Plaintiff in its Reply make ATF's finding "unreasonable":

- Plaintiff's argument about the FBI metallurgist's report (Reply at 3-4, citing AR16-17) ignores that the FBI was only asked to provide metallurgic testing, not

DEFENDANTS' REPLY IN SUPPORT OF
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 7
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

to opine on the legal standard for armor piercing ammunition.  Furthermore, Plaintiff ignores that it is the ATF, and in particular its Firearms Technology Branch, that possesses the expertise on this matter, not the FBI chemist.[5]

- Plaintiff's arguments about AR104 and AR143 do not indicate that "ATF employed its own 'armor piercing' definition." *Id.* Viewing the entire explanation included in AR143, ATF's reasoning is clear: "ATF does not consider there to be a difference between a partial and full steel core.  Rather, the test is first; what is the core made of, and then second; is there a handgun chambered for it.  This particular ammunition is 5.45x39mm steel core (armor piercing) ammunition is <u>illegal to import</u> . . ." AR143 (emphasis in original).  This correspondence does not evidence a lack of factual support for ATF's actions in the administrative record.

- Plaintiff's citation to an ammunition reference manual included in the administrative record which describes AK-47 ammunition as having a "three-piece design with a coppery alloy jacket, lead core and steel penetrator," is similarly misleading.  Reply at 4 (citing AR 46).  Plaintiff excludes the remainder of the description which states "there is a hollow cavity under the tip.  This bullet is analogous to the aSS109/M855A1 bullet for the 5.56x45mm NATO round in that *it is designed to penetrate body armor*.  In addition to the Ball round, tracer and other types have been developed.  For the commercial market, hollow point and FMJBT bullets without the steel penetrator are offered." *Id.* (emphasis added).

None of these documents, either on their own or considered as part of the record as a whole, indicate that ATF's factual findings were unreasonable.

Plaintiff also argues that the administrative record does not support a finding that metal forms the "center and innermost foundation" of the ammunition, under the dictionary definition.  Reply at 16-17, 18-19.  Plaintiff forgets that under relevant case law the record must support ATF's actions, not an exact dictionary definition.  Regardless, the record as a whole does, in fact, support the

---

[5] Plaintiff blatantly misquotes ATF on this point. *Compare* Defendants' Cross Motion at 7:19-22 (Dkt. No. 24) ("[T]he SA . . . sent samples to the ATF Laboratory and the Firearms Technology Branch for analysis. The Firearms Technology Branch (which has since been renamed the Firearms and Ammunition Technology Division) is responsible for providing expert technical support to ATF, and often provides expert testimony on firearms and ammunition.") *with* Reply at 3:24-25 ("ATF admits that the FBI is 'responsible for providing expert technical support to ATF, and often provides expert testimony on firearms and ammunition.' Dkt. # 24, p. 7.") *and* Reply at 12:7 ("ATF admits that the FBI, its expert, found that 7N6's core contained lead."); *see also* Defendants' Cross-Motion at 7 fn. 5 (providing link to ATF Firearms and Technology Branch Website, describing how this branch of the ATF serves as an expert for ATF).

CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 8
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

dictionary definition. The diagram of the bullet shown at AR17 is dispositive to this point, as it shows that the steel piece is in the "center" both longitudinally and latitudinally (despite Plaintiff's line-drawing), and that the steel is the "foundational" part because it is by far the largest part of the bullet. ATF found as much in its reports of its findings. AR20 ("it contains a steel core"); AR43 ("Regardless of the name that may be given to each component makeup of this ammunition, the center and innermost foundation (core) of the projectile is steel.").

Plaintiff also argues that the record does not show that ATF appropriately considered evidence when it found the ammunition could be used in a handgun. Reply at 17. Plaintiff largely bases this argument on its position that any document dated on or after April 7, 2014 may not be considered part of the record. *See* Part II.A. (discussing Plaintiff's claim of "overinclusive" record). Plaintiff's argument fails because (1) April 7, 2014 is not the date of the final agency action; (2) administrative records argued to be overinclusive were created or obtained on or before April 7, 2014, and therefore were before the agency on the date it issued its special advisory (and certainly before it issued its final ruling) (AR-124-54); (3) pre-April 7, 2014 documents showing ATF's knowledge of imported 5.45x39mm handguns (AR88, AR60-60, AR85-87) support the finding that the ammunition "may be used in a handgun." 18 U.S.C. § 921(a)(17)(B)(i). The administrative record supports ATF's findings and summary judgment should be granted on Plaintiff's APA claim.

### 3.   ATF's Reasoning Under the GCA Has Been Consistent.

Much of Plaintiff's Reply is spent arguing that the ATF's interpretation of the GCA has been inconsistent or historically wrong. Reply at 10-16. ATF's separate classification of M855 or "green tip" ammunition is not being contested in this manner, and as such ATF's classification should be irrelevant to this Court's APA review of the revocation of Plaintiff's import permits. Regardless, the historical treatment of M855 ammunition supports ATF's position in this case.

Plaintiff's claim that the classification of M855 as armor piercing has been "unlawful" since 1986 flies in the face of the legislative history. The Department of the Treasury (ATF's predecessor

DEFENDANTS' REPLY IN SUPPORT OF
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 9
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

in this context) actually advised Congress that it would find M855 armor-piercing *before* the armor piercing language was passed. The Chairman of the Subcommittee on Crime, William J. Hughes wrote to John M. Walker, Assistant Secretary for Enforcement and Operations and the Department of the Treasury to inquire what ammunition the Department believed would be covered by the armor piercing provision, as well as what ammunition would be exempted from the definition for "legitimate sporting purposes." May 9, 1985 Hearing at 147 (Dkt. 25-1). Assistant Secretary Walker replied that "certain recently developed military cartridges, such as the NATO 5.56x45mm cartridge [M855 ammunition], which utilize a hard metallic penetrator, would also be covered." May 9, 1985 Hearing at 148. Congress was thus advised the language it would pass would be interpreted to make M855 ammunition armor piercing and illegal, and they then passed that language unaltered. Furthermore, the key characteristic which made M855 armor piercing was its "hard metallic penetrator"—its metal core. *Id.* This confirms that ATF's interpretation of the statute (not Plaintiff's) was acknowledged and confirmed by Congress before the passage of the statute.

   Contrary to Plaintiff's arguments, this original interpretation has not changed, and is consistent with ATF's finding in this case. Indeed, as the administrative record notes, "[t]his bullet [5.45x39mm Soviet] is *analogous to* the SS109/M855A1 bullet for the 5.56x45mm NATO round in that *it is designed to penetrate body armor*." AR46 (emphasis added). The two bullets are analogous, and have both been declared to be armor piercing, due to the presence of the steel penetrator in their core which gives them their armor-piercing capabilities. *See* AR43 ("Regardless of the name that may be given to each component makeup of this ammunition, the center and innermost foundation (core) of the projectile is steel."); May 9, 1985 Hearing at 148 ("[T]he NATO 5.56x45mm cartridge, which utilize[s] a hard metallic penetrator, would also be covered.").

   This importance of the steel penetrator, i.e. the metal core piece within the bullet that creates its armor piercing characteristic, is what is meant by the perhaps inartfully stated but oft-repeated phrase quoted by Plaintiff: "[ATF] does not consider there to be a difference between a partial and full steel core." Majors Decl. ¶ 22 (Dkt. 11); AR143. In other words, despite the presence of other

DEFENDANTS' REPLY IN SUPPORT OF
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 10
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

materials inside the jacket of a bullet, it is the metal core or penetrator that gives the bullet its armor-piercing capabilities. Even if, as Plaintiff argues, M855 has "steel [ ] in front and lead [ ] in the rear" (Reply at 14:15-16), that point (1) is, first and foremost, irrelevant to ATF's finding with regard to the 5.45x39mm Soviet ammunition at issue in this case; (2) does not show whether the "hard metallic penetrator" is in the "center and innermost part" of M855; and (3) does not mean that ATF's interpretation that "core" does not mean "everything inside the jacket" is wrong, as that finding was long ago confirmed by Congress.

### C.  Plaintiff's Alternative Theories are Unavailing.

Plaintiff's main argument that its additional due process, commerce clause, and notice and comment theories should not be dismissed is that the record is incomplete, which is discussed at Part II.A., *supra*. Notably, Plaintiff does not indicate how the four documents it claims were excluded would impact these arguments. Plaintiff's remaining arguments are similarly unsupportable.

#### 1.  No Due Process Rights Were Violated.

Plaintiff's Reply reveals that Plaintiff's sole argument that its "due process" rights were violated is that ATF misinterpreted 18 U.S.C. § 921(a)(17)(B)(i). Reply at 21:10-21:20. A misinterpretation of law, however, does not rise to the level of a Constitutional violation when there is no Constitutional right to import ammunition, and appropriate procedures were followed. Plaintiff does not confront case law holding that the revocation of import permits does not implicate due process concerns. *See* Defendant's Cross-Motion at 19-20 (citing *B-West Imports, Inc. v. United States*, 75 F.3d 633, 635 (Fed. Cir. 1996); *Mitchell Arms, Inc. v. United States,* 7 F.3d 212 (Fed. Cir. 1993), *cert. denied,* 511 U.S. 1106, 114 S.Ct. 2100, 128 L.Ed.2d 662 (1994)). Plaintiff's claim that ATF violated due process rights should be dismissed with prejudice.

#### 2.  ATF Did Not Exceed its Statutory Authority.

Plaintiff's sole argument that ATF acted in "excess of statutory jurisdiction . . . including the Commerce Clause," (Compl. ¶ 74), is also that ATF misinterpreted 18 U.S.C. § 921(a)(17)(B)(i).

DEFENDANTS' REPLY IN SUPPORT OF
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 11
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Reply at 21:23-22:4.  Plaintiff does not defend its Commerce Clause argument in its Reply.  If Plaintiff's argument on this point is truly only that ATF misinterpreted the GCA, then that argument is appropriately dealt with under the rubric of the APA.  *See* Part II.B., *supra*.  Any separate argument that ATF acted outside of its statutory authority should be dismissed with prejudice.

### 3. No Notice and Comment Was Required.

Plaintiff argues that notice and comment was required because (1) ATF's use of the phrase "commercially available" in its special advisory effectively altered the standard for armor-piercing ammunition under the GCA; and (2) that ATF's revocation was a "deviation from its decades-old determination" that "created new duties" and "took away old rights."  Reply at 22-23.  The use of the phrase "commercially available" in an ATF special advisory *does not* amount to a rulemaking setting forth a new standard for armor-piercing ammunition.  The actual statutory standard "which may be used in a handgun" is explicitly quoted in that same special advisory.  AR37.  Taken to its logical but irrational conclusion, Plaintiff's argument would mean that any agency statement explaining an action or interpreting a rule would require notice and comment.

Furthermore, ATF's action was not a "deviation" that "took away old rights."  Plaintiff was on notice that such a revocation could occur at any time.  27 C.F.R. § 447.44.  Further, this decision applied "only to the Russian-Made 7N6 ammunition analyzed, not to all 5.45x39 ammunition."  AR37.  By definition, this notice thus constituted a "general statement of policy" that did not alter ATF customs officer's ability to make "individualized determinations."  *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1013-14 (9th Cir. 1987) (general statements of policy do not require notice and comment).  ATF's actions did not constitute a substantive rulemaking with the effect of law under 5 U.S.C. § 553, and thus notice and comment were not required.

### III. CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court deny Plaintiff's motion and instead grant summary judgment in favor of Defendants

DEFENDANTS' REPLY IN SUPPORT OF
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 12
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

|   |   |
|---|---|
| 1 | Respectfully submitted, |
| 2 | ANNETTE L. HAYES<br>United States Attorney |
| 3 |   |
| 4 | */s/ Jessica M. Andrade*<br>Jessica M. Andrade, WSBA No. 39297 |
| 5 | Assistant United States Attorney<br>United States Attorney's Office |
| 6 | 700 Stewart Street, Suite 5220<br>Seattle, Washington  98101 |
| 7 | Phone:  (206) 553-7970<br>Fax:     (206) 553-4073 |
| 8 | Email:  Jessica.Andrade@usdoj.gov |
| 9 | Attorney for Defendants |

DEFENDANTS' REPLY IN SUPPORT OF
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 13
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the plaintiff(s).

    McKAY CHADWELL, PLLC
    Robert G. Chadwell, WSBA No. 22683
    Patrick J. Preston, WSBA No. 24361
    Thomas M. Brennan, WSBA No. 30662
    600 University Street, Suite 1601
    Seattle, WA 98101-4124
    Email: rgc1@mckay-chadwell.com
           pjp@mckay-chadwell.com
           tmb@mckay-chadwell.com

I hereby certify that I have served the foregoing document to the following non-CM/ECF participant(s)/CM/ECF participant(s), via USPS mail, postage pre-paid.

    -0-

    Dated this 20th day of May, 2016.

    */s/ Jessica M. Andrade*
    Jessica M. Andrade, WSBA No. 39297
    Assistant United States Attorney
    United States Attorney's Office
    700 Stewart Street, Suite 5220
    Seattle, Washington  98101
    Phone: (206) 553-7970
    Fax:   (206) 553-4073
    Email: Jessica.Andrade@usdoj.gov

    Attorney for Defendants

DEFENDANTS' REPLY IN SUPPORT OF
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT - 14
Case No. 15-cv-01990-JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970