THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

P.W. ARMS, INC., a Washington
corporation,

CASE NO. C15-1990-JCC

10

11

Plaintiff,

12

v.

13

UNITED STATES OF AMERICA and
the BUREAU OF ALCOHOL ,
TOBACCO, FIREARMS AND
EXPLOSIVES, a Federal Agency,

14

15

Defendants.

ORDER ON PLAINTIFF'S MOTION
TO SUPPLEMENT, AND STRIKE
PORTIONS OF, THE
ADMINISTRATIVE RECORD AND
ON CROSS-MOTIONS FOR
PARTIAL SUMMARY JUDGMENT

16

17          This matter comes before the Court on Plaintiff's Motion to Supplement and Strike

18   Portions of the Administrative Record (Dkt. No. 29), Defendants' Opposition (Dkt. No. 33), and

19   Plaintiff's Response (Dkt. No. 36). The Court has also reviewed Plaintiff's Motion for Partial

20   Summary Judgment (Dkt. No. 18), Defendants' Opposition and Cross-Motion for Partial

21   Summary Judgment (Dkt. No. 24), Plaintiff's Rely (Dkt. No. 26), and Defendants' Reply in

22   Support of their Cross-Motion for Partial Summary Judgment (Dkt. No. 31).

23          Having thoroughly considered the parties' briefing and the relevant record, the Court

24   finds oral argument unnecessary and hereby DENIES Plaintiff's motion to supplement and strike

25   (Dkt. No. 29); DENIES Plaintiff's motion for partial summary judgment (Dkt. No. 18), and

26   GRANTS Defendants' motion for partial summary judgment for the reasons explained herein.

ORDER ON PLAINTIFF'S MOTION TO
SUPPLEMENT, AND STRIKE PORTIONS OF,
THE ADMINISTRATIVE RECORD AND ON
CROSS-MOTIONS FOR PARTIAL SUMMARY
JUDGMENT
PAGE - 1

1   **I.     BACKGROUND**

2          Plaintiff, a Washington corporation that distributes ammunition and firearms wholesale,

3   brings suit against the United States and the Bureau of Alcohol, Tobacco, Firearms, and

4   Explosives ("ATF"). (Dkt. No. 1.) Plaintiff's suit arises out of its having sought and received

5   permits to import 50 million rounds of banned, "armor piercing" ammunition from Germany. (*Id.*

6   at 9.) The ammunition in question, 7N6 5.45x39 mm ("7N6"), was designed and introduced by

7   the Soviet Union in the 1970s for military use in the AK-74 assault rifle. (*Id.* at 8.) It is

8   undisputed that the 7N6 bullet is composed of a lead plug, a steel core, and a steel jacket. (*See*

9   AR at 20; Dkt. No. 1 at 8–9.) Upon discovery that the bullets contain a steel core and could be

10  used in a handgun, the ATF classified them as "armor piercing" and therefore banned under the

11  Gun Control Act, 18 U.S.C. § 921(a)(17)(B)(i). (*Id.* at 11.)

12         Under permits issued between February 2013 and February 2014, Nos. 13-00760, 13-

13  01216, and 14-00996, Plaintiff imported over 37 million rounds of such ammunition for resale in

14  the United States. (*Id.* at 9–10.) In this process, from May 2013 to early 2014, Plaintiff incurred

15  numerous associated costs, including packaging, shipping, marine loading and sea freight, and

16  customs broker expenses. (*Id.* at 10.) On February 17, 2014, two containers of the ammunition

17  arrived in Norfolk, Virginia and were stopped by Customs and Border Protection agents. (*Id.* at

18  11.) Permit No. 14-00996, authorizing the importation of an additional 50 million rounds of the

19  7N6 ammunition, was approved on February 21, 2014. (*Id.*) On March 11, 2014, ATF notified

20  Plaintiff that the ammunition was classified as armor piercing and could not be imported. (*Id.*)

21  Plaintiff then put a hold on the remaining importation of its order and has since incurred

22  additional expenses storing remaining ammunition in Hamburg, Germany and in a Free Trade

23  Zone facility in Reno, Nevada. (*Id.*) On April 7, 2014, the ATF issued a special advisory

24  "reclassifying 7N6 5.45x39 mm ammunition as armor piercing and illegal . . ." (*Id.* at 12–13.)

25  Plaintiff then requested ATF to reexamine its position in a letter dated April 24, 2014. (Admin.

26  ORDER ON PLAINTIFF'S MOTION TO
SUPPLEMENT, AND STRIKE PORTIONS OF,
THE ADMINISTRATIVE RECORD AND ON
CROSS-MOTIONS FOR PARTIAL SUMMARY
JUDGMENT
PAGE - 2

1   Record at 40–42.) In a letter dated June 2, 2014, the request for reconsideration was denied. (AR

2   at 43–44.)

3        Plaintiff sues, alleging that the ATF's "reclassification" of the 7N6 ammunition was

4   "arbitrary and capricious" under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* (Dkt.

5   No. 1 at 17–19.)

6        Plaintiff brings a motion to supplement the administrative record and strike other portions

7   (Dkt. No. 29). Specifically, Plaintiff asks the Court to supplement the administrative record with:

8   (1) a letter from ATF Deputy Director William Drake ("Drake letter"); (2) the declaration of

9   William Majors ("Majors declaration"); (3) a January 28, 2014 ATF e-mail with the subject line

10  "Importer Stacy Prineas (PW Arms)" ("January 28 e-mail"); (4) the entire contents of a book

11  excerpted by the ATF, and (5) an April 7, 2014 e-mail regarding the ATF investigation of

12  Plaintiff's ammunition importation. (*Id.* at 3–5.) Plaintiff also asks the Court to strike three

13  documents from the administrative record on the grounds that they were created after the ATF

14  made its determination on April 7, 2014: (1) research into commercially available handguns

15  located at AR 51–59, (2) research on a message board into commercially available handguns

16  located at AR 156–215, and (3) the June 2, 2014 letter in which ATF responded to Plaintiff's

17  counsel's request for reconsideration. (Dkt. No. 29 at 7.)

18       Additionally, both parties move for partial summary judgment (Dkt. Nos. 18, 24.) The

19  central issue before this Court is whether the bullets in question, 7N6, meet the definition of

20  "armor piercing" as provided in the Gun Control Act, 18 U.S.C. § 921(a)(17)(B).

21  **II.    MOTION TO SUPPLEMENT AND STRIKE PORTIONS OF THE
        ADMINISTRATIVE RECORD**

22       **A.    Standard of Review Under the APA**

23       The Court first reviews Plaintiffs' motion to supplement, as well as strike portions of, the

24  administrative record. (Dkt. No. 29.) As discussed below, there are several problems with

25  Plaintiff's motion.

26  ORDER ON PLAINTIFF'S MOTION TO
    SUPPLEMENT, AND STRIKE PORTIONS OF,
    THE ADMINISTRATIVE RECORD AND ON
    CROSS-MOTIONS FOR PARTIAL SUMMARY
    JUDGMENT
    PAGE - 3

Under the Administrative Procedure Act, the district court may not set aside an agency's action unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . ." 5 U.S.C. § 706(2)(A); *Safari Aviation Inc. v. Garvey*, 300 F.3d 1144, 1150 (9th Cir. 2002). Review under this standard is narrow, and the court must not substitute its judgment for that of the agency. *Safari Aviation*, 300 F.3d at 1150. "Agency action should be overturned only when the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* (internal quotations omitted).

When the district court reviews an administrative decision, the court is generally not required to resolve any facts. *Occidental Engineering Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did. *De novo* factfinding by the district court is allowed only in limited circumstances." *Id.*

As part of the deference afforded to agency actions, district courts must limit their review to the record before the agency at the time of its decision: "[w]hen a reviewing court considers evidence that was not before the agency, it inevitably leads the reviewing court to substitute its judgment for that of the agency." *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980); *see also Thompson v. U.S. Dept. of Labor*, 885 F.2d 551, 555 (9th Cir. 1989). In other words, considering materials outside the administrative record as Plaintiff requests is the exception, not the rule. *Asarco*, 616 F.2d at 1160. It may be appropriate for Courts to consider additional materials in order to provide background information, or "for the limited purposes of ascertaining whether the agency considered all the relevant factors or fully explicated its course of conduct or grounds of decision." *Id.*

ORDER ON PLAINTIFF'S MOTION TO
SUPPLEMENT, AND STRIKE PORTIONS OF,
THE ADMINISTRATIVE RECORD AND ON
CROSS-MOTIONS FOR PARTIAL SUMMARY
JUDGMENT
PAGE - 4

It is well established that "administrative agencies are entitled to a presumption that they 'act properly and according to law.'" *Kohli v. Gonzales*, 473 F.3d 1061, 1068 (9th Cir. 2007) (citing *Federal Communications Commission v. Schreiber*, 381 U.S. 279, 296 (1965)). District courts in the Ninth Circuit have applied this presumption of regularity to the completeness of administrative records. *Glasser v. Nat'l Marine Fisheries Serv.*, 2008 WL 114913, at *1 (W.D. Wash. Jan. 10, 2008); *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007). However, there is not Ninth Circuit precedent adopting this presumption. *See Trout Unlimited v. Lohn*, 2007 WL 1795036, at *13–14 (W.D. Wash. June 13, 2007), *affirmed in part and reversed in part on other grounds*, *Trout Unlimited v. Lohn*, 559 F.3d 946 (9th Cir. 2009). Other circuits have noted an administrative record may be adequate even if it does not contain every potential document that may have been created. *Pac. Shores Subdivision, Calif. Water Distr. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006); *Fuentes v. I.N.S.*, 746 F.2d 94, 97 (1st Cir. 1984).

Even without the presumption of regularity, however, the question of whether an administrative record is incomplete is distinct from the question of whether a Court *may* consider documents outside of the administrative record. As both parties' briefing emphasizes, there are four exceptions recognized by the Ninth Circuit for where a court may consider evidence outside of the administrative record: where the evidence (1) "is necessary to determine whether the agency has considered all relevant factors and has explained its decision," (2) "is necessary to determine whether the agency has relied on documents not in the record," (3) "is necessary to explain technical terms or complex subject matter," or (4) plaintiffs have made "a showing of agency bad faith." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014). In other words, the Court is careful not to construe the circumstances set forth in *San Luis* as *requiring* materials be added to an administrative record; rather, they present *exceptions* to the guiding principle that district courts are required to limit review to the materials contained in the

ORDER ON PLAINTIFF'S MOTION TO
SUPPLEMENT, AND STRIKE PORTIONS OF,
THE ADMINISTRATIVE RECORD AND ON
CROSS-MOTIONS FOR PARTIAL SUMMARY
JUDGMENT
PAGE - 5

1  administrative record.

2  **1.      Date of Final ATF Determination**

3         The parties dispute the date on which the ATF made its final determination that 7N6

4  bullets were "armor piercing." (Dkt. Nos. 29 and 33.) Plaintiff asserts that the April 7, 2014

5  advisory constituted the final agency action. (Dkt. No. 29 at 6.) Defendants assert that the request

6  for reconsideration filed by Plaintiff stripped the April 7 statement of finality, and in fact a final

7  decision was not entered until the request for reconsideration was denied on June 2, 2014. (Dkt.

8  No. 33 at 11–12.)

9         An agency action is considered "final" when two conditions have been met: (1) "the

10  action must mark the 'consummation' of the agency's decision-making process—it must not be

11  of a merely tentative or interlocutory nature" and (2) "the action must be one by which 'rights or

12  obligations have been determined' or from which 'legal consequences will flow.'" *Indus.*

13  *Customers of Nw Utils. v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005) (citing

14  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). "The core question is whether the agency has

15  completed its decision-making process, and whether the result of that process is one that will

16  directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992). In determining

17  whether an agency decision is a final one, the Court may wish to consider such factors as (1)

18  whether the action presents a "definitive" statement of the agency's position, (2) whether the

19  action has "a direct and immediate . . . effect on the day-to-day business of the complaining

20  parties," (3) whether the action has "the status of law" with which "immediate compliance" is

21  expected, and (4) whether the action presents a "legal issue . . . fit for judicial resolution." *F.T.C.*

22  *v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239 – 31 (1980) (citing *Abbott Laboratories v.*

23  *Gardner*, 387 U.S. 136, 151–53 (1967)).

24         Considering these pertinent factors, the Court concludes that the ATF made its final

25  decision that 7N6 ammunition was "armor piercing" when it denied Plaintiff's request for

26  ORDER ON PLAINTIFF'S MOTION TO
SUPPLEMENT, AND STRIKE PORTIONS OF,
THE ADMINISTRATIVE RECORD AND ON
CROSS-MOTIONS FOR PARTIAL SUMMARY
JUDGMENT
PAGE - 6

1   reconsideration on June 10, 2014. To the extent that Plaintiff's letter requesting reconsideration

2   of the April 7 advisory rendered the ATF's determination tentative, the June 10, 2014 letter

3   conclusively established the ATF's decision. Legal consequences flowed from the ATF's

4   determination. At that point, "immediate compliance" with this determination was expected by

5   the ATF.

6         **B.**      **Motion to Supplement**

7         With this deferential standard as its framework, the Court turns to Plaintiff's request

8   (Dkt. No. 29). As a preliminary matter, Defendants stipulate to the inclusion of both e-mails

9   referenced in Plaintiff's motion. (Dkt. No. 33 at 7–8.) The first e-mail, dated January 28, 2014,

10  contained the subject line "Firearms Imports to Norfolk by Licensed Importer Stacy Prineas

11  (P.W. Arms)" and discusses the investigation of Plaintiff's imported shipment suspected to

12  contain illegal armor piercing ammunition. (Dkt. No. 32-1.) The Court notes that this e-mail

13  thread explains that Plaintiff and its President, Stacy Prineas, were already known by ATF for

14  fraudulent importation, and in 2008 were caught importing illegal Chilean machine gun kits. (*Id.*

15  at 7) (citing Carter, Mike: "8,000 machine-gun kits seized from Redmond arms importer," THE

16  SEATTLE TIMES, June 20, 2003). The second stipulated e-mail, dated April 7, 2014, contained the

17  subject line "PW ARMS" and similarly discussed the ATF's investigation of Plaintiff's shipment

18  of ammunition later designated "armor piercing." (Dkt. No. 26-1 at 7.)

19        The Court agrees that the e-mails pertain to ATF's investigation of Plaintiff's import

20  shipment, not to its analysis and final determination about whether the 7N6 bullets were "armor

21  piercing." (Dkt. No. 33 at 8.) Plaintiff has not provided "clear evidence" that the record must be

22  supplemented with these two e-mails. However, given Defendants' stipulation that these e-mails

23  may be included, the Court considers them in its present review. The Court notes that this

24  stipulation does not amount to an admission that those e-mails are properly part of the

25  administrative record, let alone that Plaintiff has "clearly established that the Administrative

26  ORDER ON PLAINTIFF'S MOTION TO
    SUPPLEMENT, AND STRIKE PORTIONS OF,
    THE ADMINISTRATIVE RECORD AND ON
    CROSS-MOTIONS FOR PARTIAL SUMMARY
    JUDGMENT
    PAGE - 7

1    Record was incomplete" as it asserts. (*See* Dkt. No. 36 at 2.)

2        The Court turns to the remaining three[1] pieces of Plaintiff's request to supplement the

3    administrative record: (1) the Drake letter; (2) the Majors declaration; and (3) the entire contents

4    of a book excerpted by the ATF. (Dkt. No. 29 at 3–5.) Plaintiff has not established that any of

5    these documents were "considered" by the ATF, either "directly or indirectly" such that they are

6    needed in the administrative record. *Thompson v. U.S. Dept. of Labor*, 885 F.2d 551, 555 (9th

7    Cir. 1989). In determining whether to supplement the administrative record, "the critical inquiry

8    is whether these [documents] were before the [agency] at the time of the decision." *Id.*

9        First, the Drake letter dated October 31, 1986 pertains to different ammunition, the

10   SS109/M855, and so certainly was not a part of the ATF's determination with respect to the 7N6.

11   (Dkt. No. 26-1 at 4–5.) Moreover, the Drake letter was offered by Defendants in response to an

12   argument made by Plaintiff that it was entitled to a "notice and comment" period. (*See* Dkt. No.

13   1 at 15; Dkt. No. 24 at 23.) Plaintiff has not satisfied its burden to establish that the

14   administrative record should be supplemented by the Drake letter.

15       Second, the Majors declaration was issued on February 19, 2016 and post-dates the final

16   agency action in this case. (Dkt. No. 11 at 1–9.) There is no question as to whether the ATF

17   considered the Majors declaration in making its determination that 7N6 ammunition was armor

18   piercing: the declaration did not yet exist and it was not considered.

19       Third, Plaintiff argues that, because the ATF provided a two-page excerpt of a book, it

20   "at least indirectly relied on [the] entire book." (Dkt. No. 29 at 5.) The book, the Ammo

---

[1] The Court notes that while Plaintiff's original motion references a document entitled the "ATF Framework For Determining Whether Certain Projectiles are 'Primarily Intended for Sporting Purposes' within the Meaning of 18 U.S.C. § 921(a)(17)(c)," (Dkt. No. 29 at 2), neither party presented further argument as to whether the administrative record should be supplemented to include the ATF Framework. (Dkt. Nos. 33 and 36.) Rather, Plaintiff appears to have focused on the Drake letter which includes a similar discussion of the ATF's classification of another type of ammunition, the SS109/M855, as "armor piercing." (Dkt. No. 29 at 2.)

ORDER ON PLAINTIFF'S MOTION TO
SUPPLEMENT, AND STRIKE PORTIONS OF,
THE ADMINISTRATIVE RECORD AND ON
CROSS-MOTIONS FOR PARTIAL SUMMARY
JUDGMENT
PAGE - 8

1   Encyclopedia, was not indirectly considered in its entirety when the ATF made a determination

2   with respect to the 7N6. Moreover, as Defendants point out, to require such a substantial

3   supplement to the record "so that [Plaintiff] may review the composition of multiple types of

4   ammunition and compare those to ATF's other classifications of 'armor piercing ammunition' to

5   determine if ATF acted arbitrarily and capriciously in this case" would be a quintessential

6   example of *de novo* review prohibited under the APA. (*See id.*; Dkt. No. 33 at 9.)

7        Plaintiff's motion to supplement the record is DENIED because the documents it seeks to

8   have added to the administrative record were not considered by the ATF at the time of its June

9   10, 2014 determination regarding 7N6 ammunition. Moreover, none of the four factors

10  authorizing extra-record document review are present. *San Luis*, 776 F.3d at 992. The documents

11  sought by Plaintiff are (1) not necessary to determine whether the ATF considered all relevant

12  factors as they do not pertain to the composition of 7N6 bullets or the guns from which they can

13  be fired; (2) not necessary to determine whether the agency relied on documents not in record,

14  (3) do not helpfully explain a technical or complex subject matter, and (4) cannot come in under

15  the "bad faith" exception as there has not been a "strong showing of bad faith or improper

16  behavior." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), abrogated

17  on other grounds, *Califano v. Sanders*, 430 U.S. 99 (1977).

18        **C.     Motion to Strike**

19        Plaintiff also requests the Court strike three sets of documents. However, contrary to

20  Plaintiff's assertion, the first set of documents, located at AR 51–59, was not created after April

21  7, 2014. Plaintiff mistakes the date that a website was visited, January 14, 2016, for the date on

22  which the information was created, which was in 2012. AR 51–59. The second set of documents

23  at issue, located at AR 156–215, is composed of research into commercially available handguns

24  that was generated on April 10, 2014 and April 17, 2014 and so was "considered" by the ATF

25  prior to its final decision on June 10, 2014. The third document is the letter itself that constitutes

26  ORDER ON PLAINTIFF'S MOTION TO
    SUPPLEMENT, AND STRIKE PORTIONS OF,
    THE ADMINISTRATIVE RECORD AND ON
    CROSS-MOTIONS FOR PARTIAL SUMMARY
    JUDGMENT
    PAGE - 9

1   the ATF's final decision and therefore should not be stricken.

2       For the foregoing reasons, Plaintiff's motion to supplement the record and to strike (Dkt.

3   No. 29) is DENIED.

4   **III.   PARTIAL SUMMARY JUDGMENT MOTIONS**

5   **A.   Standard of Review**

6       Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant

7   summary judgment if the movant shows that there is no genuine dispute as to any material fact

8   and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a district

9   court conducts its summary judgment review under the APA, it does not resolve questions of fact

10  but rather reviews the agency decision and set it aside only if it is "arbitrary, capricious, an abuse

11  of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(a); *Wilderness*

12  *Soc'y. v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1059 (9th Cir. 2003) (en banc) *amended by*

13  360 F.3d 1374 (9th Cir. 2004). As discussed above, review is limited to the administrative

14  record. *San Luis*, 672 F.3d at 713.

15      The Supreme Court has established a well-known test for reviewing agency

16  interpretations of federal law. *Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837

17  (1984). The Court in *Chevron* created a two-step inquiry for determining the level of deference

18  owed to administrative statutory interpretations. First, if Congress has manifested a clear intent

19  with the statutory language, the reviewing court must give force to that intent. *Id.* at 843. Second,

20  if the statute is ambiguous or silent on a given question, the court must ask whether the agency's

21  interpretation of the statute is based on a permissible construction of the statute—which it is

22  unless the construction is arbitrary and capricious. *Id.* at 843–844.

23      *Chevron* deference does not apply to all agency decisions, however, but only those

24  intended to carry the "force of law." *U.S. v. Mead Corp.*, 533 U.S. 218, 226–27 (2001).

25  Decisions not deemed to merit *Chevron* deference are still entitled to "respect" based on an

26  ORDER ON PLAINTIFF'S MOTION TO
    SUPPLEMENT, AND STRIKE PORTIONS OF,
    THE ADMINISTRATIVE RECORD AND ON
    CROSS-MOTIONS FOR PARTIAL SUMMARY
    JUDGMENT
    PAGE - 10

1   agency's specialized expertise. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). The decision

2   whether to apply *Chevron* or *Skidmore* is assessed under the factors set forth in *Barnhart v.*

3   *Walton*: the "interstitial nature of the legal question, the related expertise of the Agency, the

4   importance of the question to administration of the statute, the complexity of that administration,

5   and the careful consideration the Agency has given the question over a long period of time." 535

6   U.S. 212, 221–222 (2002).

7        The level of deference afforded to ATF classifications is not clear. In *Firearms*

8   *Import/Export Roundtable Trade Group v. Jones*, the Court upheld the ATF's statutory

9   interpretation under the first step of the *Chevron* inquiry. 854 F. Supp. 2d 1, 18 (D.D.C. 2012)

10  (Rothstein, J.).[2] In *Modern Muzzleloading, Inc. v. Magaw*, the District of the District of

11  Columbia applied *Chevron* deference to an ATF firearm classification. 18 F. Supp. 2d 29, 36

12  (D.D.C. 1998) However, in *Innovator Enters. v. Jones*, the Court held that the ATF was not

13  entitled to *Chevron* deference in its issuance of an informal classification letter. 28 F. Supp. 3d

14  14, 22 (D.D.C. 2014). And in *Springfield, Inc. v. Buckles*, the district court upheld a statutory

15  interpretation made by the ATF under *Skidmore*. 116 F. Supp. 2d 85, 89 (D.D.C. 2000).

16  **B.    Cross-Motions for Summary Judgment**

17       Plaintiff brings its motion for partial summary judgment with respect to one issue:

18  whether the ATF's classification of the 7N6 bullets as "armor piercing" was contrary to the plain

19  language and Congressional intent of 18 U.S.C. § 921(a)(17)(B). (Dkt. No. 18.) Plaintiff asserts

20  that the presence of lead in the 7N6 bullets renders the bullet *not* "entirely" composed of "one or

21  a combination of tungsten alloys, steel, iron, brass, bronze, beryllium cooper, or depleted

22  uranium." (*Id.* at 2–3)(citing 18 U.S.C. § 921(a)(17)(B)(i)).

23       Defendants argue that the plain language of the Gun Control Act supported the ATF's

24  _____

25  [2] The Court notes that the District of Columbia Circuit is where most APA cases arise. (*See* Dkt. No. 33 at
    6.)

26  ORDER ON PLAINTIFF'S MOTION TO
    SUPPLEMENT, AND STRIKE PORTIONS OF,
    THE ADMINISTRATIVE RECORD AND ON
    CROSS-MOTIONS FOR PARTIAL SUMMARY
    JUDGMENT
    PAGE - 11

1    classification of the 7N6 bullets. The Court agrees. Even if the Court were to consider the statute

2    ambiguous, which it does not, under *Chevron* deference, the ATF's classification was not

3    "arbitrary and capricious" and so the Court does not disturb the ATF's decision.

4    **1.    The Gun Control Act**

5          The Arms Export Control Act ("AECA") authorizes the President to control the import of

6    "defense articles and defense services." 22 U.S.C. § 2278(a)(1). Under the AECA, no such

7    designated defense articles may be imported into the United States without a license. 22 U.S.C.

8    § 2778(b)(2). After the President's authority was delegated to the Secretaries of State, Treasury,

9    and Defense, the authority to issue permits and control defense imports was again delegated to

10   the ATF. Treasury Department Order No. 120-01 (formerly No. 221), 37 Fed. Reg. 11696

11   (1972). ATF was transferred to fall under the purview of the Department of Justice by the

12   Homeland Security Act of 2002. Pub. L. No. 107-296. ATF is the primary body responsible for

13   administering and enforcing the AECA with respect to the importation of defense articles and

14   defense services. 28 C.F.R. § 0.130(d).

15         Firearms and ammunition that may be lawfully imported into the United States under the

16   AECA are enumerated in the United States Munitions Import List ("USMIL"). 27 C.F.R.

17   § 447.21. In order to import firearms or ammunition into the U.S., importers must submit what is

18   known as an ATF Form 6 Application and Permit. 27 C.F.R. §§ 447.41–447.42.

19         The Gun Control Act ("GCA") of 1968 prohibits the import, manufacture, and

20   distribution of "armor piercing ammunition." 18 U.S.C. § 922(a)(7)–(8). "Armor piercing

21   ammunition" is defined as follows:

22              (i) a projectile or projectile core which may be used in a handgun and
                which is constructed entirely (excluding the presence of traces of other
23              substances) from one or a combination of tungsten alloys, steel, iron,
                brass, bronze, beryllium copper, or depleted uranium; or
24

25              (ii) a full jacketed projectile larger than .22 caliber designed and intended
                for use in a handgun and whose jacket has a weight of more than 25
26

ORDER ON PLAINTIFF'S MOTION TO
SUPPLEMENT, AND STRIKE PORTIONS OF,
THE ADMINISTRATIVE RECORD AND ON
CROSS-MOTIONS FOR PARTIAL SUMMARY
JUDGMENT
PAGE - 12

percent of the total weight of the projectile.

18 U.S.C. § 921(a)(17)(B). Not included in the definition of "armor piercing ammunition" are: (1) "shotgun shot[s] required . . . for hunting purposes," (2) projectiles "designed for target shooting," (3) projectiles that "the Attorney General finds . . . primarily intended to be used for sporting purposes," or (4) projectiles that the Attorney General finds "intended to be used for industrial purposes, including a charge used in an oil and gas well perforating device." 18 U.S.C. § 921(a)(17)(C).

**2.      Step One: *Chevron* Analysis**

Both parties argue that, under the first step of the *Chevron* analysis, that Congress has "directly spoken" on the issue of whether ammunition is "armor piercing." (Dkt. No. 18 at 8–9; Dkt. No. 24 at 13.) However, the parties present competing theories of what it is that Congress directly said. Plaintiff argues that the projectile core means "the entire inside" of a bullet or everything other than the enveloping jacket. (Dkt. No. 26 at 6.) Plaintiff adds that to interpret the statute otherwise "diminishes Congress's use of the term 'entirely.'" (*Id.* at 7.) Defendants argue that Plaintiff's interpretation is contrary to the plain meaning of the word "core." (Dkt. No. 31 at 6.)

"The purpose of statutory construction is to discern the intent of Congress in enacting a particular statute." *Robinson v. United States*, 586 F.3d 683, 686 (9th Cir. 2009) (citing *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999)). The Court is to begin its analysis with the plain language of the statute itself; "when interpreting a statute, we look first to the words that Congress used." *Defenders of Wildlife v. Browner*, 191 F.3d 1159, 1164 (9th Cir. 1999). Where a word is undefined, courts are expected to give it its "ordinary meaning." *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995).

**a.      "Projectile Core"**

The word "core" is not defined in the GCA. *See* 18 U.S.C. § 921. The dictionary defines the word "core" as "a central and often foundational part usually distinct from the enveloping

ORDER ON PLAINTIFF'S MOTION TO
SUPPLEMENT, AND STRIKE PORTIONS OF,
THE ADMINISTRATIVE RECORD AND ON
CROSS-MOTIONS FOR PARTIAL SUMMARY
JUDGMENT
PAGE - 13

1    part by a difference in nature." Merriam-Webster's Collegiate Dictionary, 11th Ed., Mirriam-

2    Webster, Inc. (2009).

3         While the parties feud over which word is dispositive, "core," or "entirely," the Court

4    notes that the statute makes a point to distinguish the terms "projectile" and "projectile core." 18

5    U.S.C. § 921(a)(17)(B)(i). It clear from the plain language of the statute that the entire projectile

6    need not be composed of one of the seven enumerated metals, only the "projectile core" need be

7    so composed. *Id.* Moreover, the word "entirely" comes in the statute with a parenthetical caveat:

8    "(excluding the presence of traces of other substances)." *Id.*

9         The Court concludes that the plain language of 18 U.S.C. § 921(a)(17)(B)(i), read in its

10   entirety, supports the definition provided by the ATF. The 7N6 bullet, when dissected, was found

11   to contain a central steel core. AR 20. Though the bullet also contains a lead plug, the central

12   steel core is "constructed entirely" of steel. Notably, to adopt Plaintiff's proposed definition, that

13   anything inside the jacket of a bullet be composed of the metals listed in the statute, would

14   render the statute's distinction between projectile and "projectile core" meaningless. At the very

15   least, if Congress had intended the definition as set forth by Plaintiff, it would have mentioned

16   the distinction between a bullet's jacket and everything inside the jacket. The fact that the term

17   "jacket" is used elsewhere in the statute only further demonstrates that this was not the meaning

18   intended when Congress used the word "core." *See* 18 U.S.C. § 921(a)(17)(B)(ii). *See United*

19   *States v. Dangdee*, 616 F.2d 1118, (9th Cir. 1980) (statutory language is "best evidence of

20   congressional intent because we must assume that Congress meant what it said") (internal

21   quotations omitted)).

22   **b.      "May be Used in a Handgun"**

23        Plaintiff also argues that the 7N6 is not "armor piercing" because the handgun found to

24   be available to chamber the round is not sufficiently "commercially available." (Dkt. No. 1 at 13;

25   Dkt. No. 26 at 17.) However, nothing in the GCA requires a level of popularity or availability for

26   
ORDER ON PLAINTIFF'S MOTION TO
SUPPLEMENT, AND STRIKE PORTIONS OF,
THE ADMINISTRATIVE RECORD AND ON
CROSS-MOTIONS FOR PARTIAL SUMMARY
JUDGMENT
PAGE - 14

1   the handgun from which an armor-piercing bullet may be fired; the statute simply requires that

2   the projectile "may be used in a handgun." 18 U.S.C. § 921(a)(17)(B)(i); *see also United States*

3   *v. Watkins*, 278 F.3d 961, 965 (9th Cir. 2002).

4       The Court concludes that the ATF's decision regarding the 7N6 bullets comports with the

5   plain language of the GCA. The alternative definition proposed by Plaintiff does not. Ultimately,

6   the statute is unambiguous and so on this ground alone, partial summary judgment is appropriate

7   in Defendants' favor.

8   **3.     Step Two: *Chevron* Deference**

9       Even if the GCA's definition of "armor piercing ammunition," specifically the words

10  "core" and "entirely," were to be considered ambiguous, the Court concludes that *Chevron*

11  deference would be appropriate at the step two analysis. Defendants argue that, even without

12  *Chevron* deference, the ATF's determination withstands review even under *Skidmore*. (Dkt. No.

13  24 at 13.)

14      Briefly, the *Barnhardt* factors support the extension of *Chevron* deference to this ATF

15  decision. 535 U.S. 212, 221–22 (2002). ATF's interpretation of the armor-piercing standard fills

16  any gaps left by Congress in its definition and thus the legal question is interstitial. *Id.* at 222.

17  The relative expertise of the agency, ATF, is demonstrated by the technical nature of questions

18  regarding bullet composition, the difference between guns used for sporting purposes and those

19  that are not, and the knowledge of what handguns may fire what projectiles. *Id.* The question of

20  what constitutes "armor piercing ammunition" is of crucial importance to the administration of

21  the GCA, as it deals squarely with what items may be imported and distributed. *Id.* Finally, as

22  discussed in this Court's previous order, the Form 6 process by the ATF involves careful review

23  of applications, inspection of shipped materials, and testing and consideration of the shipped

24  materials. (Dkt. No. 27 at 9; AR at 1–9, 20–24.)

25      With *Chevron* deference guiding the second step of the analysis, the interpretation

26  ORDER ON PLAINTIFF'S MOTION TO
    SUPPLEMENT, AND STRIKE PORTIONS OF,
    THE ADMINISTRATIVE RECORD AND ON
    CROSS-MOTIONS FOR PARTIAL SUMMARY
    JUDGMENT
    PAGE - 15

1   provided by the ATF is "based on a permissible construction of the statute" and is not "arbitrary

2   and capricious." *Chevron*, 467 U.S. at 843–844. Were the Court to reach the second step of the

3   *Chevron* analysis, which it need not, the legislative history and intent of the GCA support the

4   ATF's interpretation. *Armor –Piercing Ammunition and the Criminal Misuse and Availability of*

5   *Machine Guns and Silencers: Hearing Before Subcomm. On Crime of the H. Comm. On the*

6   *Judiciary*, HR. 5835, H.R. 5844, H.R. 5845, 98th Cong., 2d Sess. at 307–18 (June 27, 1984). The

7   armor-piercing ammunition provision, while the product of "consensus," was enacted with the

8   "goal of providing police officers with assurance that their soft-body armor will afford greater

9   protection against gunfire." *Id.* at 251.

10      Significantly, the legislative discussion emphasized by Plaintiff actually supports the

11  ATF's determination. Plaintiff relies in part on a portion of the June 27 hearing on the "armor

12  piercing" provision in which legislators discussed a Swedish bullet that would pierce armor but

13  not fall into the statutory definition because it has "lead in the center of it," where the 7N6 has

14  steel.  June 27 Hearing at 244. The legislative history supports ATF's interpretation, specifically

15  that the "core" of a bullet constitutes its center.

16      As Defendants aptly point out, Plaintiff never argues that the 7N6 bullets do not have the

17  capacity to pierce body armor, highlighting the disingenuous nature of Plaintiff's claim. (Dkt.

18  No. 24 at 19; *see* Dkt. Nos. 18, 26.)

19      For the foregoing reasons, Plaintiff's motion for partial summary judgment is unavailing.

20  Moreover, the ATF's determination that the 7N6 bullets were "armor piercing" within the

21  meaning of 18 U.S.C. § 921(a)(17)(B)(i) is: (1) supported by the plain language of the statute, (2)

22  due *Chevron* deference even if it were not, and (3) and supported by the legislative history and

23  the administrative record. Plaintiff's motion for partial summary judgment under the APA is

24  appropriately denied, while Defendants' is granted.

25  **4.    Additional Grounds for Defendants' Motion for Summary Judgment**

26  ORDER ON PLAINTIFF'S MOTION TO
    SUPPLEMENT, AND STRIKE PORTIONS OF,
    THE ADMINISTRATIVE RECORD AND ON
    CROSS-MOTIONS FOR PARTIAL SUMMARY
    JUDGMENT
    PAGE - 16

1   Finally, the Court briefly addresses the remaining portions of Defendants' Cross-Motion

2   for Partial Summary Judgment. Defendants note that the complaint raises a due process claim.

3   (Dkt. No. 24 at 19; Dkt. No. 1 at 18–19.) However, a due process claim requires a valid claim of

4   entitlement to the importation permit. *Gerhart v. Lake County, Mont.*, 637 F.3d 1013, 1019 (9th

5   Cir. 2011). The ATF may revoke an importation permit at any time. 27 C.F.R. § 447.44(a).

6   Persuasively, the Federal Circuit has ruled that it is "clear that the right to import arms from

7   overseas is subject to such extensive control that the denial or revocation of an import permit

8   cannot be regarded as . . . property" subject to protection under the due process clause. *B-West*

9   *Imports, Inc. v. United States*, 75 F.3d 633, 635 (Fed. Cir. 1996). The right to import arms into

10  the United States is always subject to possible revocation, and "[t]he Due Process Clause does

11  not require the government to stand as a surety against the adverse consequences sometimes

12  suffered by persons who knowingly undertake that kind of commercial risk." *Id.* at 638–39.

13  Based on the statutory and regulatory framework governing the issuance and revocation

14  of arms importation permits, it is clear that no due process rights were triggered by the events of

15  this case. Accordingly, any due process claim by Plaintiff is dismissed as a matter of law.

16  Similarly, as discussed above, the ATF acted well within its statutory authority. 28 C.F.R.

17  § 0.130(d). Moreover, Congress had the power to delegate this authority under both the

18  Commerce Clause and the Foreign Commerce Clause. U.S. Cont. Art. 1, § 8, cl. 3 (delegating to

19  Congress the power "[t]o regulate Commerce with foreign Nations, and among the several

20  States"). Plaintiff's claim that ATF acted outside its statutory authority fails as a matter of law.

21  Finally, the ATF inspecting a shipment and revoking an importation permit on a shipment

22  of armor-piercing ammunition was not a "rulemaking" act that required a notice and comment

23  period under the APA or 18 U.S.C. § 926(b).

## III.    CONCLUSION

25  For the foregoing reasons, Plaintiff's motion to supplement and strike (Dkt. No. 29) is

26  ORDER ON PLAINTIFF'S MOTION TO
SUPPLEMENT, AND STRIKE PORTIONS OF,
THE ADMINISTRATIVE RECORD AND ON
CROSS-MOTIONS FOR PARTIAL SUMMARY
JUDGMENT
PAGE - 17

1    DENIED, Plaintiff's motion for partial summary judgment (Dkt. No. 18) is DENIED and

2    Defendants' motion for partial summary judgment (Dkt. No. 24) is GRANTED.

3           DATED this 10th day of August 2016.

4

5

6

7

8

9    _____

     John C. Coughenour
10   UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   ORDER ON PLAINTIFF'S MOTION TO
     SUPPLEMENT, AND STRIKE PORTIONS OF,
     THE ADMINISTRATIVE RECORD AND ON
     CROSS-MOTIONS FOR PARTIAL SUMMARY
     JUDGMENT
     PAGE - 18